IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |  |
|---|---|---|
| HEDGEYE RISK MANAGEMENT, LLC, | : | |
| | : | No. 1:21-cv-03687 (ALC) (RWL) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| DARIUS DALE; STEVEN LAMAR; 42 MACRO, LLC; NADINE TERMAN; AND SOLSTEIN CAPITAL, LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO
TERMAN DEFENDANTS' MOTION TO DISMISS PLAINTIFF HEDGEYE'S
THIRD AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................1

I. THIS COURT HAS PERSONAL JURISDICTION OVER THE TERMAN DEFENDANTS. ................................................................................................1

    A. Legal Standard .........................................................................................................1

    B. Hedgeye's Claims Against The Terman Defendants Arise Out Their Contacts With New York ...............................................................................3

    C. Personal Jurisdiction Against Terman and Solstein Is Also Proper Due To Their Personal, Active Participation In The Dale Defendants' Conspiracy ...............................................................................................................5

II. HEDGEYE HAS STATED A PLAUSIBLE CLAIM FOR RELIEF AGAINST THE TERMAN DEFENDANTS ON ALL OF ITS CAUSES OF ACTION. ..................................................................................................................6

    A. TAC Alleges Terman's Separate, Active Misconduct ..........................................6

    B. Terman Defendants' Evidentiary Arguments And Hedgeye's Reasonable Inferences ..............................................................................................6

III. HEDGEYE HAS PROPERLY PLED CLAIMS FOR BREACH OF THE SERVICES CONTRACT BY SOLSTEIN AND INTERFERENCE BY TERMAN WITH THAT CONTRACT (COUNTS 5 AND 6) ...................................8

CONCLUSION ................................................................................................................................9

**PRELIMINARY STATEMENT**

Plaintiff Hedgeye Risk Management, LLC ("Hedgeye") submits the following memorandum in opposition to the motion filed by Defendants Nadine Terman and Solstein Capital, LLC (collectively, the "Terman Defendants") to dismiss the Third Amended Complaint. The Terman Defendants repeat most all of the arguments made by their co-conspirators and co-Defendants Darius Dale, Steven Lamar, and their company 42 Macro, LLC ("42 Macro"). Rather than repeat its own arguments, Hedgeye hereby incorporates by reference in this memorandum its contemporaneously filed "Memorandum of Law in Opposition to Defendants' Motions to Dismiss Plaintiff's Third Amended Complaint." Dkt. 345. The Terman Defendants do make certain arguments that are not made by the other Defendants, and Hedgeye responds to those arguments in greater detail herein.

**ARGUMENT**

**I.     THIS COURT HAS PERSONAL JURISDICTION OVER THE TERMAN DEFENDANTS.**

    **A.     Legal Standard**

On a motion to dismiss for lack of personal jurisdiction, "a plaintiff must make a prima facie showing that jurisdiction exists." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010). "[T]he pleadings and affidavits [are to be construed] in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (*per curiam*). Determining whether personal jurisdiction exists is a two-step inquiry. Courts first "look to the law of the forum state to determine whether personal jurisdiction will lie. If jurisdiction lies, [courts] consider whether the [] exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).

1

Under New York's long-arm statute, there are two ways to establish personal jurisdiction over a defendant: (1) "general jurisdiction," not necessary here, or (2) "specific jurisdiction" under N.Y. CPLR § 302.  "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in the state." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016).  New York's long-arm statute is expansive, permitting specific jurisdiction over any person who "transacts business within the state or contracts anywhere to supply goods or services in the state," or "commits a tortious act within the state," or "commits a tortious act . . . causing injury to person or property within the state." N.Y. CPLR § 302.  Each of these permits this Court to exert long-arm personal jurisdiction over Terman and Solstein.

For the exercise of personal jurisdiction to comport with due process, this Court must assess (1) "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant," and (2) "whether the assertion of personal jurisdiction . . . comports with 'traditional notions of fair play and substantial justice.'" *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (*quoting Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)).  To determine whether sufficient minimum contacts exist, "[t]he crucial question is whether the defendant has 'purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, such that the defendant should reasonably anticipate being haled into court there.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242-43 (2d Cir. 2007) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)).

"A plaintiff facing a Fed. R. Civ. P. 12(b)(2) motion to dismiss made before any discovery need only allege facts constituting a prima facie showing of personal jurisdiction." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997); *see also Ball v. Metallurgie*

2

*Hoboken-Overpelt*, S.A., 902 F.2d 194, 197 (2d Cir. 1990) ("[T]he plaintiff's prima facie showing may be established solely by allegations.").

### B. Hedgeye's Claims Against The Terman Defendants Arise Out Their Contacts With New York

Personal jurisdiction over the Terman Defendants is proper due to their targeted misconduct directed to and occurring in New York. As alleged in the TAC, "[a]t all relevant times, Dale lived and worked in this District. At all relevant times, 42 Macro operated from this District. At all relevant times, . . . Terman and Solstein directed to this District, and received from this District, all communications relating to their misappropriation of Hedgeye's trade secrets." TAC ¶ 10. The Terman Defendants ignore the TAC's allegation that "[t]hey agreed and conspired to undertake all the actions in this District outlined above in furtherance of their misappropriation of trade secrets from this District." TAC ¶ 12. The Terman Defendants also ignore numerous other allegations that are more than sufficient for this Court to exercise personal jurisdiction over them. For example, the TAC alleges that:

> During key relevant times, each Defendant was an active participant in misappropriating Hedgeye's trade secrets from this District. For example, each Defendant solicited Dale in this District to breach his employment agreement. Each Defendant worked with Dale, in this District, to acquire Hedgeye's trade secrets from this District. Each Defendant advised and assisted, in this District, with "wiping," in this District, the laptop they used to misappropriate Hedgeye's trade secrets.

TAC ¶ 11. "Terman and Solstein also have received the results of Hedgeye's trade secrets from 42 Macro in and/or from this District and subsequently used that research to target and sell to customers and potential customers in this District." TAC ¶ 13.

Hedgeye's claims arise out of <u>and</u> directly relate to Terman's contacts with the forum. Hedgeye's claims of Terman's misappropriation arise out of her communications with Dale, who resides and works in New York. TAC ¶ 2. And it was in this forum that "Hedgeye's

3

misappropriated trade secrets and confidential information were acquired, disclosed and used" by all Defendants. TAC ¶ 9.

The Terman Defendants profess that "Terman's only alleged participation was to warn Dale of Hedgeye's potential ownership claims over intellectual property and to propose that he retain legal counsel to give him advice." Terman Mot. at 9-10. First, Defendants' denial of allegations has no bearing on whether this Court possesses personal jurisdiction over the Terman Defendants. Second, Defendants' inference would strain any juror's credulity; the TAC alleges that "Defendants discussed among themselves how they might get around what they deemed to be the 'technicality' of Hedgeye owning its intellectual property." TAC ¶ 114.

Hedgeye also alleges that Terman "intended that the same customers who had been paying Hedgeye for content they received from Hedgeye through Dale would shift their business from Hedgeye to 42 Macro," which includes targeting Hedgeye's New York customers. TAC ¶ 104. As an integral player in misappropriating Hedgeye's trade secrets, Terman "purposefully availed" herself of the privilege of doing business in New York by regularly selling 42 Macro subscriptions through 42 Macro's website to customers in New York.

The TAC is ripe with allegations that Terman was heavily involved in creating a competitor to Hedgeye while Dale still was employed at Hedgeye. *See* TAC ¶¶ 85-110. The TAC further alleges that "Terman did everything she could to maximize 42 Macro's success" including "direct[ing] the timing and content of Defendants' social media messaging about Hedgeye and 42 Macro" and "direct[ing] Dale to simultaneously update all his various social media at once and to have content ready to publish as soon as 42 Macro went public." TAC ¶ 105.

Indeed, the declaration Terman offers in support of her motion to dismiss admits that she "advised Mr. Dale" about Hedgeye's "proprietary interest in documents that [Dale] worked on

4

while employed there" and that, prior to Dale leaving Hedgeye, Terman and Dale had "several conversations" where Terman "gave [Dale] some advice about marketing and messaging." Declaration of Nadine Terman in Support of Motion to Dismiss ¶¶ 11-14 ("Terman Declaration").

      **C.    Personal Jurisdiction Against Terman and Solstein Is Also Proper Due To Their Personal, Active Participation In The Dale Defendants' Conspiracy**

Personal jurisdiction over Terman and Solstein is also proper because this Court has personal jurisdiction over their co-conspirators Dale and 42 Macro. The Terman Defendants purposefully availed themselves of the forum by actively participating in and furthering Dale's conspiracy with knowledge that the misconduct was and is taking place in New York. *See Cleft of the Rock Found. v. Wilson*, 992 F. Supp. 574, 581–582 (E.D.N.Y. 1998) (exercise of jurisdiction based on conspiracy theory was well established under New York law and comported with the due process); *Allstate Life Ins. Co. v. Linter Group Ltd.*, 782 F. Supp. 215, 220–222 & n.6 (S.D.N.Y. 1992) (asserting personal jurisdiction over defendant based on conspiracy allegations).

Terman and Solstein actively conspired with Dale, Lamar, and 42 Macro to steal Hedgeye's trade secrets, cover-up the misappropriation, and launch a business founded on Hedgeye's proprietary and confidential information, with the express intent and effect of illicitly profiting from Hedgeye's stolen trade secrets. TAC ¶¶ 140-51. The numerous communications identified in the operative complaint between Dale, Lamar, and Terman establish numerous overt acts and allege the Terman Defendants' active and knowing participation in the furtherance of the plan. TAC ¶¶ 74-84, 85-110, 111-34, 140-51. The factual bases for the claims of trade secret misappropriation and unfair competition against Terman and Solstein are thus identical to the factual bases for those claims against Dale, Lamar, and 42 Macro. This Court has personal

jurisdiction over the Dale Defendants' co-conspirators to the same extent this Court has personal jurisdiction over the Dale Defendants themselves.

## II. HEDGEYE HAS STATED A PLAUSIBLE CLAIM FOR RELIEF AGAINST THE TERMAN DEFENDANTS ON ALL OF ITS CAUSES OF ACTION.

### A. Hedgeye Alleges Terman's Separate, Active Misconduct

The TAC makes numerous allegations of the Terman Defendants' separate, active misconduct. For example, the TAC details numerous communications between Dale, Lamar, and Terman, and establishes separate, active misconduct of the Terman Defendants. *See, e.g.,* TAC ¶¶ 74-84, 85-110, 111-34, 140-51.

The Terman Defendants offer explanations and excuses, understandably trying to minimize their liability, but those excuses have no bearing on whether the TAC sufficiently states causes of action and establishes personal jurisdiction. There is no real question that the TAC adequately alleges the Terman Defendants' separate, active misconduct. *See, e.g.*, TAC ¶ 72 ("Terman . . . discussed how they might collaborate and conspire . . . to establish a competing business that would then develop . . . research derived from Hedgeye's trade secrets and sell them to Terman and Solstein . . . ."); TAC ¶ 74 ("Terman contacted and spoke to Darius Dale, and agreed upon a plan by which Dale would steal Hedgeye's trade secrets . . . and the competing business would sell to Terman and Solstein Capital virtually identical research that Solstein had been buying from Hedgeye, but at a fraction of the cost."); TAC ¶ 81 ("Terman also encouraged and assisted Dale in stealing Hedgeye confidential information and trade secrets, promising him direct and indirect compensation for doing so.").

### B. Terman Defendants' Evidentiary Arguments And Hedgeye's Reasonable Inferences

6

The Terman Defendants' motion ignores the fundamental principle that "[i]n deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations <u>and draws all inferences in the plaintiff's favor</u>." *Trahan v. Lazar*, 457 F. Supp. 3d 323, 341 (S.D.N.Y. 2020) (emphasis added) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019)).  The Terman Defendants' counter-narrative requires this Court to erroneously draw inferences in Defendants' favor.  For example, Defendants argue Hedgeye's claims against Solstein and Terman "consistent mostly of personal communications providing friendly advice." Terman Mot. at 6.  That is the inference or characterization Defendants ask the Court to make.  However, Hedgeye is entitled to have the Court assume the truth of Hedgeye's reasonable interpretation of the communications, including that Terman and Solstein "worked together" with the Dale Defendants "to build 42 Macro's models" and "advised and actively worked to destroy evidence of Defendants' misconduct prior to Dale's resignation, even offering Solstein's services to help conceal Dale's theft." TAC, ¶¶ 112, 137.  It is certainly reasonable to assume collusive unlawful conduct where Terman counsels Dale to wipe evidence from his laptop, offers the services of Solstein personnel to do it, and goes into business with him using the stolen trade secrets.  TAC ¶¶ 137, 143-51.

The Terman Defendants' motion is rife with inferences it urges this Court to draw.  *See, e.g.*, Terman Mot. at 9 ("[T]he content of the actual conversations alleged in the TAC contradicts that characterization."); 10 ("These allegations, if proven true, would . . . establish . . . Terman's encouragement to Dale to comply with the law."); 15 ("But those allegations show that Terman understood that Dale was relying on the knowledge of his own mind in establishing his new venture . . . ."); 15 ("[A]ll these communications and interactions show was that Terman wished Dale well and made herself available to provide practical advice . . . ."); 25 ("To the extent these

7

website terms are intelligible, they clearly refer to copyright violations or other harm to the website . . . .").

Nor does the Terman Declaration require the Court to convert the Rule 12(b)(2) motion into a Rule 56 motion. Rather, "[i]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway" and "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (*per curiam*) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). Hedgeye respectfully submits that the Court should ignore all extrinsic evidence until summary judgment.

Regardless how this Court determines to handle extrinsic evidence regarding jurisdiction, "the pleadings and affidavits [are to be construed] in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 722 F.3d at 85.

### III. HEDGEYE HAS PROPERLY PLED CLAIMS FOR BREACH OF THE SERVICES CONTRACT BY SOLSTEIN AND INTERFERENCE BY TERMAN WITH THAT CONTRACT (COUNTS 5 AND 6)

The TAC asserts a cause of action against Solstein for breach of its services contract with Hedgeye and a cause of action against Terman for interfering with the contract and inducing Solstein's breach. Terman signed the Services Agreement on behalf of Solstein, and Terman is the founder, CEO, and CIO of Solstein. TAC ¶¶ 7, 286.

As alleged in the TAC, "[p]ursuant to the Services Agreement, Solstein was prohibited from soliciting Hedgeye employees during the term of the Services Agreement, or from employing Hedgeye employees for twelve (12) months after the employee's termination." TAC ¶ 277. The TAC alleges that Terman and Solstein attempted to solicit Dale away from Hedgeye. *See* TAC ¶¶ 11, 96, 112. Terman also agreed that Dale would join a "partnership that would

8

compete with Hedgeye" and that, as planned in March of 2021, "Dale would join Longbow as a partner." *See* TAC ¶¶ 162-63. Dale, in fact, joined Longbow as a partner by April 4, 2021 and, on August 8, 2022, Terman announced the launch of Longbow. *See* TAC ¶¶ 171-72. The TAC clearly alleges Solstein's breach of the Services Agreement by soliciting Dale while restricted from doing so.

As further alleged in the TAC, "[p]ursuant to the Services Agreement, Solstein undertook a number of obligations with regard to Hedgeye's intellectual property." TAC ¶ 278. For example, Solstein was prohibited from: "Infringing on Hedgeye's intellectual property in using the Website or Services; Modifying or creating derivative works of the Services or Content or any part thereof; Doing anything that adversely affects the Website, the Services or the Company's business; Reverse engineering the Services or any Content available in connection with the Services; and Circumventing security measures." TAC ¶ 279 (Hedgeye Terms of Service incorporated by reference in Services Agreement). As alleged by Hedgeye in great detail (TAC ¶¶ 111-34, 152-59), the Terman Defendants' theft of Hedgeye's trade secrets and curated customer lists constituted a breach of the Services Agreement as well. Terman, as Solstein's principal, is liable for interfering with the contract and causing Solstein's breach.

## CONCLUSION

For all of the foregoing reasons including those incorporated by reference, Hedgeye respectfully requests that Defendants' Motion to Dismiss be denied in full. Alternatively, Hedgeye seeks leave to amend. Fed. R. Civ. Proc. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

Respectfully submitted,

Dated:  September 20, 2022           */s/ Eric A. Prager*

9

                Eric A. Prager
                Thomas E. Wallerstein
                VENABLE LLP
                1270 Avenue of the Americas
                New York, NY 10020
                Tel.: 212.307.5500
                EAPrager@Venable.com
                TWallerstein@Venable.com

                *Attorneys for*
                Hedgeye Risk Management, LLC