USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/9/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEDGEYE RISK MANAGEMENT, LLC,

Plaintiff,

- against -

DARIUS DALE; STEVEN LAMAR; 42 MACRO, LLC; NADINE TERMAN; and SOLSTEIN CAPITAL, LLC,

Defendants.

21-CV-3687 (ALC) (RWL)

**DECISION AND ORDER: MOTION TO SEVER**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Hedgeye Risk Management, LLC ("Hedgeye" or "Plaintiff") asserts claims for misappropriation of trade secrets, breach of contract, conversion, and unfair competition against two groups of defendants – the "Dale Defendants," comprised of Darius Dale ("Dale"), Steven Lamar ("Lamar") and their company 42 Macro, LLC ("42 Macro"), and the "Terman Defendants," being Nadine Terman ("Terman") and her business Solstein Capital, LLC ("Solstein"). Hedgeye first filed the action against the Dale Defendants, and after some discovery, filed a separate action against the Terman Defendants. Hedgeye then sought and obtained consolidation of the two actions into a single case based on the argument that the two actions largely involve the same claims and "involve all the same, facts, documents and witnesses." Now, however, Hedgeye has moved to sever the Terman Defendants' counterclaim for fraud in the inducement – even though Hedgeye has asserted breach of the contract that the Terman Defendants claim was fraudulently induced. For the following reasons, the motion is DENIED.

## Procedural Background

Hedgeye filed this action against the Dale Defendants on April 26, 2021 (the "Dale Action"). (Dkt. 1.) The Complaint alleges that Dale, a former employee of Hedgeye, misappropriated Hedgeye's trade secrets related to financial modeling for use, along with Steven Lamar, in their company 42 Macro.[1] The Complaint further alleges breach of contract, conversion, and unfair competition. Based on discovery received in the action against the Dale Defendants, Hedgeye filed another action on February 9, 2022, against the Terman Defendants claiming that they conspired with the Dale Defendants (the "Terman Action"). (*Hedgeye Risk Management, LLC v. Terman,* 22-CV-1113, Dkt. 1.) Specifically, the Complaint against the Terman Defendants alleges theft of trade secrets; interference with Hedgeye's employment contract with Dale; unfair competition; breach of Hedgeye's Services Agreement (the "Services Agreement") with Terman's company Solstein; and Terman's interference with that same contract.

Approximately four months later, on June 2, 2022, Hedgeye moved to consolidate the two cases, or, alternatively, to amend its complaint against the Dale Defendants to include its claims against the Terman Defendants. (Dkt. 253.) Hedgeye argued, successfully, that "[t]he *Dale* and *Terman* actions involve identical alleged facts, legal issues, legal claims, documents and witnesses (both lay and expert)." (Dkt. 254 at 1.) Hedgeye pointed out that "[t]he only differences" are various "ancillary" claims specific to each Defendant. (*Id.*) Those differences, however, posed no obstacle to consolidation. As Hedgeye explained, "even those defendant-specific claims involve all the same

[1] The original Complaint, filed on April 26, 2021, named only Dale as a Defendant. (Dkt. 1.) Hedgeye filed an Amended Complaint on August 20, 2021 naming Dale, Lamar, and 42 Macro as Defendants. (Dkt 92.)

alleged facts, documents and witnesses. At least in terms of pretrial consolidation, there simply is no material difference between the two actions." (*Id.*) Accordingly, Hedgeye asserted, "the parties and the Court will save substantial time, money and burden by litigating simultaneously the myriad alleged facts, legal issues and legal claims that are present in both actions." (*Id.* at 7.) Based on those representations, and "[t]o advance judicial efficiency and avoid the risk of inconsistent determinations," the Court granted leave to Hedgeye to amend its complaint in the Dale Action to include the claims against the Terman Defendants. (Dkt. 302 at 2.)

On August 24, 2022, Hedgeye wrote a letter to the Court about scheduling in light of the newly merged cases. (Dkt. 327.) In particular, Hedgeye expressed concern about its ability to take discovery on the various Defendants' potential counterclaims and affirmative defenses. The Court therefore set a deadline of September 20, 2022 for all Defendants to file their counterclaims and defenses. (Dkt. 336.)

On September 19, 2022, however, the Terman Defendants expressed concern about waiving jurisdictional defenses since they had already filed a pending motion to dismiss. (Dkt. 338.) The Terman Defendants therefore proposed that, instead of formally filing their defenses and counterclaims, they serve Hedgeye with a copy of their "intended" defenses and counterclaims and that, if appropriate, they would later formally file the defenses and counterclaims "in the form as previously served, along with their answer." (Dkt. 338.) The Court endorsed that proposal. In doing so, the Court stated that "[i]f Plaintiffs oppose for any reason, they should file a letter with the Court, at which point the Court will consider whether to require filing of the Answer and Counterclaims after September 20, 2022." (Dkt. 339.) Hedgeye did not file a letter in opposition.

Defendants complied, and on September 20, 2022, the Terman Defendants served Hedgeye with notice of its defenses and counterclaims, attaching a fully drafted statement of affirmative defenses and counterclaims. (Dkts. 343.) The Terman Defendants asserted four counterclaims, the first of which alleges that they were fraudulently induced into entering the Services Agreement based on Hedgeye's numerous false representations and omissions. (Dkt. 343-1 at ¶¶ 95-99.)

The parties then proceeded to take discovery on the disclosed counterclaims and affirmative defenses. On December 1, 2022, Hedgeye deposed Terman and, according to counsel for the Terman Defendants, questioned her in detail about her proposed counterclaims.[2] Discovery has been extended several times. With respect to the Terman counterclaims, fact discovery currently is scheduled to close on February 28, 2023. (Dkt. 428 (clarifying order at Dkt. 414).[3]) Both sets of Defendants filed motions to dismiss (Dkts. 330, 334), which remain pending. On January 31, 2023, the Terman Defendants formally filed their answer and counterclaims, withdrawing their previous jurisdictional defense. (Dkts. 461-62.) The counterclaims as served on September 20, 2022, appear

---

[2] The Terman Defendants made this representation in opposition to Hedgeye's motion without citing to any evidence. (Dkt. 454 at 4.) Hedgeye, however, did not dispute the statement in its reply.

[3] Hedgeye mischaracterizes the Court's order at Dkt. 428, which clarified the Court's earlier order at Dkt. 414 at the request of the Dale Defendants. Hedgeye complains that the order "clarified that [the Magistrate Judge] actually had *not* in fact extended the deadline by which Hedgeye could conduct discovery as to the Terman Counterclaims at all." (Dkt. 440, "Pl. Mem." at 9-10) (emphasis in original). In fact, the Court's order extended time to all parties with respect to the Terman counterclaims and stated that the extension "does not apply to discovery between Hedgeye and the Dale Defendants," which had a longer lead time. (Dkt. 428.)

to be identical to the counterclaims that the Terman Defendants later formally filed. (*Compare* Dkt. 343-1 *with* Dkt. 461 at pp. 32-63.)

**Discussion**

A court may "sever any claim against a party." Fed. R. Civ. P. 21. "[S]evered claims become entirely independent actions to be tried, and judgment entered thereon, independently." *Cestone v. General Cigar Holdings, Inc.*, No. 00-CV-3686, 2002 WL 424654, at *2 (S.D.N.Y. Mar. 18, 2002) (internal quotation marks omitted). Deciding whether to sever is "committed to the sound discretion of the trial court." *State of New York v. Hendrickson Brothers, Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988); *see also Cestone*, 2002 WL 424654, at *2 ("The trial court has broad discretion in deciding whether to sever claims").

In the Second Circuit, "courts consider five factors to determine if severance is appropriate: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Rudersdal v. Harris*, 18-CV-11072, 2021 WL 2209042, at *22 (S.D.N.Y. Feb. 27, 2021) (collecting cases), *R&R adopted as modified*, 2022 WL 263568 (S.D.N.Y. Jan. 28, 2022).

"Severance requires the presence of only one of these conditions." *Wave Studio, LLC v. General Hotel Management Ltd.*, No. 13-CV-9239, 2017 WL 972117, at *10 (S.D.N.Y. Mar. 10, 2017) (quoting *Cestone*, 2002 WL 424654, at *2). In practice, however, the same courts stating that principle "have generally only granted severance

where more than one condition was met." *Laser Kitten, LLC* v. *Marc Jacobs International, LLC*, No. 17-CV-8613, 2019 WL 1147599, at *1 (S.D.N.Y. Mar. 13, 2019). Indeed, "[c]ourts have cautioned … that severance is a procedural device to be employed only in exceptional circumstances." *Wave Studio, LLC*, 2017 WL 972117, at *10 (quoting *Deskovic v. City of Peekskill*, 673 F. Supp.2d 154, 160 (S.D.N.Y. 2009); *accord Rudersdal*, 2021 WL 2209042, at *22.

Considering the relevant factors and the specific circumstances of this case, the Court finds, within its discretion, that the Terman Defendants' counterclaim for fraudulent inducement should not be severed. First, the Terman Defendants' fraudulent inducement counterclaim arises out of the same transaction as Hedgeye's claim for the Terman Defendants' breach of contract claim. The contract that Hedgeye claims the Terman Defendants breached is the very same contract the Terman Defendants claim they were fraudulently induced to enter. There is no credible argument to the contrary, particularly since "courts within this Circuit repeatedly have interpreted the phrase 'same transaction' to encompass 'all logically related claims.'" *Kassman v. KPMG LLP*, 925 F. Supp.2d 453, 477 (S.D.N.Y. 2013) (internal quotation marks and citations omitted). For that same reason, Hedgeye's claim and the Terman Defendants' counterclaim share common questions of fact and law, such as whether the Services Agreement is valid and enforceable and whether Hedgeye performed its own obligations, a required element of Hedgeye's claim for breach of contract. *See Thales Alenia Space France v. Thermo Funding Co., LLC*, 959 F. Supp.2d 459, 464 (S.D.N.Y. 2013) ("In a breach of contract case, a plaintiff must plead," among other elements, "performance of the plaintiff's obligations under the contract") (internal quotation marks omitted).

Hedgeye is correct that there are a number of facts and issues in Hedgeye's claims that are not at issue in the fraudulent inducement counterclaim. The most obvious is the claim for misappropriation of trade secrets that began the litigation. But Hedgeye successfully moved to consolidate (by amendment) both its case against the Dale Defendants and the Terman Defendants. Hedgeye was adamant that "[t]he *Dale* and *Terman* actions involve identical alleged facts, legal issues, legal claims, documents and witnesses (both lay and expert)" and that "even th[e] defendant-specific claims involve all the same alleged facts, documents and witnesses. At least in terms of pretrial consolidation, there simply is no material difference between the two actions." (Dkt. 254 at 1.) To be sure, the Terman Defendants had not yet disclosed their counterclaims, but, as a sophisticated litigant represented by experienced and sophisticated counsel, Hedgeye reasonably should have anticipated that the Terman Defendants would assert counterclaims, including ones directly targeting the contract that Hedgeye claims they breached. Hedgeye may regret its decision to merge the two cases, but that does not entitle it to now sever them.

The third factor also weighs in favor of denying severance, with respect to both settlement and efficiency. Cleaving the fraudulent inducement counterclaim from the present action would result in two separate lawsuits (which alone is neutral) with the same parties (Hedgeye and the Terman Defendants), many of the same witnesses (including Terman, Hedgeye's CEO, and Hedgeye's President), and the same counsel (Hedgeye's attorneys and the Terman Defendants' attorneys), litigating over the same contract (the Services Agreement). Pursuing two actions will consume more resources and likely cost materially more than litigating one case, thereby making potential settlement, if there is

to be one, more difficult to achieve. Severance will also disserve judicial efficiency; it is far more efficient to keep the counterclaim in this action than to create a second separate litigation that will require expenditure of more money, more inconvenience to the parties and witnesses, and more time spent by both the parties and the Court to manage two separate cases.

Hedgeye focuses in particular on the fourth severance factor – prejudice. Hedgeye asserts that it will suffer "irreparable prejudice" because, without severance, it will not have the opportunity "to adequately investigate and defend itself against the Terman Counterclaim." (Pl. Mem. at 7.) Hedgeye contends that it received only a "notice" of counterclaims on September 20, 2022, and that the pleadings will not be closed by the current February 28, 2023 fact discovery deadline. (Pl. Mem. at 8, 10.) As set forth above, however, the notice served by the Terman Defendants attached a fully formed and articulated statement of their counterclaims and affirmative defenses, which the Terman Defendants represented would be in the same form as what they would later formally file. (Dkts. 338, 343.) A comparison of the counterclaims as served and the counterclaims as filed suggests that is exactly what transpired.

Hedgeye's plea of prejudice also misses the mark because, when the Terman Defendants served notice of their counterclaims and defenses, Hedgeye "promptly served document requests" (Pl. Mem. at 8), and when Hedgeye deposed the Terman Defendants' principal witness – Nadine Terman – Hedgeye questioned her about the facts underlying the counterclaims. After all, the very purpose of having the Terman Defendants serve notice of but not officially file their counterclaims was so that Hedgeye would be able to take discovery on them sooner rather than later but without

compromising the Terman Defendants' pending motion to dismiss based on personal jurisdiction. Had Hedgeye opposed proceeding in that fashion, it could have accepted the Court's explicit invitation to do so. (*See* Dkt. 339 at 2.) But it did not. If any party will incur prejudice from severance, it is not Hedgeye, but rather the Terman Defendants, who will be forced to fight on two litigation fronts, over a longer time period, while incurring the additional legal expenses of doing so.

Finally, Hedgeye argues that, although Hedgeye's principal witnesses would be witnesses in both actions if severed, other witnesses "would be unique either to the Terman Counterclaims or the other claims, but not both." (Pl. Mem. at 7.) Hedgeye again distinguishes between its claims for misappropriation and the Terman Defendants' counterclaim for fraudulent inducement to enter the Services Agreement. In doing so, Hedgeye once again overlooks the overlap between its breach of contract claim and the fraudulent inducement counterclaim. And even though there will be evidence relevant to misappropriation of trade secrets that is not germane to the fraudulent inducement counterclaim, that distinction does not warrant severing the claim for fraudulent inducement given that: (1) all the other factors strongly weigh against severance; (2) Hedgeye successfully moved for consolidation (by amendment) of the two actions on the basis that they both "involve all the same, facts, documents and witnesses" (Dkt. 254 at 1); and (3) Hedgeye has been on notice, and has pursued discovery, of the Terman Defendants' counterclaims since September 20, 2022. Under those circumstances, severance would be neither just nor equitable.

At bottom, Hedgeye's underlying concern is not one of severance. Rather, it is about the deadline for discovery. (*See* Dkt. 460 at 2 (Hedgeye stating that it "has moved

to sever the separate, unrelated Terman Counterclaim to permit sufficient time for Hedgeye to conduct discovery regarding that claim").) If Hedgeye believes an extension of time to take discovery is warranted, it should meet and confer with Defendants and may apply to the Court accordingly.

**Conclusion**

For the reasons set forth above, Plaintiff's motion to sever is DENIED. To the extent not addressed above, the Court has considered Hedgeye's arguments and finds them to be without merit.

SO ORDERED:

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: February 9, 2023
New York, New York

Copies transmitted to all counsel of record.