**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| HEDGEYE RISK MANAGEMENT, LLC, | : |
| | : No. 1:21-cv-03687 (ALC) (RWL) |
| Plaintiff-Counterdefendant, | : |
| v. | : |
| | : |
| DARIUS DALE; STEVEN LAMAR; 42 MACRO, LLC; NADINE TERMAN; AND SOLSTEIN CAPITAL, LLC. | : |
| | : |
| Defendants-Counterclaimants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF HEDGEYE'S MOTION TO DISMISS NADINE TERMAN AND SOLSTEIN CAPITAL'S AMENDED COUNTERCLAIMS**

# <u>TABLE OF CONTENTS</u>

Page(s)

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ........................................................................................... 4

I.    COUNTERCLAIMANTS' FRAUD IN THE INDUCEMENT CLAIM
      MUST BE DISMISSED .................................................................. 4

      A.    Counterclaimants Fail to Adequately Plead Fraudulent
            Inducement ......................................................................... 6

            1.    Counterclaimants Fail to Plead Each Element with
                  Specificity and Particularity ..................................... 6

            2.    Counterclaimants Lack Standing ............................... 8

II.   COUNTERCLAIMANTS' DEFAMATION CLAIM MUST BE
      DISMISSED .................................................................................. 11

      A.    The Allegedly Defamatory Statements Are Constitutionally
            Protected. ........................................................................... 11

      B.    Counterclaimants Fail to Adequately Plead Actual Malice ......... 13

III.  COUNTERCLAIMANTS' MALICIOUS PROSECUTION CLAIM
      FAILS AS A MATTER OF LAW BECAUSE NO ACTION HAS BEEN
      TERMINATED IN THEIR FAVOR ON THE MERITS ....................... 14

IV.   BOTH TORTIOUS INTERFERENCE CLAIMS FAIL AS A MATTER
      OF LAW ........................................................................................ 15

      A.    Both Tortious Interference Claims Are Duplicative of the
            Defamation Claim ............................................................... 15

      B.    Counterclaimants Fail to Plead That Hedgeye's Acted Solely Out
            of Malice or Used Improper Means ........................................ 17

CONCLUSION ....................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Acito v. IMCERA Group*,
  47 F.3d 47 (2nd Cir. 1995)..................................................................................6, 7

*Advanced Global Tech. LLC v. Sirius Satellite Radio*, *Inc.*,
  836 N.Y.S.2d 807 (N.Y. Sup. Ct. 2007) ...................................................................17

*Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
  436 F.3d 82 (2d Cir. 2006)...........................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................3, 4, 8, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................4

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015) .....................................................................................14

*Brookhaven Town Conservative Comm. v. Walsh*,
  258 F. Supp. 3d 277 (E.D.N.Y. 2017) .......................................................................7

*BYD Co. v. VICE Media LLC*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021)......................................................................13

*Castro v. E. End Plastic, Reconstructive & Hand Surgery, P.C.*,
  850 N.Y.S.2d 483 (N.Y. App. Div. 2008) ................................................................15

*Catalanello v. Kramer*,
  18 F. Supp. 3d 504 (S.D.N.Y. 2014).................................................................11, 12

*Coleman v. Grand*,
  523 F. Supp. 3d 244 (E.D.N.Y. 2021) ......................................................................13

*Coppelson v. Serhant*,
  No. 19-cv-8481 (LJL), 2021 WL 148088 (S.D.N.Y. Jan. 15, 2021) .........................5

*GateGuard, Inc. v. Amazon.com Inc.*,
  No. 21-cv-9321 (JGK), 2023 WL 2051739 (S.D.N.Y. Feb. 16, 2023) ....................16

*Global Energy & Mgmt., LLC v. Xethanol Corp.*,
  No. 07 Civ. 11049 (NRB), 2009 WL 464449 (S.D.N.Y. Feb. 23, 2009) ...................5

*Global Packaging Servs., LLC v. Global Printing & Packaging*,
  248 F. Supp. 3d 487 (S.D.N.Y. 2017).......................................................................17

*Hudson Val. Mar., Inc. v. Town of Cortlandt*,
   912 N.Y.S.2d 623 (N.Y. App. Div. 2010) ............................................................14

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
   698 F.3d 58 (2d Cir. 2012)..............................................................................5, 6

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006)................................................................................15

*Krepps v. Reiner*,
   588 F. Supp. 2d 471 (S.D.N.Y. 2008)..................................................................17

*Leadsinger, Inc. v. Cole*,
   No. 05-cv-5606 (HBP), 2006 WL 2320544 (S.D.N.Y. Aug. 10, 2006) ...........16, 17

*Lowe v. SEC*,
   472 U.S. 181 (1985)..............................................................................................7

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................................9, 10

*Munoz v. City of New York*,
   271 N.Y.S.2d 645 (N.Y. 1966) ..........................................................................14

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964)............................................................................................13

*Pandozy v. Tobey*,
   No. 06-cv-12885 (CM), 2007 WL 3010333 (S.D.N.Y. Oct. 11, 2007)..................12

*Pasqualini v. MortgageIT, Inc.*,
   498 F. Supp. 2d 659 (S.D.N.Y. 2007)..................................................................17

*Prickett v. New York Life Ins. Co.*,
   896 F. Supp. 2d 236 (S.D.N.Y. 2012)....................................................................7

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
   53 F. Supp. 3d 705 (S.D.N.Y. 2014)....................................................................16

*Robertson v. Doe*,
   No. 05-cv-7046 (LAP), 2010 WL 11527317 (S.D.N.Y. May 11, 2010)...........13, 14

*Sasso v. Corniola*,
   545 N.Y.S.2d 839 (N.Y. 1989) ..........................................................................15

*SEC v. Blavin*,
   557 F. Supp. 1304, 1310 (E.D. Mich. 1983) ........................................................9

*Silverman Ptnrs., L.P. v. First Bank*,
   687 F. Supp. 2d 269 (E.D.N.Y. 2010) ...................................................................6

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)..............................................................................................9

*Thar Process, Inc. v. Sound Wellness, LLC*,
   No. 21-CV-422S, 2022 WL 170608 (W.D.N.Y. Jan. 18, 2022)...............................4

*Tradeshift, Inc. v. Smucker Servs. Co.*,
   No. 20-CV-3661 (MKV), 2021 WL 4463109 (S.D.N.Y. Sept. 29, 2021) ............4, 5

*Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.*,
   449 F. Supp. 3d 385 (S.D.N.Y. 2020)................................................................6, 8

*U.S. Reg'l Econ. Dev. Auth., LLC v. Matthews*,
   No. 3:16-cv-01093 (CSH), 2017 WL 5992384 (D. Conn. Dec. 04, 2017).............5

*Ullmannglass v Oneida, Ltd.*,
   927 N.Y.S.2d 702 (N.Y. App. Div. 2011) ............................................................16

*Williams v. Buffalo Pub. Sch.*,
   758 F. App'x 59 (2d Cir. 2018) ...........................................................................11

*Zutel v. Wells Fargo Bank, N.A.*,
   No. 12-CV-3656 (RRM) (VMS), 2014 WL 4700022 (E.D.N.Y. Sept. 22,
   2014) .................................................................................................................5, 6

**Other Authorities**

Federal Rule of Civil Procedure 9(b)...........................................................................5

Federal Rule of Civil Procedure 8 .............................................................................14

Federal Rule of Civil Procedure 12(b)(6) ....................................................................4

## PRELIMINARY STATEMENT

Nadine Terman ("Terman"), Solstein Capital, LLC ("Solstein"), Darius Dale, Steven Lamar, and 42 Macro, LLC are all defendants in Hedgeye's trade secret litigation. Terman and Solstein (collectively "Counterclaimants") have brought unrelated counterclaims broadly alleging that Hedgeye Risk Management, LLC ("Hedgeye") fraudulently induced them into subscribing to Hedgeye's research in the first instance on the basis of incorrect U.S. Securities and Exchange Commission ("SEC") registration status, undisclosed conflicts of interest, and fraudulent business practices, including allegedly frontrunning clients.

Terman and Solstein were institutional subscribers to Hedgeye, an independent investment research and online financial media company, from 2017-2021. In early 2021, Terman began appearing on Fast Money, a program on CNBC. Hedgeye took note of her appearances as it perceived her to be parroting Hedgeye's research and style. The business relationship ended in 2021 following this continued parroting and, as Hedgeye would only later learn, Terman's conspiring with Darius Dale to help him form a competing enterprise using Hedgeye's trade secrets. Counterclaimants further allege that statements made by Hedgeye representatives in relation to Terman's appearances on CNBC and the underlying trade secret litigation constitute defamation and have led to clients withdrawing their business from Solstein and to Terman's reduced appearances on CNBC.

As will be discussed in detail below, these allegations are frivolous and merely retaliatory. They have no basis in law and must be dismissed.

## PROCEDURAL HISTORY

Hedgeye filed its complaint against Counterclaimants on February 9, 2022 asserting (among other claims) trade secret misappropriation on the basis of their conspiracy with Darius Dale, Steven Lamar, and 42 Macro, LLC. *Hedgeye v. Terman*, No. 1:22-cv-01113 (S.D.N.Y.),

1

Dkt. 1.  Following substantial and well-documented procedural wrangling, Hedgeye moved for and was granted leave to amend its complaint in the present action to include Counterclaimants. Dkt. 253, 302.  On August 24, 2022, Hedgeye wrote to the Court seeking relief in relation to the discovery schedule in this case.  Hedgeye noted that Counterclaimants (as well as the original Dale Defendants) had filed motions to dismiss Hedgeye's complaint, that the Court had not yet ruled on those motions, and that fact discovery was scheduled to close before any Defendant had answered Hedgeye's complaint or pleaded counterclaims (if any).  Dkt. 327.  The Court responded by ordering that Defendants serve notice of their planned affirmative defenses and counterclaims by September 20, 2022 such that discovery could be had on those allegations.  Dkt. 336.  The Dale Defendants and Terman Defendants each served notice of their counterclaims.  Dkt 340, 343.  The Terman Defendants (now, herein, Counterclaimants) – without prompting from the Court – later filed their counterclaims on January 31, 2023 and waived their personal jurisdiction objections.[1] Dkt. 461.  Hedgeye sought permission from the Court to move to dismiss those Counterclaims (Dkt. 476), and Counterclaimants responded by filing the Amended Counterclaims (Am. Countercls.) on March 14, 2023.  On April 18, 2023, the Court granted Hedgeye leave to move to dismiss the Terman Defendants' counterclaims and set a briefing schedule for that motion.  Dkt. 506.  This is that motion.  Fact discovery is nominally closed, and the parties are engaged in expert discovery.

## <u>COUNTERCLAIMANTS' ALLEGATIONS</u>

In 2017, Hedgeye entered into a subscriber agreement (the "Agreement") with Solstein whereby Hedgeye agreed to provide financial research services.   In the Agreement, Counterclaimants expressly acknowledged that Hedgeye's services "are purely independent

---

[1] The Dale Defendants still have not filed affirmative defenses or counterclaims, and Hedgeye has no responsive pleading due.

research and not offered as an invitation, or inducement, to engage in investment activity…." Hedgeye provided Counterclaimants with a copy of its Form ADV Part 2 ("Form ADV") before they entered the Agreement, and it continued to make its Form ADV available throughout the subscription period.[2]  Am. Countercls. ¶¶ 27, 34.  It is Hedgeye's business practice to provide all institutional subscribers a copy of its Form ADV.

Now, after a yearslong business relationship and only after being named defendants in Hedgeye's trade secret litigation, Counterclaimants complain that they were fraudulently induced to subscribe and remain subscribed to Hedgeye's services.  Counterclaimants point to perceived shortcomings with respect to Hedgeye's registration status with the SEC, alleging that Hedgeye claimed that "it did not need to register as an investment advisor with the SEC because it claimed to offer services akin to that of a passive newsletter, providing the same research in the same manner to all paying subscribers."  Am. Countercls. ¶ 7.  Counterclaimants also allege that Hedgeye provides Real-Time Alerts ("RTAs"), which provide subscribers with real-time buy, sell, and cover signals on stocks and other securities, to certain subscribers earlier than others, which allegedly resulted in frontrunning trades.  One of the alleged beneficiaries of this alleged frontrunning, according to Counterclaimants, was Sierpinski Capital Management, LLC ("Sierpinski"), a firm that utilizes Hedgeye research to produce stock portfolio recommendations that are then sold to a third-party asset management firm.  Counterclaimants also broadly allege that Hedgeye falsely marketed its performance and misrepresented its services with regard to position-sizing and advice.

---

[2] A Form ADV Part 2, incidentally, is an SEC-mandated narrative brochure of an investment adviser's business practices.

## ARGUMENT

To survive a Rule 12(b)(6) motion, a plaintiff's (or counterclaimant's) "[f]actual allegations must be enough to raise a right to relief above the speculative level," and allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is facially plausible only if "the plaintiff pleads *factual content* that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).

Counterclaimants must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. "Threadbare recitals of the elements of a cause of action supported by conclusory statements" are not sufficient, and a pleading fails if it alleges no "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Well-pleaded allegations in the complaint must nudge the claim 'across the line from conceivable to plausible.'" *Thar Process, Inc. v. Sound Wellness, LLC*, No. 21-CV-422S, 2022 WL 170608, at *6 (W.D.N.Y. Jan. 18, 2022) (quoting *Twombly*, 550 U.S. at 570). "A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Tradeshift, Inc. v. Smucker Servs. Co.*, No. 20-CV-3661 (MKV), 2021 WL 4463109, at *3 (S.D.N.Y. Sept. 29, 2021) (internal citations omitted).

## I.    COUNTERCLAIMANTS' FRAUD IN THE INDUCEMENT CLAIM MUST BE DISMISSED

Counterclaimants allege that they were fraudulently induced to enter into the Agreement with Hedgeye on the basis of alleged false statements and material omissions of fact. Specifically, the counterclaims allege that Hedgeye was "(a) falsely representing that Hedgeye complied with industry regulations when it did not; (b) falsely representing that Hedgeye was entitled to invoke

the 'newsletter' exemption to federal registration, when it was not; (c) falsely representing Hedgeye's affiliation with Sierpinski from 2019-2021 and omitting to disclose required conflicts of interest with respect to Sierpinski; (d) on and after March 31, 2021, continuing to omit material disclosures about conflicts of interest with Sierpinski; (e) falsely representing and omitting required disclosures of Hedgeye's material conflicts of interest which included, upon information and belief, facilitated trading ahead to the disadvantage against Hedgeye subscribers, thus materially degrading the value of its services; (f) falsely marketing Hedgeye's performance; and (g) falsely representing Hedgeye's services, including position sizing and advice."    Am. Countercls. ¶ 157.

To state a claim for fraudulent inducement, a claimant must allege "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the plaintiff]; and (iv) resulting damages."  *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012).[3]  Counterclaimants' allegations do not satisfy *any* of these elements.  "Beyond the requirements of Rule 12(b)(6), a complaint alleging fraud must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) by stating the circumstances constituting fraud with particularity."  *Tradeshift, Inc.*, 2021 WL 4463109, at *11.  "A claim for fraud or fraudulent inducement is subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b)."  *Coppelson v. Serhant*, No. 19-cv-8481 (LJL), 2021 WL 148088, at *8 (S.D.N.Y. Jan. 15, 2021).  Further, the particularity requirement under Rule 9(b) "applies to each element of a fraud claim."  *Zutel v.*

---

[3] Connecticut and New York law are the same with respect to fraud in the inducement. *See U.S. Reg'l Econ. Dev. Auth., LLC v. Matthews*, No. 3:16-cv-01093 (CSH), 2017 WL 5992384, at *8 (D. Conn. Dec. 04, 2017) (New York and Connecticut law on fraudulent inducement "do not appear to differ"); *Global Energy & Mgmt., LLC v. Xethanol Corp.*, No. 07 Civ. 11049 (NRB), 2009 WL 464449, at *5 n.4 (S.D.N.Y. Feb. 23, 2009) (same).

*Wells Fargo Bank, N.A.*, No. 12-CV-3656 (RRM) (VMS), 2014 WL 4700022, at *6 (E.D.N.Y. Sept. 22, 2014).

**A. Counterclaimants Fail to Adequately Plead Fraudulent Inducement**

  **1. Counterclaimants Fail to Plead Each Element with Specificity and Particularity.**

   As discussed above, Counterclaimants must plead "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the plaintiff]; and (iv) resulting damages." *Ipcon Collections*, 698 F.3d at 62. The Second Circuit requires further that the complaint must "explain why the statements were fraudulent." *Acito v. IMCERA Group*, 47 F.3d 47, 51 (2nd Cir. 1995) (internal citation omitted). Thus, Counterclaimants "must not only allege that the content is false, but 'they must demonstrate with specificity why and how that is so.'" *Travelex Currency Servs., Inc. v. Puente Enters., Inc.*, 449 F. Supp. 3d 385, 395 (S.D.N.Y. 2020) (*quoting Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)). Counterclaimants "must allege specific facts that give rise to a strong inference of knowledge of the fraud." *Silverman Ptnrs., L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010). They do none of these things.

   First, with respect to Counterclaimants' allegations that Hedgeye falsely represented its relationship with Sierpinski and its conflicts of interest with respect to RTAs, Counterclaimants fail to allege any "material misrepresentation of a *presently existing or past fact*." *Ipcon Collections*, 698 F.3d at 62. Counterclaimants do not allege that Hedgeye's "failure" to disclose a relationship with Sierpinski in Hedgeye's Form ADV *in 2017* was a material misrepresentation because they cannot. Sierpinski did not exist at the time. Counterclaimants' allegations that Hedgeye failed to properly register with the SEC and improperly claimed the "newsletter exemption" are not facts that are even capable of being misrepresented. Whether or not a company

is an investment advisor or is entitled to claim an exemption from a registration requirement is a legal question determined by the SEC on the basis of a variety of factors.  *See generally Lowe v. SEC*, 472 U.S. 181 (1985).  Further, to the extent Counterclaimants allege that they were fraudulently induced on the basis of Hedgeye's false marketing or representation of its services (Am. Countercls. ¶¶ 157(f)-(g)), the counterclaims are bereft of any facts sufficient to support the allegation that Hedgeye made any representations in its marketing around the time Counterclaimants considered obtaining or maintaining a subscription.

Counterclaimants' allegations also suffer from a failure to plead the second element of this cause of action:  "an intent to deceive."  *Ipcon Collections*, 698 F.3d at 62.  Counterclaimants must allege facts that give rise to a "strong inference" of fraudulent intent.  *Acito*, 47 F.3d at 52. "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Id*.  With respect to the allegations that Hedgeye falsely omitted conflicts of interest and facilitated trading ahead of its subscriber base, Counterclaimants do neither.  Counterclaimants do not and cannot allege any facts that show why Hedgeye would have a particular motive to commit fraud against all of its subscribers, much less that it had this motive in mind at the time Solstein was a subscriber. Hedgeye, like all businesses, undertakes to make money.  However, in this context, "a general profit motive, such as the motive to earn fees, is not sufficient motive to commit fraud."  *Prickett v. New York Life Ins. Co.*, 896 F. Supp. 2d 236, 246 (S.D.N.Y. 2012).  Rather, Counterclaimants must allege evidence, circumstantial or otherwise, of specific facts and motive to commit fraud, which they wholly fail to do.  *See Brookhaven Town Conservative Comm. v. Walsh*, 258 F. Supp. 3d 277, 286 (E.D.N.Y. 2017) ("Indeed, a generalized profit motive that could be imputed to any company . . . has been consistently rejected as a basis for inferring fraudulent intent.").  Hedgeye expressly disclosed to

its subscribers that some methods of receiving RTAs are faster than others (such that some would-be traders might be able to trade faster than others), yet Counterclaimants somehow believe this bolsters rather than guts their allegations. Am. Countercls. ¶¶ 49-54. The fact that Hedgeye included this notice informing users of potential delays in receiving information clearly negates any fraudulent intent.

Counterclaimants also fail to allege facts sufficient to establish reasonable reliance on their part. Counterclaimants allege that "Terman and Solstein relied on Hedgeye's misrepresentations and omissions in subscribing to Hedgeye's services. Had Hedgeye told the truth, Terman and Solstein would not have subscribed in the first place, and Solstein would have cancelled its subscription once the truth was known." Am. Countercls. ¶ 159. This assertion is the very definition of a "[t]hreadbare recital[] of the elements of a cause of action" that courts must ignore. *Iqbal*, 556 U.S. at 678. Counterclaimants fail to plead any reliance, let alone facts showing that the misrepresentation was a "substantial factor" in their decision. *See Travelex*, 449 F. Supp. 3d at 399 (S.D.N.Y. 2020). As described above, because there was no material misrepresentation with respect to Sierpinski or Hedgeye's business practices or Hedgeye's marketing, there necessarily can be no reliance on any assertedly untrue facts. Similarly, Counterclaimants fail to plead any facts demonstrating that Hedgeye's alleged misstatements in its Form ADV were a factor, much less a substantial factor, in Counterclaimants' decision to enter into or continue the subscription agreement.

Because the factual underpinnings of each allegation of fraud in the inducement suffer from at least one and in some cases multiple pleading defects, the claim must be dismissed in its entirety.

### 2. Counterclaimants Lack Standing

Counterclaimants' allegations that they were fraudulently induced on the basis of Hedgeye failing to register with the SEC as an investment advisor and claiming the newsletter exemption

amount to Counterclaimants attempt improperly to stand in the shoes of the SEC. These alleged "misrepresentations" are matters to be evaluated by the SEC, not this Court in this context, and Counterclaimants thus lack standing to bring claims based on these SEC matters.

> "[T]he irreducible constitutional minimum of standing is that (1) the plaintiff must have suffered an injury in fact -- that is, an invasion of a legally protected interest which is (a) concrete and particularized, meaning that the injury must affect the plaintiff in a personal and individual way, and (b) actual or imminent, not conjectural or hypothetical, (2) there must be a causal connection between the injury and the conduct complained of--that is, the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court, and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 557 (1992). This Court, respectfully, is not in the proper position to evaluate whether Hedgeye should properly be registered with the SEC as an investment advisor or whether it is entitled to rely on the newsletter exemption to registration. As discussed above, the determination whether Hedgeye properly claimed an exemption to regulatory requirements is not properly litigated in this context. *See, e.g., SEC v. Blavin*, 557 F. Supp. 1304, 1310 (E.D. Mich. 1983) (analyzing whether a defendant could claim exemption in context of SEC action).

Counterclaimants do not have standing to assert their fraudulent inducement claim in the form they have pleaded it. *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) ("Article III standing is a fundamental constitutional requirement that prevents courts from unnecessarily reaching legal issues in situations where the party to the litigation has failed to allege an injury which triggers an actual case or controversy that needs resolution by the courts.") (*citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). The injury-in-fact requirement for standing requires a plaintiff to allege an injury that is both concrete and particularized. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (holding that a party lacks constitutional standing where they fail to allege a sufficient injury in fact).

Counterclaimants allege they were fraudulently induced to subscribe to Hedgeye's service and acknowledge that their relationship with Hedgeye terminated on or around March 31, 2021. *See* Am. Countercls. ¶ 64.  Yet, the only example they provide of an alleged "injury" relating to RTAs is based on an RTA that Hedgeye issued after the termination of Counterclaimants' subscriber agreement.  *See* Am. Countercls., ¶ 44.  It is axiomatic that Counterclaimants lack standing to complain about an RTA issued in September 2022 because they were no longer Hedgeye subscribers and would not have received the RTA in the first instance; there can be no injury-in-fact stemming from an RTA they did not receive.  Counterclaimants make the conclusory allegation that there were over 500 instances in which they were "victimized" by Hedgeye's issuance of RTAs in 2020 and 2021, but Counterclaimants do not identify any specific dates, practices, or injuries, meaning their alleged injury is in no way "concrete and particularized," nor is it "actual or imminent."  *Lujan*, 504 U.S. at 557.  This is insufficient as a matter of law. Counterclaimants do not allege any facts from which a court could infer that they were ever harmed in any way.  Hedgeye explains on its website and in its Form ADV (referenced liberally in the counterclaims) that RTAs are posted on the Hedgeye website (the fastest way to get them), via a proprietary mobile app (the next fastest way to get them), and sent by email (the next fastest way to get them).  Counterclaimants cannot, in the face of these clear disclosures, show any misleading actions or intent.

Indeed, discovery has shown that Counterclaimants themselves knew to obtain and did obtain RTAs from Hedgeye's website.  Counterclaimants' only example – with full-color chart in ¶ 33 – is an RTA that Hedgeye issued on September 7, 2022, for Krispy Kreme Inc. (ticker symbol DNUT).  The chart appears to show a precipitous drop in price after Hedgeye issues a sell/short RTA when the stock was at $12.16.  Counterclaimants allege that they could not have sold/shorted the stock at $12.16 because Hedgeye's RTA immediately caused a price drop in heavy trading

volume, with Hedgeye's affiliate allegedly beating the market.  This allegation is completely fabricated.  The reality is that Counterclaimants' chart zooms in to exaggerate the appearance of a small price drop over a short time.  The chart shows a 21-cent drop in price of a stock that was trading at $12.16 – that is, a drop of just 1.7% – over a period of three minutes.  Zooming out to show the full day's trading on September 7, 2022 and the onward path of the stock the next day reveals that the 21-cent drop was just one zig of many zigs and zags for DNUT.  If a Hedgeye affiliate were front-running the stock, one would expect sales volume to increase and the price to start to drop before the public announcement.[4]  It didn't.  Counterclaimants' example does not provide evidence of front-running, rather it supports just the contrary.  If front-running occurred, the price movement would have occurred before the RTA, ***not after***.  Moreover, Counterclaimants provide no evidence that Hedgeye or any employee or any affiliate of Hedgeye traded DNUT based on the RTA, let alone ahead of the RTA, because no such trading occurred.  Not only is Counterclaimant's allegation baseless and wrong, it is defamatory *per se* as the false allegation of a crime (i.e. securities fraud by front-running).

Because Counterclaimants have not identified a cognizable injury-in-fact with respect to the RTAs referred to in the counterclaims, this claim must be dismissed.

## II.    COUNTERCLAIMANTS' DEFAMATION CLAIM MUST BE DISMISSED

### A.  The Allegedly Defamatory Statements Are Constitutionally Protected.

"Only false statements of fact are subject to a defamation action; expressions of opinion are deemed privileged."  *Williams v. Buffalo Pub. Sch.*, 758 F. App'x 59, 65 (2d Cir. 2018).  Most of the allegedly defamatory statements set forth in the counterclaims are not statements of fact at all but rather are "[s]tatements of opinion, [which] as a matter of constitutional law, enjoy absolute

---

[4] Discovery also has revealed that no Hedgeye employee or affiliate even traded in DNUT stock.

immunity." *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 517 (S.D.N.Y. 2014) (dismissing defamation claims where the allegations constituted non-actionable statements of opinion). Most of the balance of the allegedly defamatory statements are statements that cannot be either true or false. *See* Am. Countercls. ¶ 177 (citing ¶¶ 92, 94, 97-101, 125, 131-145, and 149).

For example, Counterclaimants label as "defamatory" statements that are clearly opinions, like "Her copying my language and process wasn't subtle." (*Id.* ¶ 94); Terman makes "terrible stock picks" and "tries speaking [Hedgeye's] quad language" (*Id.* ¶ 97); and "Terman lacks #integrity" (*Id.* ¶ 99). Indeed, all the allegations set forth in paragraph 132 of the Amended Counterclaims are likewise unactionable opinions[5]:

o  "Terman demonstrated a pattern of exploiting her relationship with Hedgeye to misappropriate the firm's intellectual property."

o  "Seeing an opportunity to end Solstein's reliance on Hedgeye in March of 2021, Terman contacted then-Hedgeye Macro Analyst, Darius Dale. Together, they developed a plan to exploit Hedgeye's intellectual property whereby: 1) Dale would steal Hedgeye's trade secrets; 2) Dale's and Terman's partner and co-conspirator Steven Lamar would finance and manage the launch of Dale's competing business, '42 Macro' and 3) The competing business would 'sell' virtually identical research to Solstein Capital that Solstein had been buying from Hedgeye."

o  "Terman, Dale and Lamar launched their competing company, '42 Macro,' whose entire business consists of selling research derived from stolen Hedgeye financial

---

[5] To the extent Counterclaimants quote or paraphrase Hedgeye's lawsuit, the allegations are protected by judicial privilege. *Pandozy v. Tobey*, No. 06-cv-12885 (CM), 2007 WL 3010333, at *2 (S.D.N.Y. Oct. 11, 2007) ("Judicial privilege extends to all statements pertinent to a litigation, regardless of the offending party's motive or malice is making those statements. The privilege is often described as absolute, which means that it protects the person making the untrue statement, '….no matter how great the personal malice of the writer.'") (*quoting Pecue v. West*, 233 N.Y. 316 (1922). Moreover, the lawsuit itself represents an affirmation that Hedgeye believes its allegations and therefore lacks actual malice.

models, just days after Dale's resignation.  At the same time, Terman ended Solstein's subscription to Hedgeye's research."

Any *statements of fact* that remain after weeding out the unactionable opinions and legal conclusions are never actually denied by Counterclaimants.  Accordingly, every statement in the Counterclaims is either an opinion or a legal conclusion that will be decided on the merits. Counterclaimants' defamation claim must be dismissed.

### B.  Counterclaimants Fail to Adequately Plead Actual Malice

Counterclaimants allege defamation on the basis of statements made by Hedgeye representatives on Twitter and Hedgeye TV concerning Hedgeye's trade secret litigation and Hedgeye's observation that Terman was copying Hedgeye research on her CNBC appearances.

Generally, a claim for defamation requires only that the defendant negligently failed to investigate facts before making a false statement.  However, the First Amendment requires that when a defamatory statement is allegedly made about a public figure, the plaintiff has a heightened burden and must prove that the statement was published with "actual malice."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964); *see also BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810, 818 (S.D.N.Y. 2021).  Actual malice is unrelated to the defendant's feelings toward the plaintiff, but instead is the "knowledge that [a statement] was false or with reckless disregard of whether it was false or not.  *Id*; *see also Coleman v. Grand*, 523 F. Supp. 3d 244, 261 (E.D.N.Y. 2021) ("The actual malice standard focuses not on the defendant's attitude toward the plaintiff, but rather on the defendant's attitude toward the truth.") (internal citations and quotations omitted).

There is no question that Terman and Solstein are limited purpose public figures with respect to the financial service sector due to their regular appearances on Fast Money on CNBC. The Southern District has considered facts of striking similarity:  In *Robertson*, the court found that, "[b]ased on Plaintiff's founding of a large hedge fund, his status as a well-known figure on

Wall Street, and his appearance on CNBC to speak about the hedge fund industry and the current investment climate, he qualifies as a limited purpose public figure."  *Robertson v. Doe*, 2010 U.S. Dist. LEXIS 151305, at \*4 (S.D.N.Y. May 11, 2010).

To survive a motion to dismiss, "malice must be alleged plausibly in accordance with Rule 8."  *Biro v. Condé Nast*, 807 F.3d 541, 545 (2d Cir. 2015).  Therefore, "a public-figure plaintiff must plead plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice."  *Id.* at 546.  Here, Counterclaimants allege nothing that would raise a reasonable expectation that they will discover evidence of actual malice.  To the contrary, Counterclaimants suggest, correctly, that Hedgeye fully believed and continues to believe its allegedly defamatory statements, requiring dismissal of the claim as a matter of law.  Thus, Counterclaimants' defamation claim fails as a matter of law because they do not adequately allege "actual malice;" *i.e.*, they resort to conclusory (and contradictory) allegations that Hedgeye knew its statements to be false.

### III.  COUNTERCLAIMANTS' MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW BECAUSE NO ACTION HAS BEEN TERMINATED IN THEIR FAVOR ON THE MERITS

"The elements of the tort of malicious prosecution of a civil action" require a civil action "which terminated in favor of the plaintiff . . . ."  *Hudson Val. Mar., Inc. v. Town of Cortlandt*, 912 N.Y.S.2d 623, 625-26 (N.Y. App. Div. 2010).  The requirement of favorable termination "is essential to the maintenance of any action for malicious prosecution" and "is a kind of pre-condition to the later action, the *sine qua non*."  *Munoz v. City of New York*, 271 N.Y.S.2d 645, 649 (N.Y. 1966).

The civil action upon which Counterclaimants sue must be *Hedgeye v. Terman*, No. 1:22-cv-01113 (S.D.N.Y.).  No other action has been terminated.  The only reason that action has been terminated is because, pursuant to Court Order, all allegations in that action were incorporated into

14

the present (unresolved) action.  Specifically, on June 2, 2022, Hedgeye filed a motion to consolidate the *Terman* action with this action or, in the alternative, to amend the complaint in this matter to include Counterclaimants.  Dkt. 253.  On July 15, 2022, this Court ordered that, "[t]o advance judicial efficiency and avoid the risk of inconsistent determinations, the Court grants Hedgeye leave to file an amended complaint in the Dale action and name Terman and Solstein as defendants."  Dkt. 302.  Therefore, on July 27, 2022 Hedgeye voluntarily dismissed the *Terman* action without prejudice.  Terman Dkt. 57.

Counterclaimants cannot state a claim for malicious prosecution as a matter of law because Counterclaimants must allege that the Court ruled on "the merits of the charge or claim . . . under such circumstances as to show . . . nonliability, or evidence that the action was abandoned under circumstances which fairly imply the plaintiff's innocence."  *Castro v. E. End Plastic, Reconstructive & Hand Surgery, P.C.*, 850 N.Y.S.2d 483, 485 (N.Y. App. Div. 2008).  Simply put, Counterclaimants' claim must be dismissed because "[a] cause of action sounding in malicious prosecution cannot be interposed as a counterclaim in the very civil action that was allegedly instituted wrongfully."  *Sasso v. Corniola*, 545 N.Y.S.2d 839, 840 (N.Y. 1989).

## IV.    BOTH TORTIOUS INTERFERENCE CLAIMS FAIL AS A MATTER OF LAW

### A.  Both Tortious Interference Claims Are Duplicative of the Defamation Claim

Counterclaimants' second and third claims both allege that, "[b]ut for Hedgeye's conduct, Solstein would not have lost the client relationships and would still be actively appearing on CNBC."  Am. Countercls. ¶¶ 166, 174.  To state a claim for tortious interference with contract, a plaintiff must show "[i] the existence of a valid contract between the plaintiff and a third party; [ii] the defendant's knowledge of the contract; [iii] the defendant's intentional procurement of the third-party's breach of the contract without justification; [iv] actual breach of the contract; and [v] damages resulting therefrom."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006)

(internal quotations and citations omitted).  "To state a claim for tortious interference with prospective economic advantage under New York law, a plaintiff must plausibly allege that (1) the plaintiff had a business relationship with a third party, (2) the defendant knew of that relationship and intentionally interfered with it, (3) the defendant either acted solely out of malice, or used dishonest, unfair, or improper means, and (4) the defendant's interference caused injury to the relationship."  *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-cv-9321 (JGK), 2023 WL 2051739, at *27 (S.D.N.Y. Feb. 16, 2023) (internal quotations and citations omitted).  Counterclaimants fail to plead these claims.

First, Counterclaimants' conclusory allegations, without citing any evidence, are insufficient to state a claim for tortious interference.  At no point in the counterclaims do Counterclaimants identify the contracts that they allege Hedgeye to have tortiously interfered with except in the most abstract of terms.  There are no details provided regarding any provisions of these contracts, nor are there any allegations that these third parties actually *breached* their respective contracts.  "[T]o sustain a claim for tortious interference with a contract, it must be established that a . . . third party intentionally and improperly procured the breach of the contract . . . ."  *Ullmannglass v Oneida, Ltd.*, 927 N.Y.S.2d 702, 705 (N.Y. App. Div. 2011); *see also Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 727 (S.D.N.Y. 2014) (elements of tortious interference with contract under New York law include "actual breach of the contract . . . .").  Counterclaimants are careful to allege that Hedgeye *procured the termination* [of the contract] without justification, using tortious conduct."  Am. Countercls. ¶ 166 (emphasis added).  Similarly, Counterclaimants can only muster that the third-party clients *ended* their contractual relationships with Counterclaimants.  *Id.* ¶ 165.  However, absent a *breach* of those contracts, Counterclaimants may not maintain an action for tortious interference with contract.  *See Leadsinger, Inc. v. Cole*, No. 05-cv-5606 (HBP), 2006 WL 2320544, at *11-12 (S.D.N.Y. Aug. 10, 2006) (dismissing claim

16

for tortious interference where party failed adequately to allege the specific breach). Counterclaimants, to their credit, were honest in avoiding to assert that these counterparties breached their contracts, but it is for this reason that the counterclaims fail.

Second, the "conduct" to which Counterclaimants refer is Hedgeye's protected speech that Counterclaimants also allege is defamatory. Am. Countercls. ¶¶ 151-55. And Counterclaimants allege the same result from the same speech, i.e. that they suffered harm in the form of "the loss of the CNBC appearance and the loss of at least three contracts with a combined investment exceeding $100 million." Am. Countercls. ¶ 180. Counterclaimants' tortious interference claims fail as a matter of law because the speech is constitutionally protected. Counterclaimants are "not permitted to dress up a defamation claim as a claim for intentional interference with a prospective economic advantage." *Krepps v. Reiner*, 588 F. Supp. 2d 471, 485 (S.D.N.Y. 2008). Indeed, "New York Courts have consistently ruled that a claim which is ostensibly based upon the intentional torts of interference with advantageous or contractual relations, but which alleges injury to reputation, is a disguised defamation claim . . . ." *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 669-70 (S.D.N.Y. 2007) (internal quotation marks omitted).

### B. Counterclaimants Fail to Plead That Hedgeye's Acted Solely Out of Malice or Used Improper Means

As discussed above, tortious interference with prospective business relations is distinguished from interference with contract in that it requires a higher showing that the defendant "acted solely out of malice, or used dishonest, unfair, or improper means . . . ." *Global Packaging Servs., LLC v. Global Printing & Packaging*, 248 F. Supp. 3d 487, 494 (S.D.N.Y. 2017). Counterclaimants have failed to allege any facts to support their contention that Hedgeye procured the termination of Solstein's relationships "for the sole and malicious purpose of inflicting intentional harm on Terman and Solstein." Am. Countercls. ¶ 173. Counterclaimants' conclusory

assertions of malice are insufficient. *See Advanced Global Tech. LLC v. Sirius Satellite Radio*, *Inc.*, 836 N.Y.S.2d 807 (N.Y. Sup. Ct. 2007) (dismissing tortious interference with prospective business relations claim where malice assertions were conclusory); *see also Iqbal*, 556 U.S. at 678. These claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Hedgeye respectfully requests that the Counterclaims be dismissed in their entirety.

Respectfully submitted,

Dated: May 19, 2023

*/s/ Eric A. Prager*
Eric A. Prager
Thomas E. Wallerstein
VENABLE LLP
151 West 42nd Street
New York, NY 10036
Tel.: 212.307.5500
EAPrager@Venable.com
TWallerstein@Venable.com

*Attorneys for Hedgeye Risk Management, LLC*