```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HEDGEYE RISK MANAGEMENT, LLC,         :
                                      :
                         Plaintiff,   :       21-CV-3687 (ALC) (RWL)
                                      :
           - against -                :       ORDER
                                      :
DARIUS DALE; STEVEN LAMAR; 42 MACRO,  :
LLC; NADINE TERMAN; and SOLSTEIN      :
CAPITAL, LLC,                         :
                                      :
                         Defendants.  :
-----------------------------------------------------------------X
```

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Hedgeye Risk Management, LLC ("Hedgeye") alleges that the Defendants Darius Dale ("Dale"), Steven Lamar ("Lamar"), 42 Macro LLC, Nadine Terman, and Solstein Capital, LLC (collectively, "Defendants"), misappropriated Hedgeye's trade secrets. During the course of discovery, this Court issued two orders, among many, to which Hedgeye objected. On June 28, 2023, District Judge Andrew L. Carter issued an opinion and order affirming substantially all of those orders and setting aside rulings on two issues for this Court to reconsider. (Dkt. 581.) One issue concerns enforcement of a subpoena (the "Subpoena") that Hedgeye served on a non-party corporate entity named Longbow Trade Signals LLC ("Longbow"). The second issue concerns whether Defendant Lamar should be compelled to answer questions about statements he made during settlement discussions with Hedgeye. This order resolves those two issues.

## Longbow

The Subpoena sought both documents and a deposition of Longbow. (*See* Dkt. 403-3.) The Court previously granted Defendants' letter motion to quash the Subpoena because the document requests and deposition topics were "exceedingly overbroad and

1

disproportionate." (Dkt. 425.) Hedgeye objected to that ruling principally because the order quashing the Subpoena also included a parenthetical: "(all the more so in light of the fact that Dale never joined Longbow)." (Dkt. 435 at 4.) The parties dispute the relevance and role of Longbow, and, as Judge Carter correctly observed, this Court's ruling did not rest on resolving that dispute. (Dkt. 581 at 18.) Rather, the expansive scope of the Subpoena, consequent burden, and other relevant factors, were sufficient grounds to quash it.

The rules for discovery "contemplate that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1)." *Associacao dos Profissionais dos Correios v. Bank of New York Mellon Corp.*, No. 22-MC-0132, 2022 WL 4955312, at *8 (S.D.N.Y. Oct. 4, 2022) (citing Fed. R. Civ. P. 26(b)(1)). Courts regularly quash subpoenas that are overbroad. *See*, *e.g.*, *Estate of Ungar v. Palestinian Authority*, 332 F. App'x 643, 645 (2d Cir. 2009) (affirming district court's quashing of subpoena "because it was overly broad and burdensome"); *Morelli v. Alters*, 2020 WL 6508858, at *6 (S.D.N.Y. Nov. 5, 2020) (quashing three subpoenas that were "substantially overbroad" and seemingly issued for purposes of harassment); *Bhatt v. Lalit Patel Physician P.C.*, No. 18-CV-2063, 2020 WL 13048694, at *2-3 (E.D.N.Y. Oct. 19, 2020) (quashing subpoena for documents and deposition testimony where requests were not sufficiently tailored); *Blackrock Allocation Target Shares v. Wells Fargo Bank, N.A.,* No. 14-CV-9371, 2017 WL 9401102, at *2-3 (S.D.N.Y. March 2, 2017) (denying motion to compel compliance with deposition and document subpoena where document requests and deposition topics were deemed "unduly broad, vague, and burdensome").

Hedgeye contends that Longbow was a corporate vehicle formed by the Defendants in connection with their alleged misappropriation of trade secrets. During discovery, Hedgeye has sought – and received – documents and deposition testimony about Longbow from the individual Defendants. Even so, the Court agrees that some discovery directly from Longbow itself may be warranted. That discovery, however, must be proportional, not overly broad, and not an undue burden. As previously determined, the Subpoena as authored by Hedgeye does not meet those requirements.

The Subpoena includes 19 document requests and 20 corresponding topics for the deposition of a corporate representative. (Dkt. 403-3 at ECF 7-11.) Each document request starts with "All Documents" or "All Communications," which often is a red flag for overbreadth and undue burden. *See Optionality Consulting Pte. Ltd. v. Edge Technology Group LLC*, No. 18-CV-5393, 2022 WL 1977746, at *3-4 (S.D.N.Y. June 3, 2022) (holding that party did not have to respond to various requests for "all documents and communications," which were overbroad and "presumptively improper"); *accord United States Securities and Exchange Commission v. Ahmed*, No. 3:15-CV-675, 2018 WL 1541902, at *2 (D. Conn. March 29, 2018) ("A large portion of the document requests seek the production of 'all documents' relating to various issues. Courts have often found that such blanket requests are overbroad and impermissible"); *Gropper v. David Ellis Real Estate, L.P.,* No. 13-CV-2068, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (finding requests for "any" and "all" documents were "inherently overbroad").

For example, five of the requests ask for "[a]ll documents comprising, evidencing, or reflecting [a particular individual or entity]'s role in the formation or operation of [Longbow] from January 1, 2021 to the present." (Subpoena Requests 8-12.) There no

3

doubt are multiple facets to operating, and thus one's role in operating, a company. Yet the requests for each individual or entity engulf all aspects of their roles regardless of whether those operations have any relevance to the issues in dispute. As another example, the Subpoena requests "All Communications with and Documents regarding Darius Dale." (Subpoena Request 3.) To be sure, Dale is the central protagonist in this lawsuit, but that does not make relevant or discoverable from Longbow every document about him. Similarly, the Subpoena requests "All Documents regarding data or content received from" 42 Macro, Solstein Capital, or Nadine Terman. (Subpoena Requests 4, 18.) Neither "data" nor "content" are defined terms, and there are no parameters or descriptors in the requests that cabin them in any way.

To be sure, some of the Subpoena's requests are more tailored, such as those asking for all communications with particular persons regarding business plans during a limited three-month period. (Subpoena Requests 1, 2, 5.) But even requests that appear to have been designed to be more limited suffer from overbreadth such as the requests asking for "All Documents sufficient to show" ownership and partnership interests. (Subpoena Requests 6, 7.) Those requests would be proportional if simply framed as "Documents sufficient to show," but inclusion of the word "All" at the beginning is at odds with the notion of providing only a limited set of materials sufficient to show the particular fact.

Given the overbreadth and consequent burden and lack of proportionality of much of the Subpoena's requests, the Court would be acting well within its discretion, as it did previously, to quash the Subpoena in its entirety rather than attempt to revise it. *See Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09-CV-1608, 2010 WL 1327921, at *11

(S.D.N.Y. Apr. 5, 2010) ("As they stand, the plaintiffs' requests are grossly overbroad, and I decline to rewrite them"); *Gropper*, 2014 WL 518234 at *5 ("I respectfully decline to rewrite the plaintiff's discovery demands").  But, upon reconsideration, the Court adopts an alternative path.  Because the parties continue to dispute Longbow's role, the Court agrees that some discovery directly from Longbow is appropriate.  Accordingly, the parties shall meet and confer to narrow the Subpoena's requests, and Longbow shall then comply with the Subpoena as narrowed.  The deposition of Longbow may be taken remotely and shall be limited to three hours.

### Lamar

Early in the case, Lamar met and corresponded with Hedgeye executives and lawyers to discuss the possibility of settlement.  Hedgeye acknowledged in writing that "[w]e are all agreeing that the discussions you and I have had and continue to have will be treated as confidential settlement discussions."  (Dkt. 407 Ex. A.)  At Lamar's deposition, however, Hedgeye's counsel asked questions about what Lamar said in settlement discussions, including whether he had "told the truth" during those discussions. (Dkt. 407 Ex. C at 8-9, 278-81.)  Defense counsel objected to the questioning and directed Lamar not to answer.  (*Id.*)  Hedgeye moved to compel Lamar to answer those questions, contending that there is no "settlement privilege" or other rule foreclosing discovery of settlement communications.  (Dkt. 399 at 2.)

In opposition, Defendants argued that statements made during settlement discussions would not be admissible evidence, pursuant to Federal Rule of Evidence 408; that discovery about settlement communications could not lead to admissible evidence; and that the questioning was nothing more than harassment.  Defendants also

5

distinguished, correctly, the cases cited by Hedgeye as either (i) pre-dating a 2006 amendment to Rule 408 clarifying that the rule precludes use of settlement communications for impeachment, or (ii) otherwise involving discovery of third-party settlement agreements. (Dkt. 407 at 2 and n.1.) This Court denied Hedgeye's motion to compel "for substantially the reasons set forth in Defendants' letter." (Dkt. 415.)

In ruling on Hedgeye's objections, Judge Carter noted that Defendants' briefing had relied on a pre-2015 amendment version of Federal Rule of Civil Procedure 26(b)(1), which permitted, inter alia, discovery of evidence that was reasonably calculated to lead to the discovery of admissible evidence. (Dkt. 581 at 16.) In 2015, however, Rule 26(b)(1) was amended to, inter alia, delete reference to discovery requests "reasonably calculated to lead to the discovery of admissible evidence" and clarify that the scope of permissible discovery is grounded not only in relevance but also proportionality.[1] *See North Shore-Long Island Jewish Health Systems, Inc. v. Multiplan, Inc.*, 325 F.R.D. 36, 47-48 (E.D.N.Y. 2018) ("Federal Rule of Civil Procedure 26(b)(1), as amended on December 1, 2015, recognizes that information is discoverable ... if it is relevant to any party's claim or defense and is proportional to the needs of the case") (internal quotation marks and citation omitted). Judge Carter could not determine which standard this Court had applied

---

[1] The rule, as amended in 2015, provides that: "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

6

and referred the matter to this Court for evaluation under the correct standard.  (Dkt. 581 at 16.)

To be clear, this Court previously applied, and applies once again, the correct standard under Fed. R. Civ. P. 26(b)(1) based on relevance and proportionality.[2] Moreover, the 2015 amendments did not change the standard for discovery but rather emphasized the need for proportionality.  *Vaigasi v. Solow Management Corp.*, No. 11-CV-5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (Rule 26(b)(1), as amended, "constitute[s] a reemphasis on the importance of proportionality in discovery but not a substantive change in the law"); *Robertson v. People Magazine*, No. 14 Civ. 6759, 2015 WL 9077111, at *2 (S.D.N.Y. Dec. 16, 2015) ("the 2015 amendment does not create a new standard; rather it serves to exhort judges to exercise their preexisting control over discovery more exactingly").  The 2015 amendments eliminated the phrasing permitting discovery or inadmissible evidence that is otherwise "reasonably calculated to lead to the discovery of admissible evidence," not to expand discovery, but as a prophylactic measure against discovery abuses and to prevent the phrase from "swallow[ing] any other limitation on the scope of discovery."[3]  Rule 26 Advisory Committee Notes to 2015 Amendments.

---

[2] Nor did this Court recognize a so-called "settlement privilege" as Hedgeye incorrectly suggests.

[3] The 2015 amendment advisory committee notes explain more fully as follows: "The former provision for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is also deleted. The phrase has been used by some, incorrectly, to define the scope of discovery.  As the Committee Note to the 2000 amendments observed, use of the 'reasonably calculated' phrase to define the scope of discovery 'might swallow any other limitation on the scope of discovery.'  The 2000 amendments sought to prevent such misuse by adding the word

Indeed, discovery that is not likely to lead to the discovery of admissible evidence necessarily diminishes its "importance … in resolving the issues," increases burdens by adding to the length and cost of discovery, and reduces the "likely benefit" of the discovery.  *See* Fed. R. Civ. P. 26(b)(1).  Those factors weigh against a finding that the discovery sought is "proportional to the needs of the case." *Id.*  So does the fact that Hedgeye already possesses Lamar's written settlement communications and participated in the oral settlement discussions.  *See id.* (listing as a factor "the parties' relative access to relevant information").  As for the remaining proportionality factors, the subject matter of the proposed deposition questioning (i.e., whether and to what extent Defendant Dale misappropriated trade secrets and benefits that may have provided) go to the heart of the case and therefore are important; the amount in controversy is undefined (the operative pleading claims various harms but does not place a dollar value on them); and there is no evidence before the Court that the Defendants do not have sufficient resources to absorb the additional deposition costs that would be incurred in asking Lamar the questions at issue.  In short, some proportionality considerations weigh in favor of

---

'Relevant' at the beginning of the sentence, making clear that 'relevant' means within the scope of discovery as defined in this subdivision ….'  The 'reasonably calculated' phrase has continued to create problems, however, and is removed by these amendments.  It is replaced by the direct statement that 'Information within this scope of discovery need not be admissible in evidence to be discoverable.'  Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery." Rule 26 Advisory Committee Notes to 2015 Amendments.  Another change in the 2015 Amendments sought to rein in misuse of discovery by deleting the "provision authorizing the court ... to order discovery of any matter relevant to the subject matter involved in the action."  *Id.*; *see also North Shore-Long Island Jewish Health Systems, Inc.,* 325 F.R.D. at 48 ("The rationale behind the elimination of this phrase is the reality that it 'has been used by some, incorrectly, to define the scope of discovery'") (citing Rule 26 Advisory Committee Notes to 2015 Amendments).

permitting the requested discovery, while others weigh against it; and, as indicated by the Court's earlier ruling on the issue, the factors against outweigh those in favor.

To be clear, this Court did not make, and is not making, an ultimate determination of admissibility of the answers Hedgeye seeks to obtain from Lamar. Rule 408 does, however, expressly prohibit use of settlement communications "to prove or disprove the validity … of a disputed claim or to impeach a prior inconsistent statement or a contradiction." Fed. R. Ev. 408(a). It is difficult to imagine what use Hedgeye could make of the information it seeks that would not fall within those prohibited uses. Rule 408 does contain an exception for admitting settlement communications "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Ev. 408(b). Hedgeye, however, has not stated that it seeks to use the information sought to prove bias or prejudice or undue delay, and the instant case is civil, not criminal. It is therefore likely that the information Hedgeye seeks will not be admissible, which, as noted, necessarily reduces the importance and benefits of that information.[4]

Notwithstanding the foregoing, Hedgeye has expressed that it "is conscious of issues of proportionality and burden" and therefore has proposed limiting the discovery sought to either a one-hour video deposition or, instead, written questions pursuant to Fed. R. Civ. P. 31. (Dkt. 399 at 2.) Upon reconsideration, the Court concludes that limiting the discovery sought in that fashion will pose minimal burden and is proportional

---

[4] In its objections to this Court's previous ruling, Hedgeye skirted the issue of admissibility, arguing that "even were Defendants correct as to admissibility, their instruction not to answer deposition questions on grounds of relevance was indisputably improper" and asserting that "[t]he admissibility of settlement communications, for any reason, was not and is not before the Court." (Dkt. 457 at 4 and n.1.)

9

to the low likelihood that the evidence obtained will be important and beneficial to Hedgeye. Accordingly, and taking all relevant factors into consideration, the Court grants Hedgeye's motion to compel Lamar to answer questions about the statements he made during settlement discussions. Lamar may select at his option whether to proceed by written questions or, instead, a one-hour video deposition. Whether any of Lamar's testimony about the settlement discussions qualifies as admissible evidence will be determined at the appropriate juncture.

## Conclusion

The parties shall meet and confer with the goal of expeditiously completing the discovery granted herein within thirty days.

SO ORDERED:

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: July 5, 2023
       New York, New York

Copies transmitted to all counsel of record.