UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                      :

**HEDGEYE RISK MANAGEMENT, LLC**    :

                              Plaintiff,   :    21-cv-3687 (ALC)

       -against-                      :    <u>**ORDER GRANTING IN PART AND**</u>
                                                  :    <u>**DENYING IN PART MOTION TO**</u>
**DARIUS DALE, et al.,**               :    <u>**DISMISS**</u>

                            Defendants.   :
-----------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

     Before the Court is (1) Hedgeye's motion to dismiss (ECF Nos. 542, 543) the Terman counterclaims (ECF No. 485) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); and (2) Defendants' request for leave to file amended counterclaims (ECF No. 646) in light of Hedgeye's Fifth Amended Complaint (ECF No. 652). For the reasons that follow, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

     I assume the Parties are familiar with the factual background of this case. As relevant here, Nadine Terman ("Terman"), Solstein Capital, LLC ("Solstein"), Darius Dale, Steven Lamar, and 42 Macro, LLC are all defendants in Hedgeye's trade secret litigation. Terman and Solstein (collectively "Counterclaimants") have brought counterclaims broadly alleging that Hedgeye Risk Management, LLC ("Hedgeye") fraudulently induced them into subscribing to Hedgeye's research in the first instance on the basis of incorrect U.S. Securities and Exchange Commission ("SEC") registration status, undisclosed conflicts of interest, and fraudulent business practices, including allegedly frontrunning clients. Terman and Solstein were institutional subscribers to Hedgeye, an independent investment research and online financial media company, from 2017-2021. In early

1

2021, Terman began appearing on Fast Money, a program on CNBC. Hedgeye took note of her appearances as it perceived her to be parroting Hedgeye's research and style.

The business relationship ended in 2021 following this continued parroting and, as Hedgeye would only later learn, Terman's conspiring with Darius Dale to help him form a competing enterprise using Hedgeye's trade secrets. Counterclaimants further allege that statements made by Hedgeye representatives in relation to Terman's appearances on CNBC and the underlying trade secret litigation constitute defamation and have led to clients withdrawing their business from Solstein and to Terman's reduced appearances on CNBC.

Defendants Nadine Terman and Solstein Capital, LLC ("Solstein Capital") (collectively, the "Terman Defendants" or "Counterclaimants") have filed counterclaims against Plaintiff Hedgeye Risk Management, LLC ("Hedgeye") for (1) fraud in the inducement, (2) tortious interference with contract, (3) tortious interference with prospective economic relationships, (4) defamation and (5) malicious prosecution. (ECF No. 485.) Plaintiff Hedgeye moves to dismiss the Amended Counterclaims. (ECF No. 542.) This motion is fully briefed.

## STANDARD OF REVIEW

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the elements of a

2

cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

### Count I: Fraud in the Inducement

Under New York law, to state a claim for fraudulent inducement, a claimant must allege "(i) a representation of material fact; (ii) which was untrue; (iii) which was known to be untrue or made with reckless disregard for the truth; (iv) which was offered to deceive another or induce him to act, and (v) which that other party relied on to its injury." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 580 (2d Cir. 2005) (citations omitted). Additionally, pursuant to Rule 9(b), a plaintiff who alleges a fraud claim "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In order to comply with Rule 9(b), the "complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Aquino by Convergent Distrib. of Texas, LLC v. Alexander Capital, LP*, No. 21 Civ. 1355, 2021 WL 3185533, at *12 (S.D.N.Y. July 27, 2021) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)). In addition, a plaintiff must also "allege facts that give rise to a strong inference of fraudulent intent." *Id.*

Solstein Capital and Terman's allegations supporting its theory of fraudulent inducement are difficult to parse. Essentially, they allege that they were fraudulently induced into subscribing to Hedgeye on the basis of representations Hedgeye made in its Form ADVs which represented that Hedgeye complied with all applicable regulatory requirements and had disclosed all conflicts of interest. They allege that they relied on these material representations when entering into the

3

services agreement. These representations allegedly turned out to be false in three ways: (1) Hedgeye's RTA process, whereby it sent trade recommendations to its customers, was flawed because by the time its clients could make a trade at Hedgeye's proposed price, that price was no longer available; (2) Hedgeye was not an independent and disinterested provider of investment research, as stated in its Form ADVs, because Hedgeye often recommended shares in Sierpinski, a company also owned by Hedgeye's CEO; and (3) Hedgeye should have been registered in an investment adviser in all of the state and federal jurisdictions in which its clients did business, rather than just Connecticut, and thus was not in compliance with all state and federal regulatory.

These allegations miss the mark. Although Counterclaimants argue that they need only allege fraud generally (ECF No. 572 at 7), it is well established that claims for fraud must be pleaded with particularity pursuant to Rule 9(b). *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014) (citing *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)). "The Second Circuit has made clear that it "recognize[s] and rigorously enforce[s] these salutary purposes of Rule 9(b)[.]" *Optima Media Grp. Ltd. v. Bloomberg L.P.*, 383 F. Supp. 3d 135, 142–43 (S.D.N.Y. 2019) (quoting *United States ex rel. Ladas v. Exelis, Inc*), 824 F.3d 16, 26 (2d Cir. 2016)).

As an initial matter, the allegations fail to set forth "the who, what, when, where, and how" of fraud. *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 520 (S.D.N.Y. 2014). As to the allegations regarding Hedgeye's RTAs, Counterclaimants allege that in February 2021, Hedgeye allegedly issued a notice on its website stating that its RTAs represent "hypothetical quantitative pricing signals in a virtual setting to illustrate how an investor might employ certain Hedgeye investment ideas." (Compl. ¶ 51.) This allegedly "contradict[ed] Hedgeye's own marketing of its RTAs", and Hedgeye continued to publish a subset of its RTA

4

data which was "cherry-picked" and was misleading to its clients and potential clients. (Compl. ¶¶ 51, 58.) Counterclaimants maintain that this notice was issued after they had paid for Hedgeye services for the first quarter of 2021. However, nowhere is it alleged that Counterclaimants relied on Hedgeye's marketing with respect to its RTAs when entering in the Services Agreement or that these alleged misrepresentations were material. Moreover, the Amended Counterclaims do not state with particularity when and where these alleged fraudulent statements were made, beyond simply stating that "Hedgeye actively markets its RTAs", released misleading performance data, and that its website stated that RTAs could help its clients "EFFECTIVELY TIME [THEIR] TRADES". *See Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*, No. 07-cv-9694 (LAP), 2009 WL 1110783, at *1 (S.D.N.Y. Apr. 21, 2009) (Rule 9(b) not satisfied where plaintiff "does not specifically identify the location where the misrepresentations were made," "does not provide exact dates for the statements," and "fails to sufficiently identify 'who' the speaker is concerning each statement".)

Likewise, the Amended Counterclaims do not list the particular Form ADVs in which Hedgeye made misrepresentations and the dates on which those misstatements were made, and does not even specify what the actual alleged misstatements were, beyond merely stating that "[t]he Hedgeye Form ADV contained numerous material representations by Hedgeye, including representations that Hedgeye was complying with all applicable regulatory requirements and that it had disclosed all material conflicts of interest." These general pleadings wholly fail to meet the particularity requirement of Rule 9(b). *See Schlenger v. Fid. Emp'r Servs. Co., LLC*, 785 F.Supp.2d 317, 352 (S.D.N.Y. 2011) ("Plaintiff's failure to name individuals, identify detailed statements, or identify particular dates makes clear that as pleaded this claim lacks the specificity required by Rule 9.")

5

However, the chief deficiency in the fraudulent inducement claim is the lack of any allegations supporting a strong inference of fraudulent intent. "A strong inference of fraudulent intent may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 420 F. Supp. 3d 123, 147–48 (S.D.N.Y. 2019) (quoting *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681-82 (2d Cir. 2012)). The Amended Counterclaims are devoid of any non-conclusory allegations regarding intent, merely alleging that Hedgeye made these misrepresentations "to induce Terman and Solstein to subscribe to Hedgeye's services and to continue subscribing to such services." (Compl. ¶ 158.) But, there are no allegations that Hedgeye either had a motive or opportunity to commit fraud or that their conduct exhibited conscious misbehavior or recklessness. Counterclaimants' opposition does not further elucidate their theory of intent, merely reiterating the allegations that Hedgeye made material misstatements and stating, in conclusory fashion, that "the contradictions between the belated Hedgeye disclaimer and its marketing of RTAs are material evidence of Hedgeye's intent to defraud" and that from the "false representations about [Hedgeye's] registration status and the [Sierpinski] relationship, it can fairly be inferred that Hedgeye was aware both of its own interactions with customers and with [Sierpinski]." (ECF No. 572 at 8.) *See Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 345 (E.D.N.Y. 2014) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)) ("However, it does not follow that Rule 9(b) grants an aggrieved party "license to base claims of fraud on speculation and conclusory allegations."); *see also Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (noting that "naked assertions" or "conclusory statements" are not enough) (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937)). "[F]raudulent inducement involves

6

a misrepresentation of present fact, not of future intent, collateral to a contract and used to induce the defrauded party to sign the contract." *Yoomi Babytech, Inc. v. Anvyl, Inc.*, 2021 WL 4332258, at *12 (S.D.N.Y. Sept. 22, 2021) (*quoting Bruce v. Martin*, Nos. 87-CV-7737 (RWS), 1993 WL 148904, at *1 (S.D.N.Y. Apr. 30, 1993)).

### Count II: Tortious Interference with Contract

To prevail on a claim for tortious interference with a contract, a plaintiff must allege: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of contract without justification; (4) actual breach of the contract; and (5) damages. *RSM Production Corp. v. Fridman*, 643 F.Supp.2d 382, 405 (S.D.N.Y. 2009) (citing *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006)). Moreover, "the plaintiff must assert, with respect to each defendant, that the defendant's actions were the 'but for' cause of the alleged breach." *Id.* To demonstrate "but for" causation, a plaintiff must show that any breach would not have occurred but for the activities of that defendant. *Id.*; *see also Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990) (citing *Special Event Entm't v. Rockefeller Ctr., Inc.*, 548 F.Supp. 72, 78 (S.D.N.Y. 1978)). A failure by a plaintiff to properly allege any individual element of a tortious interference with a contract claim warrants dismissal. *RSM Production Corp.*, 643 F.Supp.2d at 405.

Counterclaimants do not adequately allege a claim of tortious interference with contract. Fatal to their claim are the lack of allegations that Plaintiff had knowledge of any actual contracts between Solstein Capital and its clients or Terman and CNBC, beyond boilerplate and conclusory pleadings. (Am. Counterclaims ¶ 162 "Hedgeye was aware of Terman's contract to appear as a paid contributor to CNBC. Hedgeye was also aware of at least two clients of Solstein who had

7

placed funds with the firm.") These general and conclusory allegations need not be credited by the Court. *Glob. View Ltd. Venture Cap.*, 288 F. Supp. 2d at 484 ("Even under the liberal pleading standard of Federal Rule of Civil Procedure 8, courts need not credit conclusory allegations, or legal conclusions without factual allegations.") Moreover, and most crucially, Counterclaimants do not allege how Hedgeye procured any third-party (*i.e.*, its clients or CNBC) to actually *breach* their contracts with Solstein Capital or Terman. Accordingly, this claim is dismissed.

### Count III: Tortious Interference with Prospective Economic Relationships

To successfully plead a claim for tortious interference with a prospective business relationship, a Plaintiff must allege the following: (1) a business relationship with a third party; (2) the defendant's knowledge of that relationship and the intentional interference with it; (3) that the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship. *RSM Production Corp. v. Fridman*, 643 F.Supp.2d 382, 405 (S.D.N.Y. 2009) (citing *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006)); *see also Katz v. Travelers*, 241 F. Supp. 3d 397, 404 (E.D.N.Y. 2017) ("Tortious interference with a business relationship is sometimes called 'tortious interference with prospective economic advantage'; no matter the term used, the elements are the same.") Additionally, a "plaintiff must assert, with respect to each defendant, that the defendant's actions were the "but for" cause of the alleged breach." *Id.* To demonstrate "but for" causation, a plaintiff must show that any breach would not have occurred but for the activities of the defendant. *Id.* (citing *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990)).

Counterclaimants allege that Hedgeye tortiously interfered with two types of their business relationships: (1) Terman's business relationship with CNBC and Solstein Capital's business relationship with at least two of its clients.

The Court finds that Counterclaimants have sufficiently alleged improper means, such that its tortious interference with prospective economic advantage counterclaim survives the instant motion to dismiss. Improper means entails any means that fall below the generally accepted standards of commercial morality, *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321 (JGK), 2023 WL 2051739, at *13 (S.D.N.Y. Feb. 16, 2023). A Southern District of New York Court has found that improper means include dishonesty in the form of false statements intended to undercut a contracting customer's opinion of the victim. *PKG Grp., LLC v. Gamma Croma, S.p.A.*, 446 F. Supp. 2d 249, 251 (S.D.N.Y. 2006). Here, Counterclaimants have provided fair notice under Rule 8. Fed. R. Civ. P. to Plaintiff as to the conduct upon which Counterclaimants base their claim. Plaintiff's motion is denied as it relates to wrongful means, and Counterclaimants may proceed with its tortious interference claim on that basis.

**Count IV: Defamation**

"To establish a claim for defamation under New York law, a plaintiff is required to demonstrate "a false statement, published without privilege or authorization to a third party, constituting fault…and it must either cause special harm or constitute defamation *per se*." *Hodges v. Lutwin*, 595 F. Supp. 3d 12, 19 (S.D.N.Y. 2022), *aff'd*, No. 22-974-CV, 2023 WL 3362836 (2d Cir. May 11, 2023) (citing *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169–70 (2d Cir. 2003); *see also Pantheon Properties, Inc. v. Houston*, No. 20-CV-3241-ALC, 2021 WL 4523619, at *3 (S.D.N.Y. Sept. 30, 2021) ("To establish a claim for defamation, claimants must plead: "(1) a defamatory statement of fact about the [defendant]; (2) publication to a third party; (3) fault by the defendant; (4) falsity of the statement; and (5) special damages or *per se* actionability.") (citing *Oaxley v. Dolan*, 833 F.App'x 896, 899 (2d Cir. 2020)). "A statement that tends to injure another

in his or her trade, business or profession is defamatory *per se*." *Fuji Photo Film U.S.A.*, 669 F.Supp.2d 405, 411 (S.D.N.Y. 2009) (internal quotation marks omitted).

Here, Counterclaimants have failed to properly allege falsity. They allege, in conclusory fashion, that the purportedly defamatory statements were "false statements of fact with malice and the intent to harm Terman and Solstein's reputations and to cause business harm". (FAC ¶ 136). Moreover, they allege that Hedgeye knew that these statements were false after having reviewed the evidence obtained in discovery, but they cite to no such evidence. Accordingly, Plaintiff's motion to dismiss the defamation counterclaim is granted. *See Tannerite Sports, LLC*, 864 F.3d at 244 ("Falsity is an element of defamation under contemporary New York law."); s*ee also* Neuman v. Global Sec. Sols., Inc., 2023 U.S. App. LEXIS 25263, *6 (2d Cir., Sept. 25, 2023) (affirming SDNY decision wherein plaintiff failed to carry his burden to prove that Defendant's allegedly defamatory statement was "not substantially true").

### Count V: Malicious Prosecution

Under New York Law, "[T]he tort of malicious prosecution requires proof of each of the following elements: "(1) the commencement or continuation of a ... proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the [plaintiff], (3) the absence of probable cause for the ... proceeding and (4) actual malice[.]" *Facebook, Inc. v. DLA Piper LLP (US)*, 134 A.D.3d 610, 613 (1st Dep't 2015).  To allege absence of probable cause, a plaintiff "must allege that the underlying action was filed with "a purpose other than the adjudication of a claim and that there was an entire lack of probable cause in the prior proceeding.  *Id.* (internal citations and quotations omitted).   "Additionally, a plaintiff must also allege and prove 'special injury'[.]" *Id.*  A "special injury" must be "'a highly substantial and identifiable interference with person, property or business' and must entail "some concrete harm

10

that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit[.]'" *Dudick v. Gulyas*, 277 A.D.2d 686, 688 (3rd Dep't 2000) (quoting *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 205 (1999)).

Counterclaimants fail to state a claim of malicious prosecution. "A cause of action sounding in malicious prosecution cannot be interposed as a counterclaim in the very civil action that was allegedly instituted wrongfully." *Consol. Edison Co. of New York, Inc. v. Cantor*, No. 18-CV-02267 (NSR), 2019 WL 4142064, at *9 (S.D.N.Y. Aug. 30, 2019) (quoting *Sasso v. Corniola*, 154 A.D.2d 362 (2nd Dep't 1989)). Counterclaimants argument that the original civil action against the Terman Defendants, 22-cv-01113 *Hedgeye Risk Management, LLC v. Terman et al.*, was voluntarily dismissed against them is without merit. Hedgeye sought leave from the Court to file a Third Amended Complaint which would consolidate the *Terman* Action with this action. The claims of which the Terman Defendants complaint of in their malicious prosecution action are asserted in this action, and there has been no termination or other resolution of this proceedings. In order to rule in favor of the Terman Defendants on their counterclaim for malicious prosecution, would require the fact finder to evaluate the merits of this very action, underscoring the non-final nature of Hedgeye's civil action against Terman and Solstein Capital. Accordingly, Counterclaimants' cause of action for malicious prosecution is dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART..** Only Count III, Defendants' tortious interference with prospective economic advantage, survives Plaintiff's motion to dismiss. Defendants are granted leave to file a second set of amended counterclaims by **April 15, 2024.**

**SO ORDERED.**

**Dated: April 5, 2024**
    **New York, New York**

                                          **ANDREW L. CARTER, JR.**
                                          **United States District Judge**