UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
HEDGEYE RISK MANAGEMENT, LLC,

                     Plaintiff,

     - against -

DARIUS DALE; STEVEN LAMAR; 42 MACRO, LLC; NADINE TERMAN; and SOLSTEIN CAPITAL, LLC,

                     Defendants.
-------------------------------------------------------------------X

21-CV-3687 (ALC) (RWL)

**ORDER: SEALING**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      The parties have filed extensive documentation for summary judgment motions and in limine motions concerning expert reports and declarations.  The filings include more than 50 briefs and declarations, multiple 56.1 statements with hundreds of asserted facts, and several hundred exhibits.  The three sets of parties (Hedgeye, the Dale Defendants, and the Terman Defendants) have made requests to seal the majority of those materials either in part or in their entirety.  The parties dispute, however, the extent to which sealing is appropriate.  (*See* Dkts. 723-24, 731, 735, 750, 773, 776, 788, 868, 870, 872-73.)  Generally speaking, Hedgeye seeks to maintain under seal a much broader swath of material than do the Defendants.

      In order to manage the sheer quantity of sealing requests, the Court directed that the parties narrow the disputed material and prepare spreadsheets reflecting the parties' respective positions with respect to each individual document or portion of document any party sought to maintain under seal.  (Dkt. 875.)  The Court also provided specific guidelines for the parties to observe in narrowing down the items in dispute.  Those guidelines included the following:

1

1. The parties should not request to seal material – or material similar in kind – that the Court previously has found may not be maintained under seal.

2. As the current motions concern summary judgment and related expert evidentiary matters, the weight given to disclosure of judicial documents is even greater than at previous junctures.

3. Just because material has been designated by a party as confidential or attorneys-eyes-only under the protective order governing the case does not mean that the information warrants or continues to warrant sealing under Second Circuit standards.

4. Information that has been made publicly or widely available, including but not limited to material filed on the public docket in this case, may not be sealed.

5. High-level discussion of Plaintiff's alleged trade secrets, and of basic concepts or processes, that does not disclose the content of alleged trade secrets does not warrant sealing. Similarly, file names are not likely to warrant sealing.

6. Material may not be redacted on the basis that it is considered unhelpful to a party's case or that it may reflect negatively on a party.

7. Complete bank account numbers, recent pricing information, and private and confidential information of third parties are all likely to be appropriate for redaction.

The parties submitted the requisite spreadsheets electronically on May 27, 2025. Along with those spreadsheets, the parties provided the Court with access to copies of all documents at issue with the parties' proposed redactions highlighted in each document. The spreadsheets list literally thousands of discrete requests for sealing specific documents, pages, sentences, phrases, words, charts, or numbers. While the parties agree that certain of the items should be maintained under seal, they dispute the

overwhelming majority of them. Even where the parties agree that material should be maintained under seal, however, the Court has the duty to determine if sealing is appropriate. Accordingly, the Court has assiduously examined every item appearing on the parties' spreadsheets and made an individual determination for each as to whether it qualifies for sealing.

In determining whether information qualifies for sealing, the Court has followed the three-step inquiry required by the Second Circuit for doing so. "First, the court determines whether the record at issue is a judicial document – a document to which the presumption of public access attaches. Second, if the record sought is determined to be a judicial document, the court proceeds to determine the weight of the presumption of access to that document. Third, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document and balance those factors against the weight properly accorded the presumption of access." *Stafford v. International Business Machines Corp.*, 78 F.4th 62, 69-70 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1011 (2024) (internal quotation marks and citations omitted); *accord Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (discussing the three-step analysis).

With respect to the first step, all of the materials filed for the Court's consideration are judicial documents to which the presumption of access attaches. That is because they all have been filed in connection with the parties' motions for summary judgment and their accompanying motions to exclude expert testimony. *See Giuffre v. Maxwell*, ___ F.4th ___, 2025 WL 2055148, at *7 (2d Cir. July 23, 2025) ("materials submitted for consideration in an as-yet-undecided summary judgment motion constitute judicial

documents 'as a matter of law' because the motion sought to have the court 'adjudicate[] substantive rights'") (quoting *Lugosch*, 435 F.3d at 121-22).

For each sealing request, the Court has assessed the weight of the presumption of access that applies. While the Court has taken into account the relevance of each item, the Court has not made any assessment of the likelihood that the Court will or will not rely on a particular document in reaching the varied decisions to be made. *See Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019) ("the proper inquiry is whether the documents are relevant to the performance of the judicial function, not whether they were relied upon").

For each item, the Court also has considered all factors that legitimately counsel against disclosure and has balanced those factors against the weight of the presumption to judicial access. The Court mentions just two of those factors here. The gravamen of Plaintiff's case is alleged theft of trade secrets. Accordingly, consideration for the extent to which public access would risk disclosure of trade secrets has been a primary factor in the Court's evaluation. *See SEC v. TheStreet.com*, 273 F.3d 222, 231 n.10 (2d Cir. 2001) (identifying trade secrets as example of type of information to which a legitimate interest attaches that may countenance against public access). To be clear, however, the fact that the Court has approved any particular information for sealing does not and shall not be taken to mean that the information actually qualifies as a trade secret. Exactly what, if anything, is a trade secret in this case is a hotly disputed issue and will be determined either on summary judgment or at trial. It is certainly possible that the Court may have

approved information for sealing that ultimately turns out not to be granted trade secret protection. In that event, adjustments to what has been sealed may be appropriate.[1]

A related factor that may legitimately counsel against disclosure and that Hedgeye repeatedly asserts as a basis for sealing is the extent to which the information is of a competitively sensitive business nature even though it is not necessarily a trade secret at issue in the case. Such information may include, for example, sensitive financial data or business strategy, or identification of particular clients or customers. *See Nielson Consumer LLC v. Circana Group, L.P.*, No. 22-CV-3235, 2024 WL 990073, at *2 (S.D.N.Y. Mar. 6, 2024) (sealing information that "can fairly be characterized as commercially sensitive business information pertaining to the parties' relationship that could cause competitive harm") (internal quotation marks omitted); *Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*, 97 F. Supp.3d 485, 511 (S.D.N.Y. 2015) (sealing "specific business information and strategies, which, if revealed, may provide valuable insights into a company's current business practices that a competitor would seek to exploit") (internal quotation marks and citation omitted). On the other hand, financial and business information that is stale is less likely to warrant protection. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, No. 14-MD-2542, 2023 WL 196134, at *4 (S.D.N.Y. Jan. 17, 2023) ("the older the information is, the less appropriate it is to seal that information").

The Court also has taken care to ensure that redactions are narrowly tailored to seal only that information for which sealing is warranted. *See Lugosch*, 435 F.3d at 124

---

[1] Due to the possibility that one or more of the Court's individual sealing rulings could be revisited in the future, the parties should not refile at this time any materials to reflect the Court's rulings. Rather, they should do so at the end of the case.

(sealing must be "narrowly tailored" to the interest sought to be protected); *Nielson Consumer LLC*, 2024 WL 990073, at *2 ("A sealing request is 'narrowly tailored' when it seeks to seal *only* that information that must be sealed to preserve higher values"). Accordingly, even for those proposed redactions that the Court has not rejected wholesale, it has pared down, where appropriate, the scope of the redactions proposed by the parties.

The Court cautions that in light of the quantity of rulings sought by the parties, it is possible, maybe even likely, that one or more of the Court's rulings may be inconsistent with another.[2] Similarly, it is possible the Court designated for sealing an item for which the Court previously denied sealing.[3] If the parties have any issue in either regard, they may raise it with the Court.

Finally, the Court will file under seal a copy of this order along with the three spreadsheets submitted by the parties and which now contain the Court's rulings. However, those spreadsheets themselves are judicial documents to which the presumption of access attaches. *See Giuffre,* 2025 WL 2055148, at *11. There is no reason to maintain under seal the information in those spreadsheets that itself is not information for which the Court has granted permission to be filed under seal. Accordingly, by **September 4, 2025**, the parties shall file public versions of the three spreadsheets that include the Court's rulings.

---

[2] Some rulings that may appear inconsistent are not because of the different contexts in which the same information is used.

[3] The reverse reflects no inconsistency; information previously approved for sealing may well no longer warrant sealing because of the stronger presumption of public access at this juncture.

The parties may redact from the publicly filed spreadsheets only that information for which the Court has granted the request to seal. Even then, the parties must be circumspect. In most instances, the description of what is to be sealed does not reveal any seal-worthy information and thus should not be redacted even if the Court has granted sealing for the given item. Further, the parties may not redact any information for any item for which the Court denied the request to seal. The only information that may be redacted from the spreadsheets is that which itself necessarily reveals the sealed information. Examples include (but are not limited to) client names, personal email addresses, and total subscriber numbers.

SO ORDERED:

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: July 29, 2025
       New York, New York

Copies transmitted to all counsel of record.