**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HEDGEYE RISK MANAGEMENT, LLC,

        Plaintiff-Counterdefendant,

        v.

DARIUS DALE, STEVEN LAMAR, 42 MACRO, LLC, NADINE TERMAN, AND SOLSTEIN CAPITAL, LLC,

        Defendants-Counterclaimants.

No. 1:21-cv-03687 (ALC) (RWL)

---

**PLAINTIFF HEDGEYE RISK MANAGEMENT, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DARIUS DALE'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT .................................................................................................................... 7

I.      DEFENDANT HAS NOT SHOWN ANY VIOLATION OF RULE
        11(B)(3), AS THE ALLEGATIONS IN QUESTION WERE BASED
        ON DOCUMENTARY EVIDENCE ........................................................................ 7

II.     DEFENDANT HAS NOT SHOWN ANY VIOLATION OF RULE
        11(B)(1), AS THERE IS NO EVIDENCE THAT HEDGEYE
        PRESENTED ANY ALLEGATION FOR AN IMPROPER PURPOSE ................ 12

III.    EVEN IF THIS COURT WERE TO FIND A TECHNICAL
        VIOLATION OF RULE 11(B), SANCTIONS ARE NOT
        WARRANTED IN THESE CIRCUMSTANCES UNDER RULE 11(C) ............... 14

CONCLUSION ............................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almeciga v. Ctr. for Investigative Reporting, Inc.*,
185 F. Supp. 3d 401 (S.D.N.Y. 2016)..................................................................................11

*Ammann v. Sharestates, Inc.*,
Civ. No. 21-2766, 2024 WL 1956237 (E.D.N.Y. Mar. 21, 2024)...........................................12

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
579 F.3d 143 (2d Cir. 2009)..................................................................................................6

*Bobrowsky v. Curran*,
333 F. Supp. 2d 159 (S.D.N.Y. 2004)...................................................................................5

*Brown v. Artus*,
647 F. Supp. 2d 190 (N.D.N.Y. 2009).................................................................................11

*Cameau v. Nat'l Recovery Agency, Inc.*,
Civ. No. 15-2861, 2018 WL 4853050 (E.D.N.Y. Sept. 28, 2018) ........................................12

*Cavanagh v. Ford Motor Co.*,
Civ. No. 13-4584, 2015 WL 13745259 (E.D.N.Y. Dec. 4, 2015) ....................................11, 12

*Connolly v. TJX Cos.*,
Civ. No. 07-3282, 2010 WL 5491109 (E.D.N.Y. Dec. 30, 2010) .........................................12

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)............................................................................................................5

*E. Gluck Corp. v. Rothenhaus*,
252 F.R.D. 175 (S.D.N.Y. 2008) .........................................................................................6

*Freeman v. Stake.com*,
Civ. No. 22-7002, 2023 WL 7386354 (S.D.N.Y. Nov. 7, 2023)...........................................11

*Galin v. Hamada*,
283 F. Supp. 3d 189 (S.D.N.Y. 2017)..................................................................................15

*Goldenberg v. St. Barnabas Hosp.*,
Civ. No. 01-7435, 2005 WL 426701 (S.D.N.Y. Feb. 23, 2005)...........................................11

*Grayson v. Ressler & Ressler*,
271 F. Supp. 3d 501 (S.D.N.Y. 2017)...................................................................................7

*Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*,
    665 F. Supp. 2d 239 (S.D.N.Y. 2009)................................................................................15

*Indoafric Exports Priv. Ltd. v. Citibank, N.A.*,
    2016 WL 6820726 (S.D.N.Y. Nov. 7, 2016), *aff'd*, 696 F. App'x 551 (2d Cir.
    2017) ............................................................................................................................12, 13

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
    698 F.3d 58 (2d Cir. 2012)..........................................................................................5, 14

*Jeffreys v. Rossi*,
    275 F. Supp. 2d 463 (S.D.N.Y. 2003).................................................................................6

*K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*,
    61 F.3d 123 (2d Cir. 1995)........................................................................................7, 11

*Kingvision Pay-Per-View Ltd. v. Ramierez*,
    Civ. No. 05-2778, 2005 WL 1785113 (S.D.N.Y. July 28, 2005) ....................................13, 15

*Levine v. FDIC*,
    2 F.3d 476 (2d Cir. 1993)................................................................................................12

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    Civ. No. 04-5316, 2006 WL 2807213 (S.D.N.Y. Sept. 28, 2006)............................................6

*Omega SA v. 375 Canal, LLC*,
    324 F.R.D. 47 (S.D.N.Y. 2018) .........................................................................................6

*Pannonia Farms, Inc. v. USA Cable*,
    426 F.3d 650 (2d Cir. 2005)............................................................................................14

*Penzo v. Consol. Edison Co. of N.Y., Inc.*,
    Civ. No. 19-7478............................................................................................................14

*Perez v. Posse Comitatus*,
    373 F.3d 321 (2d Cir. 2004).............................................................................................14

*Pierce v. F.R. Tripler & Co.*,
    955 F.2d 820 (2d Cir. 1992)................................................................................................5

*Rodick v. City of Schenectady*,
    1 F.3d 1341 (2d Cir. 1993).................................................................................................6

*Sec. Indus. Ass'n v. Clarke*,
    898 F.2d 318 (2d Cir. 1990).............................................................................................13

*Sorenson v. Wolfson*,
    170 F. Supp. 3d 622 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x. 33 (2d Cir. 2017)...................7, 15

*Tantaros v. Fox News Network LLC*,
Civ. No. 17-2958, 2018 WL 1662779 (S.D.N.Y. Mar. 16, 2018) ...........................................14

*Traynor v. Hereafter, Inc.*,
Civ. No. 19-3021, 2019 WL 3940128 (S.D.N.Y. July 31, 2019) .............................................6

**Court Rules**

Federal Rule of Civil Procedure 11 ....................................................................................... *passim*

Plaintiff Hedgeye Risk Management, LLC ("Hedgeye" or "Plaintiff") respectfully submits this memorandum of law in opposition to Defendant Darius Dale's ("Dale" or "Defendant") motion for sanctions pursuant to Federal Rules of Civil Procedure 11(b)(1) and 11(b)(3) (the "Motion"). The Motion should be denied.

## PRELIMINARY STATEMENT

Defendant Dale's Motion relies on the fiction that, in its Fifth Amended Complaint, Plaintiff Hedgeye conjured an allegation out of thin air. That is absolutely not the case.

The allegation in question is four sentences long, and states:

> In or about April 2020, while Dale was employed by Hedgeye, Dale presented Keith McCullough with the outline for a model that would provide monthly quad calculations, rather than the quarterly quad calculations Hedgeye provided to its subscribers at that time. 42 Macro now offers its subscribers monthly quad calculations, which upon information and belief are based on the monthly model Dale created while he was at Hedgeye and offered to Keith McCullough. Dale never returned to Hedgeye any model capable of calculating quads on a monthly basis. Dale's failure to return this model to Hedgeye, a model created while Dale was employed by Hedgeye, is a violation of the Assignment of Rights provision of his Employment Agreement.

Fifth Am. Compl. (Dkt. 653) ¶ 150. Dale essentially only challenges the factual support for the first sentence of that allegation, namely that in April of 2020, Dale presented Keith McCullough with the outline of a model that could calculate monthly quads. *See, e.g.*, Motion at 8-9.

Rule 11(b)(3) only requires that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Before making the challenged allegation, Hedgeye and its counsel reviewed and considered documents and communications from April of 2020 that reasonably supported their belief that Dale had created a version of Hedgeye's source models that was capable of calculating quads on a monthly basis. *See* Declaration of Jessie F. Beeber, dated November 18, 2025, (the "Beeber Decl.") Ex. B.

Based on these materials, counsel determined that a good-faith basis existed to include the allegation in Hedgeye's Fourth, and Fifth, Amended Complaint. In fact, it was not even a close call. Hedgeye then provided Dale with an interrogatory response that specifically referred to those documents and communications.

The fact that Dale ultimately persuaded this Court on summary judgment that Plaintiff's allegation could not be sustained does not retroactively transform a good-faith allegation into sanctionable conduct. This Motion instead is an effort by Dale's counsel to retroactively weaponize Rule 11 on an issue that was resolved in the way that such issues are supposed to be resolved: through discovery and summary judgment. Defendant was granted supplemental discovery on the allegation, Plaintiff provided it, and Defendant used that discovery to win the issue on summary judgment. Yet, in seeking sanctions, Defendant plays a semantic game with the testimony, cherry-picking lines from McCullough's deposition testimony, ignoring clarifying answers later in that same deposition, and mischaracterizing what was actually said, so that a rather straightforward litigation dispute can be inaccurately cast as something far more sinister. Having received the discovery and won the argument, Defendant now asks the Court to punish Plaintiff for relying on documentary evidence that supported the claim. That is not a sanctionable failure of investigation. If advancing a claim based on supporting documents in a case this complex and hard-fought could be deemed sanctionable, then nearly any disputed and dismissed allegation in this litigation could meet the same fate. Rule 11 is a remedy for egregious abuse, not a penalty for losing an argument. The Motion should be summarily denied.

## **STATEMENT OF FACTS**

This Motion concerns a very discrete issue in an otherwise legally and factually complex case. In its Third Amended Complaint, Hedgeye alleged that Dale had breached the assignment of rights provision in his Employment Agreement. Dkt. 325-1, ¶ 256. After fact discovery closed,

this Court dismissed that claim and explicitly gave Hedgeye leave to replead. Dkt. 623. Hedgeye then added Paragraph 150 to its Fourth, and then its Fifth, Amended Complaint, alleging that "[i]n or about April 2020, while Dale was employed by Hedgeye, *Dale presented Keith McCullough with the outline for a model that would provide monthly quad calculations*, rather than the quarterly quad calculations Hedgeye provided to its subscribers at that time. 42 Macro now offers its subscribers monthly quad calculations, which upon information and belief are based on the monthly model Dale created while he was at Hedgeye and offered to Keith McCullough. Dale never returned to Hedgeye any model capable of calculating quads on a monthly basis. Dale's failure to return this model to Hedgeye, a model created while Dale was employed by Hedgeye, is a violation of the Assignment of Rights provision of his Employment Agreement." *See* Fifth Am. Compl. (Dkt. 653) ¶ 150 (emphasis added). On May 20, 2024, the Defendant filed a letter seeking an order "precluding Hedgeye from pursuing an assignment of rights claim based on the 'monthly quads' model" because Hedgeye's interrogatory responses did not include this information about its monthly quads claim. Dkt. 671. That request was referred to Magistrate Judge Lehrburger, and on June 4, 2024, Judge Lehrburger denied the request to preclude Hedgeye's claim, but allowed Dale and his co-defendants Steven Lamar and 42 Macro LLC (the "Dale Defendants") three interrogatories and a 90-minute deposition of McCullough (in his individual capacity) on the topic of the monthly quads allegation. Dkt. 679.

On June 24, 2024, Hedgeye served verified interrogatory responses on the Dale Defendants that specifically identified the documents it relied on in making the allegations contained in Paragraph 150. These documents include:

- Most importantly for this Motion, a document Bates-stamped HE0279606 (attached as Exhibit B-2 to the Beeber Declaration) showing that on April 30, 2020, Dale sent McCullough an email outline that calculated quads on a monthly basis;

- 42 Macro's Source Files and Hedgeye's Source Files, which support the allegation that Hedgeye did not receive back from Dale any models that were capable of calculating quads on a monthly basis;
- A document Bates-stamped HE0000104 (attached as Exhibit B-1 to the Beeber Declaration), which is Dale's Employment Agreement that contains the assignment of rights provision at issue;
- A document Bates-stamped SIERPINSKI0000828 (attached as Exhibit B-3 to the Beeber Declaration), which shows Dale sending monthly quad analysis to an outside party;
- A document Bates-stamped DALE0047804 (attached as Exhibit B-4 to the Beeber Declaration), which shows Hedgeye research from April 2020 that includes calculation of quads on a monthly basis; and
- Dale deposition testimony referencing the monthly quad calculation (attached as Exhibit B-5 to the Beeber Declaration).

*See* Beeber Decl. ¶¶ 3-10 & Ex. B; *see also* Exhibit B to the Declaration of Jonathan Bach (Dkt. 1025-2). McCullough reviewed and verified these interrogatory responses under penalty of perjury. Ex. B to the Declaration of Jonathan Bach (Dkt. 1025-2). On July 30, 2024, the Dale Defendants deposed McCullough. On August 5, 2024, while the parties were preparing summary judgment briefs, the Dale Defendants informed Hedgeye that they intended to seek Rule 11 sanctions based on testimony they obtained from McCullough's deposition. The Dale Defendants then formally notified this Court of their intention to seek sanctions on September 17, 2024 (Dkt. 690), and Hedgeye filed its response on September 20, 2024. Dkt. 693. This Court referred the matter to Judge Lehrburger (Dkt. 697), who allowed the motion to move forward but only after a decision issued on the then-pending summary judgment motions. Dkt. 699. This Court granted summary judgment to the Dale Defendants on the assignment of rights claim in an opinion and order dated September 30, 2025. Dkt. 998. Specifically, the Court found that ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ *Id.* at 87.[1] The parties thereafter agreed to a briefing schedule for the Motion (Dkt. 1001), which Judge Lehrburger endorsed. Dkt. 1003.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 11(c), a court, on a party's motion or on its own, may impose appropriate sanctions on "any attorney, law firm, or party that violated" Rule 11(b) or is responsible for the violation. Rule 11(b) provides in relevant part that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b). "The Second Circuit has cautioned that not all unsuccessful arguments are frivolous or warrant sanctions pursuant to Rule 11." *Bobrowsky v. Curran*, 333 F. Supp. 2d 159, 165 (S.D.N.Y. 2004) (citing *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 830 (2d Cir. 1992)).

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). A court filing violates Rule 11 if it is "used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (citing Fed. R. Civ. P. 11(b)-(c)). Rule 11 "is targeted at situations where it is patently clear

---

[1] Hedgeye intends to appeal this finding at the appropriate time.

that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify[,] or reverse the law as it stands." *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (quotation marks and citations omitted). "Rule 11 motions . . . should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes"—such as a motion for summary judgment. *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. "With respect to factual contentions, sanctions [pursuant to Rule 11] may not be imposed unless a particular allegation is utterly lacking in support." *Traynor v. Hereafter, Inc.*, Civ. No. 19-3021, 2019 WL 3940128, at *1 (S.D.N.Y. July 31, 2019) (quotation marks and citation omitted).

Sanctions under Rule 11 require a "showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (quotation omitted). Sanctions are a drastic remedy reserved for only the most extraordinary circumstances. *See E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178 (S.D.N.Y. 2008) (observing that "[c]ourts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy"); *see also Omega SA v. 375 Canal, LLC*, 324 F.R.D. 47, 54 (S.D.N.Y. 2018) ("Because Rule 11 sanctions represent a drastic, extraordinary remedy, courts seldom issue them and then only as a (very) last resort.") (quoting *Anderson News, LLC v. Am. Media, Inc.*, Civ. No. 09-2227, 2013 WL 1746062, at *4 (S.D.N.Y. Apr. 23, 2013)); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, Civ. No. 04-5316, 2006 WL 2807213, at *6 (S.D.N.Y. Sept. 28, 2006) ("Sanctions should always be a (very) last resort.") (citation omitted). For the purpose of a Rule 11 motion, an attorney's litigation conduct "should be determined without the benefit of hindsight, based on what was objectively reasonable to believe at the time the pleading, motion[,] or other paper was submitted." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 479-

6

80 (S.D.N.Y. 2003). In making these determinations, "all doubts should be resolved in favor of the signing attorney." *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995).

## ARGUMENT

**I.     Defendant Has Not Shown Any Violation of Rule 11(b)(3), as the Allegations in Question Were Based on Documentary Evidence**

Rule 11(b)(3) provides no basis for sanctions here. Hedgeye's "monthly quads" allegations in Paragraph 150 rested on a reasonable, good-faith interpretation of the testimonial and documentary evidence, and Defendant's perceived inconsistency with McCullough's testimony does not establish that Hedgeye lacked evidentiary support for its allegation.

Rule 11(b)(3) requires that the factual contentions in a pleading have "evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3). The rule imposes an objective reasonableness standard—sanctions are warranted only where "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Sorenson v. Wolfson*, 683 F. App'x 38, 41 (2d Cir. 2017) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)). A statement of fact can give rise to the imposition of sanctions only when the "particular allegation is utterly lacking in support." *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 526 (S.D.N.Y. 2017) (quoting *In re Highgate Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002)).

Here, it was objectively reasonable for Hedgeye to add Paragraph 150 to the Fifth Amended Complaint. The supporting Declaration of Jessie F. Beeber, filed contemporaneously with this Opposition, identifies the steps taken by counsel, before Paragraph 150 was added, to ensure

compliance with Rule 11(b)(1). Specifically, with respect to the allegation that "[i]n or about April 2020, while Dale was employed by Hedgeye, Dale presented Keith McCullough with the outline for a model that would provide monthly quad calculations, rather than the quarterly quad calculations Hedgeye provided to its subscribers at that time," counsel relied on an email from Dale to McCullough dated April 30, 2020. Beeber Decl. ¶ 6 & Ex. B-2. That email, which was in outline format, provided calculations of Hedgeye's quads on a monthly basis. *Id.* This email, in conjunction with other evidentiary support counsel reviewed (*see, e.g.*, Beeber Decl. Ex. B) provided more than enough support for counsel to make the allegations contained in Paragraph 150 within the bounds of Rule 11(b)(3). Moreover, in response to the supplemental interrogatories that Defendant was permitted to serve, Hedgeye identified all of the documents and testimony that it relied upon in formulating its Paragraph 150 allegations. *See* Beeber Decl. ¶ 3-10. McCullough reviewed and verified those interrogatory responses. *See* Beeber Decl. Ex. A ("McCullough Tr.") at 116:20-23; Ex. B to the Declaration of Jonathan Bach.

Defendant argues that Hedgeye should be sanctioned because at the time of McCullough's July 2024 deposition, he had "no specific recollection of any April 2020 interaction with Dale" or of any "specific outline" being shown. *See* Mot. at 3. McCullough's testimony, however, is entirely consistent with the allegations in Paragraph 150. For example, while McCullough may not have testified that Dale's April 30, 2020 email to him was an "outline," (because "[w]e already had the outline, we already had the architecture,") he did testify that the exchange between them at that time was about whether they would "have the actual calculator that we would publish to clients," meaning the "model capable of calculating quads on a monthly basis" described in Paragraph 150. *See* McCullough Tr. at 127:23-128:5. He further explained that he called the model Dale developed while at Hedgeye as "a calculator to sum up" the firm's existing quads framework. *Id.* at 40:8-21.

In other words, McCullough's testimony is consistent with the core factual allegation that Dale developed, while employed by Hedgeye, the monthly quads calculation methodology that he later used at 42 Macro.

At the risk of oversimplifying things for the Court, this appears to be nothing more than a minor semantic disagreement that Defendant has dressed up as a sanctionable offense. While the allegation uses the word "outline," (based on counsel's understanding of the format of the April 30, 2020 email between Dale and McCullough), McCullough's deposition testimony shows that he would instead call it a "calculator."

For example, while Dale says in the Motion that "the key alleged 2020 conversation never in fact occurred" and that "no 'outline' or framework for a model was presented," (Mot. at 8-9) McCullough actually testified as follows:

- Q. Okay. Let me read you the first sentence of Paragraph 150. It says: "In or about April, 2020, while Dale was employed by Hedgeye, Dale presented Keith McCullough with the outline for a model that would provide monthly quad calculations, rather than quarterly quad calculations." Did I read that correctly?
  - A. Yes. You did.
- Q. Okay. Is that a true statement?
  - A. Yes.

McCullough Tr. 12:17-13:3.

McCullough also stated conclusively that he recalled a conversation that he had with Defendant in April 2020 about a monthly quad calculation (McCullough Tr. 21:20-24), specifically related to the "relevance of creating monthly quad calculations that were more explicit and more formalized for clients," (McCullough Tr. 25:9-11) and based his belief that a monthly quad model existed on the fact that "Darius Dale would never present any data without a model, and that's what I assumed that we were using." McCullough Tr. 28:8-11. During the deposition, it became clear that while McCullough was using the word "outline" to refer to something different

than the April 30, 2020 email, McCullough also confirmed that he understood that Dale had developed a "calculator" that would perform a monthly quad calculation, and that the discussion with Dale was more about whether the outputs should be presented to Hedgeye's paying subscribers. McCullough Tr. 35:17-21.

Defendant also completely misrepresents Mr. McCullough's testimony regarding his knowledge of Hedgeye's interrogatory responses. While he originally testified that he did not know whether the interrogatory responses were accurate (McCullough Tr. 84:2-18), he explicitly corrected his testimony later on, to confirm that he reviewed the responses prior to signing the verification on them. McCullough Tr. 116:3-24. As any litigator could confirm, this sort of correction during a deposition is commonplace for a non-lawyer, who may be unfamiliar with discovery documents and terms such as "interrogatories." Dale's failure to acknowledge McCullough's correction underscores the motivation behind the Motion. Far from revealing any sort of fabrication from Plaintiff, the transcript instead reads like Defendant's counsel was straining to manufacture a "gotcha" moment in the hope of eliciting a sound bite they could later repackage for a Rule 11 brief. The flow of questioning makes plain that the aim of the deposition was not to understand Plaintiff's allegation, but to shape the testimony into support for a sanctions motion first, and a factual record for summary judgment second.

Under any objective standard, Hedgeye's allegations in Paragraph 150 of the Fifth Amended Complaint had a reasonable, factual basis, founded on documentary evidence and testimony. Rule 11(b)(3) does not require perfection, nor does it require that the allegations in a complaint precisely match the exact terminology that comes out in deposition testimony after the fact. Here, McCullough plainly testified that he and Dale had had conversations regarding publishing monthly quad outputs that Dale was able to formulate while using a different calculator

10

than the one for the quarterly quad model. McCullough Tr. 58:24-59:8. Hedgeye does not dispute that reasonable minds could theoretically disagree over whether Mr. McCullough's testimony regarding "calculators" matches perfectly with Paragraph 150's word choice of "outline." But when all doubts are resolved in Hedgeye's favor, as they must be on consideration of a Rule 11 motion, it is clear that Defendant falls far short of establishing a sanctionable offense. *K.M.B. Warehouse Distribs., Inc.*, 61 F.3d at 131. In fact, Courts routinely reject sanctions where, as here, the challenged allegations rest on a plausible interpretation of testimonial and documentary evidence. *See Goldenberg v. St. Barnabas Hosp.*, Civ. No. 01-7435, 2005 WL 426701, at *7 (S.D.N.Y. Feb. 23, 2005) (denying sanctions where "there was a reasonable basis for plaintiff's counsel to have believed that [plaintiff's] allegations were grounded in fact when he filed the … complaint"); *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 427 (S.D.N.Y. 2016) ("Rule 11 sanctions may not be imposed unless a particular … allegation is utterly lacking in support," not "where the evidentiary support is merely weak.") (internal citations and quotation marks omitted).

Moreover, even if McCullough's testimony could be read as inconsistent with Hedgeye's allegation, such inconsistency falls far short of the showing required for sanctions. *See Brown v. Artus*, 647 F. Supp. 2d 190, 205-206 (N.D.N.Y. 2009) ("the submission of inconsistent statements alone is insufficient to establish that a statement was false, or was filed for an improper purpose."). Courts in this Circuit have repeatedly held that conflicting or ambiguous testimony, without more, does not establish that a factual contention was false or made without reasonable inquiry. *See Freeman v. Stake.com*, Civ. No. 22-7002, 2023 WL 7386354, at *3 (S.D.N.Y. Nov. 7, 2023) (rejecting Defendants' argument that "Plaintiff violated Rule 11(b)(3) by asserting conflicting factual contentions about Primedice's partnership status."); *Cavanagh v. Ford Motor Co.*, Civ. No.

11

13-4584, 2015 WL 13745259, at \*5 (E.D.N.Y. Dec. 4, 2015) (denying sanctions premised on alleged misstatements contained in the Amended Complaint where "Cavanagh's testimony does not contradict the Amended Complaint's allegations, and is not legally inconsistent with Plaintiffs' failure to warn theory of liability."), *R&R adopted*, 2016 WL 259312 (E.D.N.Y. Jan. 21, 2016). Thus, the perceived inconsistency between the allegations in Paragraph 150 and McCullough's testimony does not justify sanctions.

Defendant invokes decisions such as *Levine v. FDIC*, 2 F.3d 476, 479 (2d Cir. 1993), *Ammann v. Sharestates, Inc.*, Civ. No. 21-2766, 2024 WL 1956237, at \*3 (E.D.N.Y. Mar. 21, 2024), and *Cameau v. Nat'l Recovery Agency, Inc.*, Civ. No. 15-2861, 2018 WL 4853050, at \*1 (E.D.N.Y. Sept. 28, 2018). *See* Mot. at 11. But each of these cases involved counsel who persisted in allegations contradicted by their own clients' admissions or who refused to withdraw claims after learning they were false. No such conduct occurred here. Hedgeye's allegations remain supported by the record and have never been shown false. Rule 11 imposes a continuing obligation to correct or withdraw allegations only when it becomes clear that they lack factual support, which never occurred here.

## II.    Defendant Has Not Shown Any Violation of Rule 11(b)(1), as There is No Evidence that Hedgeye Presented any Allegation for an Improper Purpose

Rule 11(b)(1) sanctions require proof that a filing was interposed "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Courts in this Circuit repeatedly emphasize that this is an "extraordinary remedy" that should only be issued as a "very last resort," requiring an actual showing of subjective improper purpose, not simply aggressive litigation or a losing theory. *See Connolly v. TJX Cos.*, Civ. No. 07-3282, 2010 WL 5491109, at \*13 (E.D.N.Y. Dec. 30, 2010) (internal quotations omitted); *Indoafric Exports Priv. Ltd. v. Citibank, N.A.*, 2016 WL 6820726, at \*4 (S.D.N.Y. Nov. 7, 2016), *aff'd*, 696 F. App'x

12

551 (2d Cir. 2017) ("The standard for Rule 11 sanctions is quite rigorous and very rarely succeeds in cases where evidence of bad faith or aggravated misconduct is not apparent.") Defendant does not meet this high bar. Again, as set forth in the Beeber Declaration, Hedgeye advanced the challenged allegations based on documentary evidence and testimony, and in a good-faith effort to vindicate its rights and to reclaim an interest in a monthly quad model that it had—and continues to have—reason to believe existed at the time Dale left Hedgeye. *See* Beeber Decl. ¶ 11; *see also Kingvision Pay-Per-View Ltd. v. Ramierez*, Civ. No. 05-2778, 2005 WL 1785113, at \*4 (S.D.N.Y. July 28, 2005) ("To demonstrate adequate evidentiary support under this rule, an attorney may submit an affidavit averring reliance on objectively reasonable representations of the client prior to filing.") (internal quotations omitted).

The Second Circuit has made equally clear that courts may not infer improper purpose merely because a claim is disputed, ultimately unsuccessful, or vigorously pursued. *See Sec. Indus. Ass'n v. Clarke*, 898 F.2d 318, 321 (2d Cir. 1990) ("A distinction must be drawn between a position which is merely losing, and one which is both losing and sanctionable.") (internal quotation marks omitted). Litigation hardball is not sanctionable, absent proof of bad faith. *See Schlaifer Nance & Co. v. Est. of Warhol* 194 F.3d 323, 341 (2d Cir. 1999) (in the sanctions context, noting that, "in our adversarial system, we expect a litigant and his or her attorney to pursue a claim zealously within the boundaries of the law and ethical rules.").

At most, Defendant identifies a contested factual dispute in a complex case and seeks to convert it into an improper-purpose finding. Hedgeye pleaded its assignment-of-rights theory based on its understanding of internal and external communications, the source files Dale returned to it, and witness testimony. Hedgeye also complied with this Court's directives in re-pleading its claims, produced supplemental discovery, and presented its position on summary judgment. This

13

is precisely the type of zealous advocacy that cannot be considered an improper purpose. *See Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652-53 (2d Cir. 2005) (holding that trial court judges must be "careful not to rein in zealous advocacy."). Nor can Defendant show that Hedgeye acted to delay or increase costs. Hedgeye bore the cost of the transcription for the supplemental deposition, Defendant used the resulting record to prevail on summary judgment, and this Court dismissed Hedgeye's claim through standard motion practice.

Finally, the caution to avoid chilling zealous advocacy is especially appropriate in a case litigated as intensely as this one, where every issue has been pressed by both sides. Elevating one disputed allegation to "harassment" would effectively turn normal litigation into sanctionable conduct, precisely the result the Second Circuit warns against. *See Penzo v. Consol. Edison Co. of N.Y., Inc.*, Civ. No. 19-7478, WL 4467412, at \*3 (S.D.N.Y. Oct. 10, 2024) (holding that the challenged conduct did not warrant Rule 11 sanctions when "considered against the backdrop of this case as a whole"); *see also Tantaros v. Fox News Network LLC*, Civ. No. 17-2958, 2018 WL 1662779, at \*4-\*5 (S.D.N.Y. Mar. 16, 2018) (declining to impose sanctions in consideration of "the unique procedural history of this case" and that "there is no evidence here to conclude that Plaintiff did not sincerely believe in her claims"). Because Defendant cannot provide the "clear evidence" of improper motive that the Second Circuit demands, his Rule 11(b)(1) argument fails as a matter of law.

## III.    Even If This Court Were to Find a Technical Violation of Rule 11(b), Sanctions Are Not Warranted in These Circumstances Under Rule 11(c)

Even where a court finds that Rule 11 has been violated, "the decision whether or not to impose sanctions is a matter for the court's discretion." *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004); *see also Ipcon Collections*, 698 F.3d at 63 ("Sanctions may be–but need not be–imposed when court filings are used for an 'improper purpose,' or when claims are not

14

supported by existing law, lack evidentiary support, or are otherwise frivolous"). In exercising that discretion, "a district court is obligated to exercise caution and restraint." *Kingvision Pay-Per-View Ltd. v. Ramierez*, Civ. No. 05-2778, 2005 WL 1785113, at \*4 (S.D.N.Y. July 28, 2005). Indeed, it is well settled that the imposition of sanctions is reserved for "extreme cases." *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x. 33 (2d Cir. 2017); *see also Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017) ("Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances.") (citation omitted). Among the factors to be considered by the Court in deciding whether to levy sanctions are "(1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern o[f] activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; [and] (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case." *Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*, 665 F. Supp. 2d 239, 265 (S.D.N.Y. 2009) (quoting *Colliton v. Cravath, Swaine & Moore LLP*, Civ. No. 08-0400, 2008 WL 4386764, at \*12 (S.D.N.Y. Sept. 24, 2008) (citing Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment)).

Here, each of the above factors weigh against levying sanctions. First, there was nothing willful or malicious about Hedgeye or its counsel's conduct. Hedgeye advanced a colorable theory grounded in documentary evidence and testimony. Second, Dale does not argue, nor could he, that making the allegation in Paragraph 150 of the Fifth Amended Complaint was part of a pattern of misconduct. As this Court is well aware, this is an intensely litigated case where both sides have pushed hard on every single point raised. In this context, singling out one disputed theory for

sanctions would punish zealous advocacy in a lawsuit where nearly every factual and legal issue has been contested. Third, the challenged conduct has not infected the entire case in the slightest regard. It concerned one discrete paragraph in the Fifth Amended Complaint that was tested through supplemental discovery and resolved at summary judgment. Fourth, neither Hedgeye nor its counsel has engaged in any similar conduct in other litigation. Fifth, any impact on the litigation process was minimal. Defendant obtained the discovery he requested at Hedgeye's expense, used it on summary judgment, and ultimately prevailed. Sixth, while counsel are trained in the law, their experience and diligence here underscore that they acted in good faith, not recklessly. Finally, given the total lack of harm, and considering the all-consuming nature of this litigation for the past four years, there is simply nothing to deter, except perhaps the impulse to convert every disagreement into a sanctions motion.

## **CONCLUSION**

For the reasons set forth above, the Motion should be denied in its entirety.

Dated: November 18, 2025                                    VENABLE LLP

By:    */s/ Jessie F. Beeber*

Jessie F. Beeber
Eric A. Prager
Jake W. Goodman
Sarika Andavolu
Venable LLP
151 West 42nd Street
New York, New York 10036
212-307-5500
JBeeber@Venable.com
EAPrager@Venable.com
JWGoodman@Venable.com
SAndavolu@Venable.com

*Attorneys for Plaintiff*
*Hedgeye Risk Management, LLC*

16