UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
HEDGEYE RISK MANAGEMENT, LLC,       :
                                    :
                Plaintiff,          :
                                    :
      v.                            :     No. 21-cv-3687 (ALC) (RWL)
                                    :
                                    :
DARIUS DALE, et al.,                :
                                    :
                Defendants.         :
-------------------------------------------------------------x

# REPLY MEMORANDUM IN FURTHER SUPPORT OF
# DALE'S MOTION FOR RULE 11 SANCTIONS

## **INTRODUCTION**

In the wake of an order that dismissed Hedgeye's assignment of rights claim, a strong declarative sentence appeared in the next iteration of Hedgeye's amended complaint: "In or about April 2020, while Dale was employed by Hedgeye, Dale presented Keith McCullough with the outline for a model that would provide monthly quad calculations, rather than the quarterly quad calculations Hedgeye provided to its subscribers at that time." These allegations were unambiguous. They led the reader to understand that Dale had presented the outline of a model to McCullough, and that, in doing so, Dale had invented something that his Employment Agreement assigned to Hedgeye. As such, they set forth a factual basis for an assignment of rights claim that could survive a further motion to dismiss. There was only one problem. The allegations had no basis. As McCullough admitted in the opening minutes of his deposition, he has no recollection of Dale presenting any outline for a monthly quad model, and no recollection of Dale inventing any such thing. McCullough testified that McCullough himself had come up with the idea of a monthly quad model well before April 2020 and entirely independent of Dale.

Hedgeye and its counsel cannot claim otherwise. They do not argue these allegations stand on firm ground. Instead, they seek to justify their pleading in retrospect by claiming that they appeared to have a good faith basis at the time. They claim they had enough to let the facts be sorted out in further motion practice. That argument cannot stand. A driven adversary, chaperoned by able counsel, should not be permitted to plead facts that plainly do not exist.

Hedgeye and its counsel rest their defense primarily on a document that bears Roman numerals, which Dale presented to McCullough in April 2020—a document they describe as being in "outline format." But the document is not on its face, or by any stretch of the imagination, an outline for a monthly quad model. It is nothing of the kind.

And why did no one at Hedgeye or Venable think to check with McCullough, the sole witness to the purported event, who was but a phone call away? Even if Hedgeye and its counsel inexplicably submitted the pleading without consulting McCullough, wouldn't at least the lawyers have discovered the truth and seen the error of their ways when preparing McCullough for deposition? Indeed, there were many points at which Hedgeye and its counsel could have retracted the counter-factual allegations, including after defense counsel brought them straight to their attention, providing due notice and the full safe harbor period Rule 11 affords. Instead, Hedgeye doubled down and pushed forward, requiring the parties to brief, and the Court to consider, a baseless allegation all the way through summary judgment. At the end of that process, Judge Carter concluded that Hedgeye "misrepresent[ed] the factual situation…without any support." Such circumstances warrant sanctions.

## ARGUMENT

### A. Hedgeye And Venable Pled A Baseless Allegation

The record is bereft of any evidence that any standalone "monthly quad" model ever existed, or that Dale ever presented the outline of one to McCullough. Judge Carter rightly rejected Hedgeye's entire assignment of rights claim. He observed that "critically absent" from Hedgeye's submissions was "any evidence that Dale indeed developed this model…during his employment at Hedgeye." He found that Hedgeye "misrepresents the factual situation" when it claims otherwise. (Dkt. 998 at 87).

It is impossible to see how Hedgeye and its counsel exercised due diligence or conducted an adequate investigation before asserting such a claim. The lead sentence of the claim features a supposed interaction between Dale and McCullough, but McCullough's own deposition testimony rejects that account. (*See* Dale Br. 4-5; Bach Decl. Ex. A: McCullough Dep.). That

2

fact alone strongly supports the imposition of sanctions. *See In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 264 (S.D.N.Y. 2010) (a single, unsupported paragraph in a complaint can give rise to sanctions if the misstatement is a "material allegation central to the viability of the entire pleading."). Moreover, the Declaration of Jessie F. Beeber, Hedgeye's lead counsel, is conspicuously silent with respect to any effort to check facts with McCullough, either before Hedgeye amended its complaint or after. Hedgeye and its counsel persisted in pursuing the allegations even after McCullough was deposed, and then even after defense counsel put the matter squarely before them in a fully briefed Rule 11 notice. Ms. Beeber's Declaration is also conspicuously vague about how Hedgeye and its counsel remained comfortable with the key allegation supporting their claim after McCullough's contrary deposition testimony. *See Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (A pleading violates Rule 11(b)(3) where "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact."), abrogated on other grounds by *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *accord Ferguson v. Comm'r of Tax & Fin.*, 739 F. App'x 19, 22 (2d Cir. 2018).

Instead of speaking with McCullough, Hedgeye and Venable say they relied on a small handful of documents, primarily an April 2020 email exchange, as the good faith basis for their claim. (Beeber Decl. ¶ 10). The April 2020 exchange, attached to Ms. Beeber's declaration as Exhibit B-2, does not refer to any monthly quad model, nor does it provide the framework or outline for any such model. (Beeber Decl. Ex. B-2). Ms Beeber nevertheless describes Exhibit B-2 as proof of a good faith basis, because it purportedly shows Dale providing "in outline format, his monthly quad analysis." (Beeber Decl. ¶ 10). When she says "outline format," she appears to be referring to nothing more than Roman numerals that order the points in the

document. But missing from the document is any description or outline of a monthly quad *model*. That fact appears to have been added from thin air.

Hedgeye and Venable rely on two other documents in which Dale provided "quad" predictions to Hedgeye customers on a monthly, rather than quarterly, basis. (Ex. B-3 and B-4 to Beeber Decl.). Neither document refers to or provides an outline for any "monthly quad" model. Hedgeye and its counsel suggest they were entitled to draw the inference that somewhere behind these documents a monthly quad model that Dale had invented must have lain in the background. But McCullough explained at deposition that Hedgeye had long been capable of producing monthly quad calculations using its existing models, and that McCullough rather than Dale was responsible for the concept. (*See* Dale Br. 4-5; Bach Decl. Ex. A: McCullough Dep. at 8-11 ("In April 2020, we were discussing the model that we already had….April 2020, I am sure we were discussing models that we already had….we've had monthly quad calculations going back to pre-Darius's employment….We've always calculated everything monthly….We had our quarterly quad model, our monthly quad model. So we already had it."); *id.* at 26 (agreeing that Hedgeye had a "monthly quad model" before April 2020)). There is a substantial difference between monthly quad calculations, which McCullough testified were already well within Hedgeye's wheelhouse independent of any contribution from Dale, and the invention of a supposedly new monthly quad model that Dale was required to assign to his then employer under the terms of his Employment Agreement. The documents Hedgeye cites do not come close to bearing out its claim that the latter ever existed. Even indulging the suggestion in the Beeber Declaration that the documents provided an arguable good faith basis at some point in a "complex" case (Beeber Decl. ¶ 8), they certainly could not carry water once McCullough explained them away and after Defendants provided detailed notice of a potential Rule 11

4

violation.

Ms. Beeber avers in her Declaration that counsel also relied on a determination by "Hedgeye" that none of the files Dale returned, after litigation commenced, was "capable of calculating monthly quads." (Beeber Decl. ¶ 10). Who at Hedgeye made that determination, and on what basis, and when? Certainly Hedgeye CEO McCullough did not make that determination, nor could he possibly agree with it. He testified under oath and has also declared to the public that Hedgeye had *always* had the ability to calculate "monthly" quads using its existing models, which include the very source models at issue in this case. (*See* Dale Br. 4-5; Dkt. 846: Hedgeye 56.1 Response at 139 ¶ 2-343 (McCullough, stating on July 13, 2021: "We do month[ly]… we do it all, we invented it.")).

As the Court may recall, Hedgeye deposed Dale twice, with a seven-hour deposition in June 2021, and another, more limited deposition in December 2022. At his first deposition, Dale volunteered that Hedgeye "did not have the capability or technical expertise to create a monthly quad product." (Beeber Decl. Ex. B-5 at 2). Hedgeye now attaches that portion of Dale's testimony to its opposition, without explanation. It is hard to see how Dale's statement helps Hedgeye at all. It contains no admission that Dale invented any particular monthly quad model while at Hedgeye. It does not speak to whether Hedgeye had the general capacity to make monthly quad calculations, which McCullough's testimony makes clear, but goes to Hedgeye's ability to fashion an entire product around that calculation, as 42 Macro had done.

Hedgeye also cites a line of questioning about "monthly quads" from Dale's second deposition in December 2022, which Dale's counsel directed him not to answer. (Beeber Decl. Ex. B-5 at 3-4). Again, Hedgeye provides no explanation and no context. The scope of Dale's second deposition was strictly limited by this Court to two hours of questioning about certain

5

tickers and prosaic formulas Dale had admitted to copying, and to two hours "regarding documents produced in November and December 2021." (Dkt. 275). In any event, Dale's compliance with his counsel's instruction not to answer is not a good faith basis for pleading a new claim nearly a year later.

Ms. Beeber declares that she, her colleagues, and her client had no improper purpose in pleading that Dale presented the outline of a monthly quad model to McCullough in April 2020. (Beeber Decl. ¶ 11; *see also* Hedgeye Opp. 12-13). The purpose was clearly to come up with an allegation that could sustain Hedgeye's assignment of rights claim against a further motion to dismiss. *See Miller v. Bridgeport Bd. of Educ.*, 2014 WL 3738057, at *10 (D. Conn. July 30, 2014) (imposing sanctions where, but for baseless allegations, "there is little likelihood that [plaintiff's claim] would have survived defendants' motion to dismiss"). It was improper to introduce a baseless allegation just to sustain a claim, and improper to continue to rely upon it all the way through summary judgment once the record exposed just how baseless it was.

**B. Hedgeye And Venable Fail To Explain Why The Allegation Was Not Withdrawn After McCullough's Deposition Or During The Safe-Harbor Period**

Hedgeye's allegations stood on shaky ground before McCullough's July 2024 deposition. But during that proceeding, they collapsed entirely. The deposition was not, as Hedgeye now claims, a "gotcha" trap. (Hedgeye Opp. at 10). The very first question was almost a verbatim quote from Hedgeye's complaint: "Did Mr. Dale present you an outline for a model that would provide monthly quad calculations at or around [April 2020]?" (Bach Decl. Ex. A: McCullough Dep. at 6:09-15). We were floored when McCullough responded: "April '20 wasn't the first time, no," claimed he could not remember a specific conversation or Dale presenting any outline during that time period, and seemed generally unaware of any fact Hedgeye had alleged until defense counsel showed him a copy of the amended complaint. (*Id.* at 6-12).

6

Like Rumpelstiltskin trying to spin straw into gold, Hedgeye argues that McCullough's testimony was "entirely consistent" with its pleading, but for a difference in terminology. (Hedgeye Opp. at 8). It claims McCullough's references to a "calculator" were just another name for the "outline" referenced in the complaint. (*Id.* at 8-9). A calculator and an outline are not the same thing. Regardless, McCullough did not testify to any specific new invention. He testified repeatedly that Hedgeye had *already* had the ability to calculate "monthly" quads using its existing models and had always done so. (Dale Br. 4-5). He further explained that the monthly quad "calculator" he imagined would just "sum up" the same data already used in Hedgeye's standard quad model, albeit on a monthly basis. (*Id.* at 5-6). In other words, there was no new invention, nothing concrete that could legitimately fall under an "assignment of rights" clause.

The record similarly belies Hedgeye's self-serving claim that McCullough was just confused about the word "interrogatories" when he testified he did nothing to verify the responses he signed. (Hedgeye Opp. at 10). McCullough expressed no confusion during the deposition. Indeed, he was looking right at a copy of the interrogatory responses themselves when asked whether he took any steps to ensure their accuracy, and when he admitted he did not. (Bach Decl. Ex. A: McCullough Dep. at 82-85). Moreover, if his testimony was somehow erroneous, it could have easily been corrected with an errata sheet, or with a subsequent declaration from McCullough. One would think that, if McCullough had truly mis-stepped, Hedgeye would have put something on the record after receiving Defendants' Rule 11 notice, which specifically flagged this astounding portion of his testimony. It didn't.

Hedgeye and its counsel give no real explanation as to why they chose to continue to proceed with their claim after McCullough's deposition and Defendants' prompt Rule 11 notice.

7

Ms. Beeber asserts only that, at that stage, Venable "undertook an additional review of the relevant materials." (Beeber Decl. at ¶12). What did it review? How did it convince itself there was any sound basis for its claim? Notably, Hedgeye did not cite or attach any of the documents in now relies upon in seeking summary judgment on its assignment of rights claims, or in opposing Dale's motion to dismiss the same. (*See* Dkt. 817 (Hedgeye 56.1 Statement); Dkt. 846 (Hedgeye 56.1 Response)). At the time of the summary judgment briefing, and well after having received Defendants' Rule 11 notice, Hedgeye merely shrugged off the issue, claiming that Dale's insistence on Hedgeye's lack of evidence and on contrary facts adduced through McCullough's deposition testimony were merely "rhetorical" and "not material" to Dale's summary judgment motion. (Dkt. 846: Hedgeye 56.1 Response at 140-44, ¶¶ 2-346–2-359).

Hedgeye and its counsel's decision not to withdraw this baseless claim, even after being served with a detailed sanctions motion, "took their actions outside the ambit of 'zealous advocacy' and into the realm of Rule 11 sanctions." *Galin v. Hamada*, 283 F. Supp. 3d 189, 203 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018) (imposing sanctions where party and counsel failed to withdraw claims after discovering they were "utterly lacking in support").

## CONCLUSION

For the foregoing reasons and those set forth in its opening brief, Dale urges the Court to impose Rule 11 sanctions, including all fees and costs incurred by Dale in litigating all aspects of Hedgeye's amended assignment of rights claims, the fees and costs incurred by Dale in seeking related sanctions, and any other relief the Court deems just and proper.

Dated: December 4, 2025                               Respectfully submitted,

                                                            /s/ *Jonathan P. Bach*
                                                            Jonathan P. Bach

                                                                Fabien M. Thayamballi
                                                                Alice Buttrick
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Floor
New York, NY 10036
Tel: (212) 257-4897
Fax: (212) 202-6417
jbach@shapiroarato.com
fthayamballi@shapiroarato.com
abuttrick@shapiroarato.com

*Attorneys for Darius Dale*