UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
HEDGEYE RISK MANAGEMENT, LLC,                  :
                                               :
                    Plaintiff,                 :          21-CV-3687 (ALC) (RWL)
                                               :
             - against -                       :   **REPORT AND RECOMMENDATION:**
                                               :   **MOTION FOR RULE 11 SANCTIONS**
DARIUS DALE, STEVEN LAMAR, 42 MACRO,           :          **(Dkt. 1023)**
LLC, NADINE TERMAN, and SOLSTEIN               :
CAPITAL, LLC,                                  :
                                               :
                    Defendants.                :
-------------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

In late March 2021, Darius Dale left his employer Hedgeye Risk Management, LLC, to start his own business, 42 Macro, LLC, in the same field of investor financial research and analysis. The events surrounding that break spawned the instant case, which began with Hedgeye's complaint alleging as its lead claim that Dale stole trade secrets consisting of investment risk models, client information, and more. After several years of hard-fought litigation, the parties cross-moved for summary judgment. Judge Carter granted summary judgment in favor of Dale on Hedgeye's marquee claim for theft of trade secrets. The Court also granted summary judgment in Dale's favor on a claim that Hedgeye asserted for the first time after discovery closed – Dale's alleged failure to assign to Hedgeye a "monthly quad" model distinct from Hedgeye's quarterly quad model. Arguing that that claim was baseless and squarely belied by the deposition testimony of Hedgeye's founder and CEO, Keith McCullough, Dale moved for sanctions against both Hedgeye and its attorneys for violating Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"). For the following reasons, I find that Hedgeye and its counsel violated Rule 11, but that sanctions beyond that finding are not warranted.

1

**Factual And Procedural Background**

Hedgeye commenced this action on April 26, 2021.  (Complaint ("Compl."), Dkt. 1.)  The complaint alleged that Dale left Hedgeye to start his own competing business, stole trade secrets, copied confidential files, and took Hedgeye's customers.  Hedgeye asserted causes of action for theft of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, common law misappropriation, breach of contract, conversion, and unfair competition.  Within its claim for breach of contract, Hedgeye alleged that Dale breached several provisions of his employment agreement, including those governing confidentiality, non-solicitation, and assignment of rights.  (Compl. ¶¶ 105-109.)  Only the assignment-of-rights claim is at issue on this motion.

## A.    Hedgeye's Allegations About A "Monthly Quad" Model

The "Assignment of Rights" provision in Dale's employment agreement assigns to Hedgeye "inventions, discoveries, [and] ideas … conceived or made by [Dale]," while employed by Hedgeye.  (Dkt. 652-1 at 3.)  During fact discovery, Dale served an interrogatory seeking identification of the inventions, discoveries, or ideas Hedgeye claimed to be at issue under this provision.  (Dkt. 155-2 at 8-9.)  Hedgeye's initial and supplemental responses to that interrogatory were crafted in broad, general terms and did not specifically mention any monthly quad model.[1]  (*Id.*; Dkt. 637-7 at 6.)  Nor did Hedgeye's second and third amended complaints, filed on July 28, 2022, and August 16, 2022, respectively.  (*See* Second Amended Complaint, Dkt. 323 ¶¶ 27, 32, 260, 272-273;

---

[1] The term "quad model" refers to a macroeconomic model of the economy diagrammed into four quadrants based on the direction of GDP growth and inflation.  The concept predates Hedgeye, and Hedgeye does not claim any proprietary right in that concept. *See generally* Geo Chen, *The four quadrant global macro framework (part 1)*, FIDENZA MACRO  (Dec.  10,  2024)  https://www.fidenzamacro.com/p/the-four-quadrant-global-macro-framework (last visited May 5, 2026).

Third Amended Complaint, Dkt. 325-1 ¶¶ 25, 30, 256, 268-69.)  Fact discovery closed on March 30, 2023.  (Dkt. 494 at 1.)

On September 29, 2023, the Court granted Dale's motion to dismiss Hedgeye's Assignment of Rights claim as stated in the Third Amended Complaint, without prejudice to replead, holding that Hedgeye's allegations were entirely conclusory and therefore failed to state a cognizable claim.  (Opinion & Order, Dkt. 623 at 25-26.)  Hedgeye's allegation that Dale violated the Assignment of Rights provision by failing to "return" a monthly quad model thus emerged for the first time only after discovery was over and not until its fourth and fifth amended complaints filed on October 20, 2023, and December 20, 2023, respectively.  (*See* Fourth Amended Complaint, Dkt. 628 ¶ 150; Fifth Amended Complaint ("FAC"), Dkt. 653 ¶ 150.)  The substance of the claim – referred to herein as the "Monthly Quads Claim," consisted of a single paragraph, premised on CEO McCullough's knowledge:

> ***In or about April 2020, while Dale was employed by Hedgeye, Dale presented Keith McCullough with the outline for a model that would provide monthly quad calculations, rather than the quarterly quad calculations Hedgeye provided to its subscribers at that time.***  42 Macro now offers its subscribers monthly quad calculations, which upon information and belief are based on the monthly model Dale created while he was at Hedgeye and offered to Keith McCullough.  Dale never returned to Hedgeye any model capable of calculating quads on a monthly basis. Dale's failure to return this model to Hedgeye, a model created while Dale was employed by Hedgeye, is a violation of the Assignment of Rights provision of his Employment Agreement.

(FAC ¶ 150 (emphasis added).)

On May 20, 2024, Dale filed a letter seeking an order precluding Hedgeye from pursuing the Monthly Quads Claim because Hedgeye failed to disclose it during

discovery.  (Dkt. 671.)  The Court acknowledged that Dale had been prejudiced and that the "Court would be well within its discretion to preclude Hedgeye from proceeding with the claim."  (Dkt. 679.)  However, the Court found that the prejudice could be adequately addressed by allowing Dale limited additional discovery, including three interrogatories and a 90-minute deposition of McCullough focused on the Monthly Quads Claim.  (*Id*. at 2.)

On June 24, 2024, Hedgeye served interrogatory responses, sworn to by McCullough, identifying documents Hedgeye relied on in making the Paragraph 150 allegations.  The documents include:  (1) an email from Dale to McCullough dated April 30, 2020, that, among things, lists the prevailing quad for each month April through May (Beeber Decl. Ex. B-2[2]); (2) an email from Dale to a third party dated April 29, 2020, listing the same "monthly Quad map" (*id*. Ex. B-3); (3) an April 29, 2020, Hedgeye.com post that purportedly includes calculation of quads on a monthly basis (*id*. Ex. B-4); (4) Dale's deposition testimony stating, inter alia, that Hedgeye "did not have the technical expertise to create a monthly quad product" (*id.* Ex. B-5); (5) the absence of any source file produced by Dale to Hedgeye of any model capable of calculating quads on a monthly basis; and (6) Dale's employment agreement with Hedgeye.  (Bach Decl. Ex. B at 3-4.[3])

---

[2] "Beeber Decl." refers to the Declaration of Jessie F. Beeber, dated November 18, 2025, at Dkt. 1045.

[3] "Bach Decl." refers to the Declaration of Jonathan P. Bach, dated October 28, 2025, at Dkt. 1028.

**B.      McCullough's Deposition Testimony**

Just five weeks later, however, on July 30, 2024, McCullough provided deposition testimony that appears directly at odds with Hedgeye's Monthly Quads Claim and the notion that Dale created a new model capable of providing monthly quad calculations that Hedgeye did not already have.  McCullough maintained that the statement in Hedgeye's Monthly Quads Claim about Dale's having presented McCullough with an outline for a monthly quad model was true.  (Hedgeye Opp. at 9.[4])  But when asked about the outline of the model Dale allegedly presented to McCullough, McCullough could not recall any specific encounter with Dale in April 2020, or any specific outline presented by Dale.  (*See* Bach Decl. Ex. A at 6-12, 18-19, 21-26.)   Instead, McCullough testified that it was ***McCullough*** who invented the idea of monthly quads, as well as a method for calculating them, years prior to April 2020, and that whatever Dale presented to McCullough in April 2020 was nothing new.  (*See id.* at 8 ("In April 2020, we were discussing the model that we already had"); 121 ("[Dale] wouldn't have to show me an outline.  I'm the one who created the outline"); 125-26 ("We already had the outline.  That's not something that was created that's new … it's a given, the outline of the model and the methodology and how we're going to calculate that, that's my brain child, and so, of course, I – I have the outline").)

---

[4] "Hedgeye Opp." refers to Hedgeye's memorandum of law in opposition to Dale's motion for Rule 11 sanctions at Dkt. 1043.  Hedgeye quotes the relevant question and answer and cites the corresponding page and line numbers from McCullough's deposition in which he asserts that the first sentence of Paragraph 150 is "true."  (Hedgeye Opp. at 9.) Dale concedes that "[a]fter disavowing any specific recollection of any April 2020 interaction with Dale, McCullough nevertheless maintained that the statement describing such an encounter in Hedgeye's Fifth Amended Complaint was a 'true' statement."  (Dale Mem. at 3 n.2.)   "Dale Mem." refers to Dale's memorandum in support of Rule 11 sanctions at Dkt. 1024.

McCullough "was calculating [the monthly quads] … all the way back before [Dale] ever worked with [McCullough]."  (*Id.* at 30; *see also id.* at 9 ("we've had monthly quad calculations going back to pre-[Dale]'s employment"), 10 ("We've always calculated everything monthly").)  McCullough explained that the monthly quad model was already "embedded" in Hedgeye's existing model and was "not something that was new."  (*Id.* at 127; *see also id.* at 11 (the "monthly quad model is essentially a derivative of the quarterly quad model"); 34 ("the monthlies are already in the quarterly quad model").)

Accordingly, any conversation McCullough had with Dale in April 2020 about monthly quads would have been about whether to publish the pre-existing monthly quad outputs to Hedgeye's subscribers.  (*See id.* at 35-36, 48, 114-15.)  Any outline that Dale presented to McCullough "would be to just show people what the monthly quad outputs are," rather than the framework for any new model.  (*Id.* at 119.)  And, any suggestion that Dale may have created a monthly quad calculator that differed from what was already embedded within Hedgeye's model was purely speculative – McCullough had never seen such a model and simply assumed it might exist because "Darius Dale would never present any data without a model."  (*Id.* at 28; *see also id.* at 62 ("I've never seen [Dale]'s models"); 98 (denying any knowledge as to what Dale "could or could not do" in presenting monthly quad information without a separate monthly quad calculator).)

McCullough's testimony also underscored his lack of knowledge of information and materials identified in Hedgeye's interrogatory responses – even though McCullough had signed and verified those responses just the day before his deposition.  McCullough admitted that he did not know whether the interrogatory responses were accurate and that the only step he took to ensure their accuracy was to ask "[his] lawyers if it was

6

accurate."  (*Id*. at 85.)  McCullough also admitted that he was not familiar with the contents of any of the models that Dale had returned to Hedgeye and did not know whether they were capable of generating monthly quad calculations.  (*Id.* at 88-89.)  McCullough speculated that models listed in the interrogatory responses could not generate monthly quad calculations based on the absence of the word "monthly" in the title of those files. (*Id.* at 89-91.)

**C.    Dale's Rule 11 Motion And Summary Judgment**

Based on McCullough's deposition testimony, Dale asked Hedgeye to withdraw its Monthly Quads Claim and served notice of the instant motion.  (Bach Decl. ¶ 5.) Hedgeye did not respond to the request and did not withdraw the claim.  (*Id*. ¶ 6.)  After expiration of the 21-day safe-harbor period,[5] Dale requested leave to file the instant motion.  (Dkt. 690.)  Judge Carter referred the request and motion to me.  (Dkt. 697.)  I granted leave, but directed that the motion be filed after Judge Carter ruled on the parties' cross-motions for summary judgment.  (Dkt. 699.)

Judge Carter issued his summary judgment decision on September 30, 2025. (Dkt. 997 ("SJ Order").[6])  In addition to granting summary judgment in favor of Dale on Hedgeye's trade-secret claim (and related misappropriation claim), the Court granted summary judgment in Dale's favor on Hedgeye's Monthly Quads Claim.  In doing so, Judge Carter observed that "[c]ritically absent from Hedgeye's [briefing] … is any evidence that Dale indeed developed [a monthly quads] model or another one capable of

---

[5] The "safe harbor" provision of Rule 11 requires that a motion for sanctions be served on the opposing party at least 21 days before filing it with the court.  Fed. R. Civ. P. 11(c)(2).

[6] "SJ Order" refers to Judge Carter's Opinion & Order on summary judgment.  (*See* Dkts. 995, 997, 998.)  The full SJ Order currently is filed under seal at Dkt. 998.

monthly calculations during his employment at Hedgeye." (SJ Order at 87.) Rather than facts, Hedgeye "solely cites the conclusory statement that [Dale's business] model is 'a model Dale created while he was employed by Hedgeye' with no additional support." (*Id*.) Further, "[i]n response to Dale's motion [for summary judgment], Hedgeye misrepresent[ed] the factual situation, stating that Dale 'showed the model he had developed' to McCullough without any factual support for such." (*Id*.) The Court "agree[d" with Dale that "Hedgeye … failed to identify any 'discovery' which [Dale] withheld during his employment." (*Id*.)

The following month, on October 28, 2025, Dale filed the instant motion for sanctions. Hedgeye filed its opposition on November 18, 2025, and Dale replied on December 4, 2025. The matter is fully briefed and ripe for decision.

### Legal Standards

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus … streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990). Rule 11 accomplishes this purpose by authorizing courts to impose sanctions "when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (quoting Fed. R. Civ. P. 11(b)-(c)). Under Rule 11(b), an attorney who presents a pleading to a court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that:

> (1) it is ***not being presented for any improper purpose***, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the **factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b) (emphasis added). Dale specifically invokes the first – no improper purpose – and third – evidentiary support – subsections.

Rule 11 imposes an "affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735, 2019 WL 4688629, at *10 (S.D.N.Y. Sept. 26, 2019) (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)), *aff'd*, 829 F. App'x 533 (2d Cir. 2020). "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness." *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000); *see also Quadrozzi v. City of New York*, 127 F.R.D. 63, 79 (S.D.N.Y. 1989) ("a court must … look to the objective reasonableness of an attorney's actions under the circumstances"). "A pleading or motion violates Rule 11 if it is 'frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith.'" *ED Capital, LLC v. Bloomfield Investment Resources Corp.*, 316 F.R.D. 77, 81 (S.D.N.Y. 2016) (quoting *Wechsler v. Hunt Health Systems, Ltd.*, 216 F. Supp.2d 347 (S.D.N.Y. 2002)).

In assessing reasonableness, the Court will "examine the objective merits of each individual claim and not the pleading as a whole." *RL 900 Park, LLC v. Ender*, No. 18-

9

CV-12121, 2021 WL 738705, at *4 (S.D.N.Y. Feb. 25, 2021); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (considering various individual claims separately for purposes of sanctions because "whether or not a competent attorney after reasonable investigation would have asserted each of those claims also varies"). Sanctions are appropriate where "it should have been patently obvious to any attorney who had familiarized himself [or herself] with the law" that the claim was frivolous. *Four Keys Leasing & Maintenance Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988); *see also Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991) ("Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success") (internal quotation marks and citation omitted).

In considering Rule 11 sanctions, "a court cannot rely on hindsight in assessing the propriety of the attorney's conduct, but must instead base its award on the particular facts that were reasonably accessible to the attorney at the time of the signing." *LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 434 (S.D.N.Y. 1995); *accord Jeffreys v. Rossi*, 275 F. Supp.2d 463, 479-80 (S.D.N.Y. 2003). A court must "resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks omitted); *see also Quadrozzi*, 127 F.R.D. at 80 (same). "The standard for imposing Rule 11 sanctions … is purposefully high, so as not to stifle legal creativity and zealous advocacy." *City of Perry, Iowa v. Procter & Gamble Co.*, No. 15-CV-8051, 2017 WL 2656250, at *2 (S.D.N.Y. June 20, 2017).

Whether to impose sanctions at all is discretionary, not mandatory. Fed. R. Civ. P. 11(c) (providing that, if a court finds a Rule 11 violation, the court "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is

10

responsible for the violation"); *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004) ("Even if the district court concludes that the assertion of a given claim violates Rule 11, however, the decision whether or not to impose sanctions is a matter for the court's discretion"). While district courts have wide discretion, "such discretion must be exercised with restraint." *ED Capital*, 316 F.R.D. at 81 (internal quotation marks omitted); *Kingvision Pay-Per-View Ltd. v. Ramierez*, No. 05-CV-2778, 2005 WL 1785113, at *4 (S.D.N.Y. July 28, 2005). "Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances." *Park v. Seoul Broadcasting System Co.*, No. 05-CV-8956, 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008); *see also Sorenson v. Wolfson*, 170 F. Supp.3d 622, 626 (S.D.N.Y. 2016) (stating that the imposition of sanctions under Rule 11 "should be reserved for extreme cases"), *aff'd*, 683 F. App'x 33 (2d Cir. 2017).

**Discussion**

Dale argues that Hedgeye violated Rule 11(b) in two respects. First, Hedgeye violated Rule 11(b)(3) by advancing and then refusing to withdraw its Monthly Quads Claim without any factual support, even after Hedgeye's CEO testified to the absence of support for the claim. Second, Hedgeye violated Rule 11(b)(1) by filing and maintaining its Monthly Quads Claim for improper purposes, namely harassment, delay, and increasing the cost of litigation. Hedgeye argues that McCullough's testimony does not negate Hedgeye's good faith assertion and pursuit of the Monthly Quads Claim based on the documentary record. Further, Hedgeye asserts that it acted in good faith and Dale is distorting a small part of the parties' hard-fought dispute into something it is not. The Court finds that Hedgeye violated Rule 11(b)(3), but that sanctions nonetheless are not warranted.

11

## A.    Lack Of Evidentiary Support

Hedgeye violated Rule 11(b)(3) by alleging and maintaining the allegation that Dale breached his employment agreement by failing to assign a monthly quad model.

A pleading violates Rule 11(b)(3) where "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (internal quotation marks and citation omitted), *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005).  "With respect to factual contentions, 'sanctions [under Rule 11] may not be imposed unless a particular allegation is utterly lacking in support.'"  *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003)).  Rule 11 sanctions thus are "well-founded" where, for example, a claim is "based on rank speculation," *(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, No. 21-CV-11096, 2022 WL 4234552, at *4 (S.D.N.Y. Sept. 14, 2022), or "concocted 'facts' that were not well grounded."  *Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993).

From the start, Hedgeye's claim that Dale breached the assignment provision of his employment contract was a speculative claim in search of factual support.  None of Hedgeye's first four complaints (the initial complaint followed by three amended versions) mentioned anything about a monthly quad model.  Nor did Hedgeye's initial and supplemental interrogatory responses during the fact discovery period.  Unsurprisingly, then, Judge Carter dismissed the claim as set forth in Hedgeye's Third Amended Complaint because it was entirely conclusory.  (Dkt. 623 at 25-26.)

Hedgeye only first alleged Dale's failure to assign the monthly quad model after

12

that dismissal.  Yet, the Monthly Quads Claim was based on the thinnest of reeds:  an inference – which Hedgeye could have drawn at the time it filed any of its previous four complaints – that Dale must have created a new model capable of producing monthly quad outputs because an email sent on April 30, 2020, from Dale to McCullough, included a roman-numerated list of quad outputs by month for twelve months.  (Beeber Decl. Ex. B-2 at ECF 2.)  Hedgeye also references as support an email sent on April 29, 2020, a Hedgeye.com post written by Dale in which he provided the same or similar information, as well as Dale's deposition testimony that Hedgeye did not have the technical expertise to create a monthly quad product.[7]  (*See* Beeber Decl. Exs. B-3, B-4, B-5.)

Even if Hedgeye reasonably believed that those evidentiary touch-points justified assertion of its Monthly Quads Claim in the Fourth and Fifth Amended Complaints, no reasonable attorney or party could have maintained such a belief in the face of McCullough's subsequent deposition testimony.  That testimony thoroughly belied Hedgeye's Monthly Quads Claim.  McCullough testified unequivocally that whatever Dale presented to McCullough was "not something that was created that's new" (*e.g.*, Bach Decl. Ex. A at 125); that McCullough "was calculating [the monthly quads] … all the way back before [Dale] even worked with [McCullough]" (*id.* at 30); that the monthly quad model was already "embedded in what we do" (*id.* at 127); and that the model was in fact McCullough's "brain child" (*id.* at 126).  McCullough clarified that any conversation he may

---

[7] Dale notes that his deposition testimony addressed Hedgeye's capability with respect to creating a monthly quad "product," not merely a model.  (Dale Reply Mem. at 5) (asserting that Dale's deposition testimony "does not speak to whether Hedgeye had the general capacity to make monthly quad calculations, which McCullough's testimony makes clear, but goes to Hedgeye's ability to fashion an entire product around that calculation, as 42 Macro has done").)  "Dale Reply Mem." refers to Dale's reply memorandum in support of Rule 11 sanctions at Dkt. 1055.

have had with Dale in April 2020 about monthly quads was not about a new model, but rather whether to publish the pre-existing quad outputs to Hedgeye's subscribers. (*Id*. at 35-36, 48, 114-15, 119.)

In other words, as of July 30, 2024 (the day of McCullough's deposition), Hedgeye and its lawyers knew that ***Hedgeye's own CEO*** testified to facts controverting the allegation that Dale had presented him with a monthly quad model that Hedgeye did not already have. Whatever inference Hedgeye or its lawyers had previously drawn could no longer be advanced in good faith. Yet Hedgeye persisted. And when Dale served notice of its Rule 11 motion, Hedgeye still did not withdraw, letting the claim ride on summary judgment. (*See* Beeber Decl. ¶ 13 ("we viewed the appropriate vehicle for resolving … this issue as the ordinary discovery and summary judgment process – not Rule 11 motion practice").)

But Judge Carter's decision on summary judgment only confirmed what Dale had already explained in its Rule 11 notice: Hedgeye's Monthly Quads Claim was merely conclusory and devoid of factual support. (SJ Order at 87.) Even worse for Hedgeye, Judge Carter found that in its opposition, Hedgeye had "misrepresent[ed] the factual situation, stating that Dale 'showed the model he had developed' to McCullough without any factual support for such." (*Id*.) Hedgeye thus violated Rule 11(b)(3) by continuing to advance factual contentions having no evidentiary support.[8] *See, e.g.*, *Levine*, 2 F.3d at

---

[8] Rule 11(b)(3) recognizes that factual contentions without evidentiary support may avoid sanction "if specifically so identified, [they] will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Hedgeye, however, cannot avail itself of that exception. McCullough's testimony was the end of the road – there was no further fact investigation or discovery to be had.

479 (affirming Rule 11 sanctions where complaint was contradicted by admissions of the attorney's client); *Galin v. Hamada*, 753 F. App'x 3, 8 (2d Cir. 2018) (Rule 11 violated when party "reaffirm[s] the allegations in the complaint while making additional baseless legal and factual representations"); *Laface v. East Suffolk BOCES*, No. 2:18-CV-1314, 2019 WL 4696434, at \*8 (E.D.N.Y. Sept. 26, 2019) ("factual inaccuracies" in complaint uncovered during discovery warranted sanctions); *Cameau v. National Recovery Agency, Inc.*, No. 15-CV-2861, 2018 WL 4853050, at \*1 (E.D.N.Y. Sept. 28, 2018) (imposing Rule 11 sanctions where, at deposition, "Plaintiff said that he did not recall most of the events as they were alleged in the Complaint," other evidence demonstrated that allegations were inaccurate, and counsel failed to withdraw the claims even after receiving a safe harbor letter).

Hedgeye fails to mount any persuasive argument that it did not violate Rule 11(b)(3). Rather than acknowledge that McCullough's testimony was thoroughly at odds with its Monthly Quads Claim, Hedgeye characterizes the matter as merely "Defendant's perceived inconsistency" and a "semantic disagreement."[9] (Hedgeye Opp. at 7, 9.) Those characterizations are disingenuous given McCullough's actual testimony and

---

[9] The "semantic distinction" invoked by Hedgeye concerns Paragraph 150's reference to, and deposition questions of McCullough about, Dale presenting McCullough with an "outline" of a monthly quad model, as compared to McCullough's use of the term "calculator." Hedgeye posits that "McCullough plainly testified that he and Dale had had conversations regarding publishing monthly quad outputs that Dale was able to formulate *while using a different calculator than the one for the quarterly quad model*." (Hedgeye Opp. at 10-11 (citing McCullough Tr. 58:24-59:8) (emphasis added).) But as demonstrated above, McCullough repeatedly rejected that notion: he testified that a monthly quad model already was "embedded" in Hedgeye's quarterly quad model (Bach Decl. Ex. A at 127), that Hedgeye "always" had a method for calculating monthly quads (*id*. at 10), and that whatever Dale presented to McCullough in April 2020 was "not something that was created that's new" (*id.* at 125-26).

Judge Carter's summary judgment findings that Hedgeye had no factual support for its Monthly Quads Claim and instead resorted to misrepresentation of the "factual situation." (SJ Order at 87.)  For the same reasons, Hedgeye gains no ground in reciting that when asked whether the first sentence of Paragraph 150 of the Fifth Amended Complaint was a true statement, McCullough answered "Yes."[10]  (Hedgeye Opp. at 9.)  His testimony both before and after that assertion during the deposition repeatedly showed otherwise.

Hedgeye purports to distinguish cases cited by Dale – namely, *Levine*, *Amman*, and *Cameau* (all cited above) – on the basis that "each of these cases involved counsel who persisted in allegations contradicted by their own clients' admissions or who refused to withdraw claims after learning they were false."  (*Id.* at 12.)  According to Hedgeye, "[n]o such conduct occurred here."  (*Id.*)  To the contrary, as set forth above, the Court finds that Hedgeye persisted in the face of allegations thoroughly undermined by its client's CEO.[11]  Hedgeye's lawyers summarily assert that during the safe-harbor period,

---

[10] Hedgeye carps that "[t]he flow of questioning [at McCullough's deposition] makes plain that the aim of the deposition was not to understand Plaintiff's allegation, but to shape the testimony into support for a sanctions motion first, and a factual record for summary judgment second."  (Hedgeye Opp. at 10.)  The Court does not find fault with what readily may be viewed as artful lawyering.

[11] For the same reason, the cases Hedgeye relies on in opposition (Hedgeye Opp. at 11-12) are distinguishable from the facts presented here, and/or are otherwise unhelpful to Hedgeye.  *See Freeman v. Stake.com*, 22-CV-7002, 2023 WL 7386354, at *3 (S.D.N.Y. Nov. 7, 2023) (plaintiff's reference in amended complaint to entity as a partnership, followed by plaintiff's statement in brief opposing later motion to dismiss that the same entity was not a partnership, was not utterly lacking in support given the "broader narrative of evolving business ventures and relationships," and "at worst, evinces uncertainty"); *Almeciga v. Center for Investigative Reporting, Inc.*, 185 F. Supp.3d 401, 435 (S.D.N.Y. 2016) (court imposed sanctions, finding that "plaintiff perpetrated a fraud on the Court by pressing critical and serious allegations that she knew to be false"); *Cavanagh v. Ford Motor Co.*, 13-CV-4584, 2015 WL 13745259, at *5 (E.D.N.Y. Dec. 4, 2015) (finding no sanctionable conduct where "defects identified in the Amended Complaint are plausibly

"we undertook an additional review of the relevant materials.  That review continued to support the reasonableness of our understanding at the time." (Beeber Decl. ¶ 12.)  The Court fails to see how, and Hedgeye's counsel does not elaborate further.

## B.    Improper Purpose

Although the Court finds that Hedgeye and its counsel violated Rule 11(b)(3), it does not find that they violated Rule 11(b)(1).  Sanctions under Rule 11(b)(1) require proof that a filing was interposed for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. P. 11(b)(1). Improper purpose may not be inferred merely because a claim is disputed, ultimately unsuccessful, or vigorously pursued.  *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990) ("not all unsuccessful legal arguments are frivolous or warrant sanction").  And, "[a]lthough a frivolous position will often signal an improper purpose," frivolousness alone does not give rise to a finding of improper purpose, absent something more.  *Sierra Club v. United States Army Corps of Engineers*, 776 F.2d 383, 391 (2d Cir. 1985).  However, "[a] court may infer an improper purpose if, in light of Plaintiffs' conduct during and outside of litigation, a complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit."  *An v. Despins*, No. 22-CV-10062, 2023 WL 4931832, at *6 (S.D.N.Y. Aug. 2, 2023).

---

consistent with [Plaintiff's] deposition testimony," and evidence demonstrated that plaintiff's counsel had conducted an appropriate investigation), *R&R adopted*, 2016 WL 259312 (E.D.N.Y. Jan. 21, 2016); *Brown v. Artus*, 647 F. Supp.2d 190, 205-06 (N.D.N.Y. 2009) (finding no Rule 11 violation where "[a]t most, plaintiff has identified a potential inconsistency in defendant's position"); *Goldenberg v. St. Barnabas Hospital*, No. 01-CV-7435, 2005 WL 426701, at *7 (S.D.N.Y. Feb. 23, 2005) (finding "there was a reasonable basis for plaintiff's counsel to have believed that [Plaintiff's] allegations were grounded in fact when he filed the initial complaint as well as the motions to amend").

Hedgeye's counsel has submitted a declaration attesting that they did not assert the Monthly Quads Claim for any improper purpose, but rather "advanced the claim because Hedgeye genuinely sought to protect its trade secrets and confidential information, and to reclaim an interest in a model that it believed was developed during Darius Dale's employment with Hedgeye." (Beeber Decl. ¶ 11; *see also id.* ¶¶ 12-14.) Counsel's assertions are largely conclusory; and, what Hedgeye "believed" was not objectively reasonable in light of McCullough's own testimony. Even so, there is no direct evidence of improper purpose, and the Court does not find a sufficient basis to infer that Hedgeye and its counsel pursued the claim to harass, delay, or unnecessarily increase the cost of litigation.

To be sure, Hedgeye's pursuit of the Monthly Quads Claim necessarily caused Dale to expend legal fees and time on defending the claim. Dale, however, has not suggested that any such additional expense is significant, particularly in comparison to the cost of litigating the action as a whole. Dale also has not identified any significant delay from Hedgeye's maintenance of the Monthly Quads Claim. The claim led to very limited additional discovery – three interrogatories and a 90-minute deposition (paid for by Hedgeye) – and Dale has not asserted that that limited discovery materially delayed expert discovery or summary judgment briefing. Even though the relevant "purpose" turns on Hedgeye's intent before events unfolded, the absence of any material delay diminishes the likelihood that Hedgeye had delay in mind when pressing the Monthly Quads Claim. Dale also has not pointed to any of Hedgeye's other conduct during or outside of the litigation to support his claim that Hedgeye pursued the Monthly Quads Claim for an improper purpose.

It bears keeping in mind the scope of the Monthly Quads Claim relative to the entirety of the litigation. As noted at the outset, Hedgeye's principal claim was its theft of trade secrets claim. Throughout the litigation, that claim has been front and center and by far the primary driver of the costs, expert opinions, time expended, and other burdens of this case. The Monthly Quads Claim is but a drop in the bucket in comparison.[12] In that context, it is hard to imagine that Hedgeye and its attorneys introduced and adhered to the Monthly Quads Claim for the purpose of further harassing, delaying, or increasing the cost of litigation. *See Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 177 (2d Cir. 1999) ("There is often a significant difference between a wholly unwarranted lawsuit and a single unwarranted claim included in an otherwise non-frivolous lawsuit"); *Penzo v. Consolidated Edison Co. of New York, Inc.*, No. 19-CV-7478, 2024 WL 4467412, at *3 (S.D.N.Y. Oct. 10, 2024) (holding that plaintiff's challenged conduct did not warrant Rule 11 sanctions when "considered against the backdrop of this case as a whole"). In any event, the Court does not find sufficient evidence to show or infer improper purpose. Accordingly, the Court concludes that Hedgeye did not violate Rule 11(b)(1).

## C.    Proper Sanction

---

[12] After all, the Monthly Quads Claim consists of but one substantive paragraph in the 59-page, 302-paragraph Fifth Amended Complaint. Judge Carter's summary judgment order similarly is similarly indicative of the relative insignificance of the Monthly Quads Claim to the overall litigation. The opinion is 124 pages, the first half of which primarily consists of a factual recitation and expert witness issues – experts primarily devoted to the trade secrets claim and damages issues. Pages 70 through 123 discuss the legal claims, including claims asserted against and by other parties. For the section discussing Hedgeye's claims against Dale, the Monthly Quads Claim consumes only a page and a quarter of 18 pages. (*See generally* SJ Order at 73-91.)

19

If a court determines that Rule 11(b) has been violated, Rule 11(c) authorizes, but does not require, the court to "impose an appropriate sanction." Fed. R. Civ. P. 11(c)(1). Such sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

As explained above, however, whether to impose sanctions at all is within the Court's discretion, *Perez*, 373 F.3d at 325, and the Court must exercise restraint in doing so. *ED Capital*, 316 F.R.D. at 81. "The 1993 Advisory Committee Note to Rule 11 sets forth factors that a court may consider when deciding whether to impose sanctions or what sanctions are appropriate in the given circumstances." *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-400, 2008 WL 4386764, at *12 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009). Those factors include:

> (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern or activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.

*Id.*; *see also Simpson v. Putnam County National Bank of Carmel*, 112 F. Supp.2d 284, 291-92 (S.D.N.Y. 2000) (same).

Here, the Court determines that notwithstanding Hedgeye's violation of Rule 11(b)(3), sanctions (other than having found a violation) are not warranted. Several

20

factors support that conclusion. Dale has neither argued nor presented evidence on this motion that Hedgeye's conduct with respect to the Monthly Quads Claim was part of a pattern of conduct either in this litigation or other litigation (factors 2 and 4). The sanctionable conduct concerns but a single claim, based on a single substantive paragraph, in a pleading that is dominated by other claims and other facts (factor 3). And, there is nothing before the Court to indicate that Hedgeye's pursuit and maintenance of the Monthly Quads Claim materially increased the cost or time of the litigation (factor 5). On the other side of the ledger, Hedgeye's counsel is well-versed in the law (factor 6), and acted willfully, at least in refusing to withdraw the claim during the 21-day safe harbor (factor 1).

Considering all relevant circumstances, I recommend the Court exercise its discretion to not impose sanctions beyond a finding that Hedgeye violated Rule 11(b)(3). *See Perez*, 373 F.3d 321 (affirming district court's decision not to impose sanctions, and explaining that "[e]ven if the district court concludes that the assertion of a given claim violates Rule 11, … the decision whether or not to impose sanctions is a matter for the court's discretion") (citing Rule 11(c)); *Simon DeBartolo Group*, 186 F.3d at 177 ("In the ordinary case, a district court that would sanction a plaintiff for filing a baseless complaint might, in the exercise of its discretion, refrain from sanctioning the same plaintiff for filing a similar complaint containing, amongst viable claims, a baseless one"); *New V & J Produce Corp. v. NYCCaterers Inc.*, No. 13-CV-4861, 2014 WL 5026157, at *6 (S.D.N.Y. Sept. 29, 2014) (finding violation of Rule 11(b)(3) but declining to award sanctions, and stating that "[a] finding that Rule 11 has been violated does not compel the imposition of sanctions"); *see also* Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendments

(commenting that district "court has significant discretion in determining what sanctions, if any, should be imposed for a violation").

At bottom, the circumstances of this case are neither "extraordinary," *Galin v. Hamada*, 283 F. Supp.3d 189, 201 (S.D.N.Y. 2017), nor "extreme," *Sorenson*, 170 F. Supp.3d at 626. No financial sanctions are needed at this juncture to deter Hedgeye and its counsel from engaging in additional conduct in this case that violates Rule 11 (factor 7). Finding that Hedgeye and its counsel violated Rule 11 is sanction enough.

## Conclusion

For the reasons set forth above, I recommend that Defendant Dale's motion for Rule 11 sanctions be granted in part and denied in part. The motion should be granted to the extent of finding that Hedgeye and its counsel violated Rule 11(b)(3); it should be denied with respect to imposing sanctions beyond that finding. To the extent not discussed above, the Court finds the parties' arguments to be either moot or without merit.

## Procedures For Filing Objections

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Any party shall have fourteen (14) days to file a written response to the other party's objections. Any such objections and responses shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Andrew L. Carter, United States Courthouse, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007. Any request for an extension of time for filing objections must be addressed to Judge Carter. **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

RESPECTFULLY SUBMITTED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:  May 5, 2026
        New York, New York

Copies transmitted on this date to all counsel of record.