**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HEDGEYE RISK MANAGEMENT, LLC,<br><br>Plaintiff-Counterdefendant,<br><br>v.<br><br>DARIUS DALE, STEVEN LAMAR, 42 MACRO, LLC, NADINE TERMAN, AND SOLSTEIN CAPITAL, LLC,<br><br>Defendants-Counterclaimants. | No. 1:21-cv-03687 (ALC) (RWL) |

**PLAINTIFF HEDGEYE RISK MANAGEMENT, LLC'S OBJECTIONS TO REPORT AND RECOMMENDATION ON RULE 11 SANCTIONS MOTION**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

STANDARD OF REVIEW ......................................................................................................3

ARGUMENT.............................................................................................................................4

I.  THE R&R ERRONEOUSLY FINDS THAT HEDGEYE VIOLATED RULE 11(B)(3)...........................................................................................................4

II.  THE COURT SHOULD DECLINE TO ADOPT THE R&R.................................11

CONCLUSION.......................................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Perry, Iowa v. Procter & Gamble Co.*,
No. 15-CV-8051, 2017 WL 2656250 (S.D.N.Y. June 20, 2017) ............................................10

*Galin v. Hamada*,
283 F. Supp. 3d 189 (S.D.N.Y. 2017)........................................................................................11

*Healey v. Chelsea Resources, Ltd.*,
947 F.2d 611 (2d Cir. 1991)......................................................................................................10

*Kropelnicki v. Siegel*,
290 F.3d 118 (2d Cir. 2002)......................................................................................................10

*Park v. Seoul Broadcasting System Co.*,
No. 05-CV-8956, 2008 WL 619034 (S.D.N.Y. Mar. 6, 2008) .................................................11

*Rodick v. City of Schenectady*,
1 F.3d 1341 (2d Cir. 1993)..........................................................................................................9

*Schlaifer Nance & Co. v. Est. of Warhol*,
194 F.3d 323 (2d Cir. 1999).......................................................................................................11

*Sorenson v. Wolfson*,
170 F. Supp. 3d 622 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x 33 (2d Cir. 2017)...................9, 11

*StreetEasy, Inc. v. Chertok*,
752 F.3d 298 (2d Cir. 2014)......................................................................................................10

**Statutes & Rules**

28 U.S.C. § 636(b)(1) .........................................................................................................1, 3, 8

Federal Rule of Civil Procedure 11 ..................................................................................... *passim*

Plaintiff Hedgeye Risk Management, LLC ("Hedgeye") submits the following objections, pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), to Magistrate Judge Lehrburger's Report and Recommendation dated May 5, 2026 (Dkt. 1064, the "R&R"), which recommends that the Court find Hedgeye and its counsel violated Rule 11(b)(3) in connection with the Monthly Quads Claim.

## PRELIMINARY STATEMENT

Hedgeye respectfully submits that the finding in the R&R that Hedgeye and its counsel violated Rule 11(b)(3) is contrary to the record evidence. While the R&R concluded that no sanction beyond a finding of violation is warranted, and that there has been no violation of Rule 11(b)(1) (conclusions that are not the subject of this Objection), the finding of a Rule 11(b)(3) violation should be rejected.

Hedgeye's core business is using proprietary financial models to offer market predictions and macroeconomic research to subscribers. Its flagship "quad" model provides a macroeconomic analysis of which of four quadrants the economy is in, by mapping the rate of change of growth, inflation and policy (often called "GIP" by the parties). The x-axis of the four-quadrant map represents growth, and the y-axis represents inflation, both measured in rate-of-change terms.

During Dale's employment at Hedgeye, Hedgeye typically provided its subscribers with its quad calculations on a quarterly basis. Plaintiff's Statement of Undisputed Facts ("Pl.'s SOF"), ¶ 1-94 (Dkt. No. 816); Declaration of Sarika Andavolu, dated October 24, 2024 (the "Andavolu Decl.") Ex. 42 at 11:11-11:14 (Dkt. No. 818-42). The Rule 11 Motion centers around whether Hedgeye had evidentiary support for one allegation made in Hedgeye's Fourth and Fifth Amended Complaints, namely that Dale created for Hedgeye's use the "outline" for a model that would calculate quads on a monthly, rather than quarterly, basis. Pl's SOF ¶ 1-95; Andavolu Decl. Ex. 43 at 138:7-21. Under the Assignment of Rights Provision in Dale's Employment Agreement, Dale

1

was required to assign to Hedgeye all "inventions, discoveries, [and] ideas . . . conceived or made by Dale" while employed by Hedgeye. Declaration of Daryl Jones, dated April 26, 2021, Ex. 1 (Dkt. No. 8-1). In its operative complaint, Hedgeye alleged that after Dale left Hedgeye's employ, he never provided or returned to Hedgeye the model he created for providing quad calculations on a monthly basis, in violation of the Assignment of Rights Provision. This is what the R&R calls the Monthly Quads Claim. The allegation in question reads as follows:

> In or about April 2020, while Dale was employed by Hedgeye, Dale presented [Hedgeye CEO] Keith McCullough with the outline for a model that would provide monthly quad calculations, rather than the quarterly quad calculations Hedgeye provided to its subscribers at that time. 42 Macro now offers its subscribers monthly quad calculations, which upon information and belief are based on the monthly model Dale created while he was at Hedgeye and offered to Keith McCullough. Dale never returned to Hedgeye any model capable of calculating quads on a monthly basis. Dale's failure to return this model to Hedgeye, a model created while Dale was employed by Hedgeye, is a violation of the Assignment of Rights provision of his Employment Agreement.

Fifth Am. Compl. (Dkt. 653) ¶ 150. Dale now claims that he did not create any such model or outline. *See, e.g.*, Dkt. 1023 (the "Motion") at 8-9.

The Monthly Quads Claim was a single paragraph in a 59-page, 302-paragraph, Fifth Amended Complaint. It was based on documentary evidence -- including emails, an Internet post Dale published to Hedgeye subscribers, and Dale's own deposition testimony acknowledging that Hedgeye lacked the technical expertise to create a monthly quad product -- that gave Hedgeye a reasonable, good-faith basis to believe Dale had created a monthly quad model during his employment that he failed to deliver and assign to Hedgeye, as required by his Employment Agreement. The R&R does not dispute the existence of these documents. Rather, it holds that whatever inference Hedgeye had previously drawn from them "could no longer be advanced in good faith" after McCullough's deposition. R&R at 14. That conclusion imposes an obligation far beyond what Rule 11 requires, and fundamentally misapplies the "utterly lacking in support"

2

standard. As discussed below, the testimony of McCullough is not so contrary to the documentary evidence, and, in all events, the documentary evidence remained unchallenged and (as the Magistrate Judge found) provided a good faith basis for the Monthly Quads Claim.

It was reasonable for Hedgeye and its counsel to proceed with the Monthly Quads Claim after McCullough's deposition, because McCullough's testimony did not negate or contradict the information alleged in the Fourth and Fifth Amended Complaints. Rather, McCullough used his own words to describe Dale's creation of a monthly quad model while employed at Hedgeye. At bottom, this issue comes down to McCullough's use of the word "calculator" to describe what Dale created, as opposed to the word "outline" that appears in the pleadings. That is simply too slender a reed to support a finding that Rule 11 was violated. Whether what Dale created is labeled as a "calculator" or an "outline," Hedgeye maintains that it is a tool that he "conceived or made" while employed by Hedgeye (as substantiated by documentary evidence), and under the Assignment of Rights provision in his Employment Agreement, he was obligated to return it to Hedgeye after his departure. This Court should conduct de novo review and decline to adopt the R&R's finding of a Rule 11(b)(3) violation.

## STANDARD OF REVIEW

When deciding whether to adopt a report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court conducts a de novo review of those portions of a report and recommendation to which a party submits a timely objection. 28 U.S.C. § 636(b)(1)(C).  Although the R&R recommends no monetary sanctions, its recommendation that the Court affirmatively find a violation of Rule 11(b)(3) carries significant consequences -- including reputational harm to Hedgeye and its counsel -- that warrant the Court's review.

3

## ARGUMENT

**I.     The R&R Erroneously Finds That Hedgeye Violated Rule 11(b)(3)**

The R&R's central conclusion is that Hedgeye and its counsel violated Rule 11(b)(3) by "alleging and maintaining the allegation that Dale breached his employment agreement by failing to assign a monthly quad model." R&R at 12. Hedgeye objects to this finding for the reasons set forth below.

**A. The Monthly Quads Claim Had Evidentiary Support When Filed**

The R&R acknowledges that Hedgeye's claim was based on documentary evidence, including: (1) an email from Dale to McCullough dated April 30, 2020, listing the prevailing quad for each month; (2) an email from Dale to a third party dated April 29, 2020, listing the same "monthly Quad map;" (3) an April 29, 2020, Hedgeye post authored by Dale that includes calculation of quads on a monthly basis; and (4) Dale's own deposition testimony stating that Hedgeye "did not have the technical expertise to create a monthly quad product." *See* Declaration of Jessie F. Beeber, dated November 18, 2025 (the "Beeber Decl."), Exs. B-2, B-3, B-4, B-5. Before including Paragraph 150 in the Fourth and Fifth Amended Complaints, Hedgeye and its counsel reviewed and considered these documents and communications, which reasonably supported the belief that Dale had created a version of Hedgeye's source models capable of calculating quads on a monthly basis. *See* Beeber Decl. Ex. B. Based on these materials, counsel determined that a good-faith basis existed to include the allegation.

The R&R does not hold that the documentary record was insufficient to support the Monthly Quads Claim when it was filed. Rather, it recognizes that Hedgeye may have "reasonably believed that those evidentiary touch-points justified assertion of its Monthly Quads Claim in the Fourth and Fifth Amended Complaints." R&R at 13. Rule 11(b)(3) requires that "factual contentions have evidentiary support," and the R&R itself recognizes that the documentary

4

evidence provided such support. This evidence continues to support the claim notwithstanding McCullough's testimony because, as discussed below, McCullough's deposition testimony does not eliminate or refute that evidentiary support.

**B. The R&R Improperly Finds a Violation Without Considering All of McCullough's Testimony**

Having acknowledged the evidentiary basis for the Monthly Quads Claim when it was included in the Fourth Amended Complaint, filed on October 20, 2023, and the Fifth Amended Complaint, filed on December 20, 2023, the R&R pivots to McCullough's July 30, 2024 deposition as the moment at which Hedgeye's continued maintenance of the Claim violated Rule 11. The R&R asserts that "no reasonable attorney or party could have maintained such a belief in the face of McCullough's subsequent deposition testimony." R&R at 13. An examination of all of McCullough's testimony reveals, however, that this conclusion is incorrect. While Rule 11 imposes a continuing obligation, it does not require counsel to abandon a claim every time a witness's testimony could be read as inconsistent with a pleading, particularly in a complex, hard-fought case involving competing interpretations of evidence.

The R&R mischaracterizes McCullough's testimony as an unambiguous repudiation of the Monthly Quads Claim. It is not, as detailed below. McCullough's testimony did not negate or contradict the information alleged in the Fourth and Fifth Amended Complaints. Rather, McCullough provided his understanding of Dale's creation of a model that could calculate monthly quads, while Dale was employed at Hedgeye. At bottom, this issue comes down to McCullough's use of the word "calculator" to describe what Dale created, as opposed to the word "outline" that appears in the pleadings. That difference in word choice does not change the basis for the allegation that Dale created a tool to do something new -- make monthly quad calculations -- while he was

5

employed at Hedgeye, and there is no question that under the Employment Agreement Dale was obligated to assign all of his work product to Hedgeye and provide it to Hedgeye when he left.

The R&R acknowledges that "McCullough maintained that the statement in Hedgeye's Monthly Quads Claim about Dale's having presented McCullough with an outline for a monthly quad model was true." R&R at 5. But the R&R ignores the complete substance of McCullough's testimony, and instead only seizes on those parts of that testimony that it believes support a finding of a violation of Rule 11(b)(3).

For example the R&R focuses on McCullough's testimony that he "could not recall any specific encounter with Dale in April 2020, or any specific outline presented by Dale . . . Instead, McCullough testified that it was McCullough who invented the idea of monthly quads, as well as a method for calculating them, years prior to April 2020, and that whatever Dale presented to McCullough in April 2020 was nothing new." R&R at 5. The R&R also invokes McCullough's deposition testimony that "[i]n April 2020, we were discussing the model that we already had;" that "[Dale] wouldn't have to show me an outline. I'm the one who created the outline"; and that "We already had the outline. That's not something that was created that's new … it's a given, the outline of the model and the methodology and how we're going to calculate that, that's my brain child, and so, of course, I – I have the outline[.]" *Id.*

But that is not the sum total of McCullough's testimony, and the R&R does not take into account what McCullough meant by the "outline" that he, not Dale, created. Notwithstanding the testimony quoted above, McCullough's entire testimony may be read and understood as supporting the Monthly Quads Claim, and it does not contradict or eliminate the documentary evidence that supports the Claim.

6

As McCullough explained it, "outline" to him meant the architecture for the entire quad calculation framework:

> Q. Okay. Did he present to you an outline for a model that would provide monthly quad calculations? A. We always had the *outline*. The *architecture of the model* was well established going back, like I said, prior to his employment.

Declaration of Jonathan P. Bach, dated October 28, 2025, Ex. A at 7:25-8:7 (emphasis added).

McCullough also testified that Dale did not create this "outline," or overarching architecture for Hedgeye's entire quad model, which included the idea of calculating quads on a monthly basis. McCullough did not claim to have come up with the methodology to implement that idea. Instead, Dale independently had the same idea, and created a specific Excel model that was capable of making the monthly calculations. This is what McCullough referred to at his deposition as the "calculator." For instance, McCullough testified as follows:

- Q: [C]an you describe for the jury what you recall about Mr. Dale presenting to you an outline for a model that would provide monthly quad calculations in or about April, 2020? A: In this case, in April, 2020, when discussing the monthly quads, and latest iteration was *to have a calculator*, you know, *for each month*, as we would, and just formalize it. *Id.* at 18:20-19:5 (emphasis added).

- Q. Tell me everything that you recall about that conversation. . . . A. Again, as a matter of process, we'd always be updating the model; okay?. So, this conversation would not be unordinary. This would be a conversation about *updating, evolving the model so that we'd have an actual number that we would publish as opposed to just discuss*. *Id.* at 22:13-25 (emphasis added).

- Q. Okay. What, if anything, do you recall him saying to you during that conversation? A. It's hard to remember words of a conversation from 2020, as you -- as I'm sure you know. But the con -- the content of the conversation would, obviously, have to do with the pertinence or the -- relevance of *creating monthly quad calculations that were more explicit and more formalized for clients*. Q. Okay. Did Mr. Dale present an outline to you? . . . A. Yes. *Id.* at 24:24-25:16. (emphasis added).

7

- A. . . . [I]f you were to look at the main line of our model, which is what we show -- you know, show the world, in terms of the features that are in the model, our methodology, the basing inference practice is to take each of these 30 features, as they're reported per month, and then that adds or subtracts to your quarterly quad Nowcast. *The monthly quad was simply having a calculator to sum up that for each month. Id.* at 40:10-21 (emphasis added).

In opposing the Dale Defendants' Rule 11 Motion, Hedgeye and its counsel believed that the McCullough testimony cited above adequately illustrated the distinction McCullough was drawing between the overarching "outline" that he created, and the "calculator" that Dale created. However, the R&R does not discuss, much less consider or credit, any of that testimony, something that Hedgeye believes is clear error.

Pursuant to 28 U.S.C. § 636(b)(1)(C), on an objection to a magistrate judge's report and recommendation, the district court judge "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C). While the option to consider "further evidence" is rarely exercised, Hedgeye and its counsel do want to make clear that McCullough testified along those same lines at many other points in his deposition, although that additional testimony was not submitted to Magistrate Judge Lehrburger. For instance, McCullough also testified as follows:

- Q. Okay. And when you say "*simply having a calculator*," what do you mean by that? A. *A model, a spreadsheet*. Q. Okay. And -- well, you mean *an Excel spreadsheet*? A. *Yes.* Declaration of Jake W. Goodman, dated May 19, 2026, Ex. A, at 40:24-41:6 (emphasis added).

- A. You would have to have *a model to calculate* -- you know, *you build a calculator, and then it produce – produces an output*, and that's what I meant that the output is what I cared about. Like, what is -- what is our monthly quad output? *Id.* at 41:18-23 (emphasis added).

- Q. Okay. Tell me everything you can about any outline for a model that Darius Dale presented to you, in or about April 2020? . . . A. At that point of Darius working with me, he was very sophisticated at modeling; right? So we had an up -

8

*- what he did at that point was he updated this monthly quad projection*, which was borne out of the quarterly quad model. So we had specific monthlies, that we could, if we wanted to, publish to clients. Of course, we would always discuss these things with clients prior to that. *Id.* at 19:24-20:17 (emphasis added).

McCullough was also clear about the fact that Dale was the only person at Hedgeye who could create this "calculator."

- Q. Okay. In other words: Is there -- you know, in -- in 2020 *was there anyone else, at Hedgeye, who could take these monthly calculations, from Hedgeye's models, and create a calculator to display them in a monthly platform*? . . . A. Was there anyone, at Hedgeye, who could? Q. Yes. A. *Not anyone at Hedgeye, no*. *Id.* at 43:17-44:3 (emphasis added).

In sum, McCullough plainly testified that while (in his own words) Dale did not come up with the idea of calculating monthly quads, Dale did create the "calculator," an Excel model that was capable of performing those calculations.

While the R&R does not acknowledge McCullough's testimony, it is the evidence that Hedgeye and its counsel relied upon in maintaining the Monthly Quads Claim after McCullough's deposition. While reasonable minds may disagree over whether McCullough's references to "calculators" was inconsistent with Paragraph 150's use of the word "outline," resolving "all doubts in favor of the signer," as Rule 11 demands, *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993), the perceived inconsistency between the pleading and McCullough's testimony falls far short of rendering the Monthly Quads Claim utterly lacking in support.

After the deposition, Hedgeye's counsel undertook an additional review of the relevant materials, including the entirety of McCullough's testimony, which "continued to support the reasonableness of [their] understanding at the time." Beeber Decl. ¶ 12. While the R&R dismisses this as inadequate, the fact that counsel conducted a further review and continued to believe the claim had support is precisely the sort of good-faith conduct that Rule 11 is designed to protect, not punish. *See Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017) (sanctions warranted only

9

where "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact") (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)).

**C. The R&R Applies a Standard Lower Than "Utterly Lacking in Support"**

The R&R correctly recites that "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014). It further recognizes that "Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success." *Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991). And it acknowledges that "[t]he standard for imposing Rule 11 sanctions … is purposefully high, so as not to stifle legal creativity and zealous advocacy." *City of Perry, Iowa v. Procter & Gamble Co.*, No. 15-CV-8051, 2017 WL 2656250, at *2 (S.D.N.Y. June 20, 2017).

Yet the R&R applies a far more lenient threshold. The Monthly Quads Claim was supported by contemporaneous documentary evidence. The dispute concerned the interpretation of testimony -- whether McCullough's references to existing "calculators" negated the claim that Dale had presented an "outline" for a monthly quad model. This is a paradigmatic example of an interpretive or semantic disagreement, not the kind of baseless fabrication that Rule 11 is designed to prevent and punish.

**D. The R&R's Own Analysis of the Sanctions Factors Undermines Its Finding of a Violation**

The R&R's analysis of whether sanctions should be imposed is notably favorable to Hedgeye and, in fact, undercuts the propriety of finding a violation at all. The R&R finds that: (1) Dale has not shown that Hedgeye's conduct was part of a pattern of misconduct in this or other litigation; (2) the sanctionable conduct concerns a single claim based on a single paragraph, in a pleading dominated by other claims; and (3) there is nothing before the Court to indicate that

10

Hedgeye's pursuit of the Monthly Quads Claim materially increased the cost or time of the litigation. R&R at 21. The R&R further concluded that Hedgeye did not violate Rule 11(b)(1) and that no improper purpose could be found. *Id.* at 17.

These findings -- that the claim was isolated and a small part of the litigation as a whole, imposed no meaningful cost on the opposing party, and was not pursued for improper purposes -- strongly suggest that the claim never rose to the level of "extraordinary" or "extreme" circumstances that warrant a Rule 11 finding in the first instance. *See Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017); *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016). A finding of a Rule 11 violation -- even absent monetary sanctions -- is not a consequence-free determination. It carries a stigma for the attorneys involved and functions as a judicial finding of professional failure. Given the R&R's own recognition that virtually every mitigating factor weighs in Hedgeye's favor, the more appropriate course is to find no violation at all.

## II.    The Court Should Decline to Adopt the R&R

For the reasons set forth above, the R&R's finding of a Rule 11(b)(3) violation is not supported by the applicable legal standard. Rule 11 sanctions are "reserved for extraordinary circumstances." *Park v. Seoul Broadcasting System Co.*, No. 05-CV-8956, 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008). As the R&R itself acknowledges, this case is neither extraordinary nor extreme. The Monthly Quads Claim was grounded in documentary evidence, was tested through discovery and resolved through summary judgment (as to which the time to appeal has not yet run) in the manner contemplated by the Federal Rules, and consumed a minute fraction of the parties' and the Court's attention in an otherwise sprawling, years-long litigation.

A finding of a Rule 11 violation under these circumstances would chill the zealous advocacy the Second Circuit has consistently sought to protect. *See Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 341 (2d Cir. 1999) ("[I]n our adversarial system, we expect a litigant and

11

his or her attorney to pursue a claim zealously within the boundaries of the law and ethical rules."). If a claim based on documentary evidence, tested through supplemental discovery, and resolved on summary judgment can nonetheless give rise to a Rule 11 finding, then nearly any disputed and dismissed allegation in a litigation could meet the same fate. Rule 11 is a remedy for egregious abuse, not a penalty for losing an argument.

This Court should exercise its de novo review authority to reject the R&R's finding of a Rule 11(b)(3) violation and deny Dale's motion for sanctions in its entirety.

## <u>CONCLUSION</u>

For the foregoing reasons, Hedgeye respectfully requests that this Court decline to adopt the Report and Recommendation's finding that Hedgeye and its counsel violated Rule 11(b)(3) and deny Defendant Dale's motion for Rule 11 sanctions in its entirety.

Dated: May 19, 2026                              VENABLE LLP

By: */s/ Jessie F. Beeber*

Jessie F. Beeber
Eric A. Prager
Jake W. Goodman
Sarika Andavolu
151 West 42nd Street
New York, NY 10036
212-307-5500

JBeeber@Venable.com
EAPrager@Venable.com
JWGoodman@Venable.com
SAndavolu@Venable.com

*Attorneys for Plaintiff*
*Hedgeye Risk Management, LLC*

12