# Press Koral LLP

**Partners**
**Jason M. Koral**
**Matthew J. Press**

June 23, 2026

**VIA ECF**

The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York  10007

Re:    *Hedgeye Risk Mgmt., LLC v. Dale, et. al.,* No. 1:21-cv-03687-ALC-RWL

Dear Judge Carter:

On behalf of Defendants Nadine Terman and Solstein Capital LLC (collectively, the "Terman Defendants"), we write in response to the letter of Defendant Darius Dale, submitted on June 22, 2026 (the "Dale Letter"), which requests leave to file a brief addressing whether Hedgeye has any viable claims for damages on its remaining contract claims in this action. The Terman Defendants concur in this request, as Plaintiff Hedgeye Risk Management's remaining claims against them suffer from similar deficiencies. The Terman Defendants are prepared to file their own briefs on the same schedule proposed in the Dale Letter, should the Court elect that option.

In the Rule 30(b)(6) deposition of Hedgeye, deponent Michael Blum was unable to articulate ***any*** factual basis for damages caused by the Terman Defendants besides alleged lost profits that "***[w]e're going to be outlining in an expert report*** that will be provided at a later point in time." Tr. 129:10-20 (emphasis added) (attached as Exhibit A). Blum also stated that:

- Hedgeye's theory of loss was based on the Terman Defendants' alleged inducement of Mr. Dale to start 42 Macro, a claim this Court dismissed and which in any event would require proof of damages against Dale. Tr. 130:12-24.
- When pressed, Blum could not identify any other loss resulting from the Terman Defendants' conduct, except for the alleged "poaching" of Ben Ryan. Tr. 131:1-132:19. But this Court also dismissed that claim at summary judgment.

641 Lexington Avenue, Thirteenth Floor
New York, NY 10022

Office: (212) 520-8270
Mobile: (917) 881-1347
Email: jkoral@presskoral.com

Hedgeye produced no documents, gave no deposition testimony, provided no declaration, and disclosed no evidence of any kind supporting its claim for contract damages against the Terman Defendants. Instead, as represented by Mr. Blum, Hedgeye elected to present its damages case solely through the expert report of Thomas Britven (the "Britven Report").

On the parties' motions for summary judgment, the Court found sufficient issues of material fact to submit Hedgeye's contract claims against the Terman Defendants for trial, based on the theories that Solstein allegedly solicited Dale and that Terman sent a copy of a Hedgeye file to Dale while Dale was still employed at Hedgeye. But the Court recognized that the Britven Report was the sole basis for alleging damages against the Terman Defendants and noted "the limited nature of Britven's testimony and his failure to provide an analysis of actual damages." SJ Op. at 98 n.19.

As discussed in the Dale Letter, the Britven Report only provides opinions on "unjust enrichment" damages, which are not available for Hedgeye's breach of contract claims. But the shortcomings of the Britven Report run even deeper with respect to the Terman Defendants. While the Britven Report purports to address "development costs" that were allegedly avoided by Dale, it has absolutely nothing at all to say about the Terman Defendants. He neither identifies any loss suffered by Hedgeye as a result of the Terman Defendants, nor even any purported gain or "enrichment" supposedly enjoyed by the Terman Defendants. Even if Britven's "avoided development costs" calculation could be used to support Hedgeye's contract damages in any circumstance – and the Terman Defendants agree fully with Dale that it cannot – Britven does not identify even a penny of such costs avoided by the Terman Defendants.

The Terman Defendants accordingly join in the request of the Dale Letter, seeking leave to brief the viability of Hedgeye's damages claims.


Respectfully submitted,

_____/s Jason Koral_____
Jason Koral.
PRESS KORAL LLP
641 Lexington Avenue, 13th Floor
New York, NY 10022
Phone: (917) 881-1347
jkoral@presskoral.com

*Counsel for Defendants Nadine Terman and Solstein Capital, LLC*

cc:    Counsel of Record (by ECF)

2

# EXHIBIT A

CONFIDENTIAL -  ATTORNEYS' EYES ONLY

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x

HEDGEYE RISK MANAGEMENT, LLC,

                         Plaintiff,

         -against-              No. 1:21-cv-03687
                                   (ALC)(RWL)

DARIUS DALE, STEVEN LAMAR, and
42 MACRO, LLC,

                         Defendants.

-----------------------------------------x


  ***-CONFIDENTIAL - ATTORNEYS' EYES ONLY-***



     Videotaped Deposition of Michael A. Blum

                October 27, 2022




Reported by:

Joseph Danyo V

Job No. SY5900


TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

CONFIDENTIAL -  ATTORNEYS' EYES ONLY

Page 129

ATTORNEYS' EYES ONLY - M. BLUM

complaint.

Q.    Okay.  And what are those?

A.    There are damages relating to lost profit.  There is unjust enrichment.  There is damages related to reputation, loss of goodwill.  There are damages related to additional costs incurred by Hedgeye, legal fees, other costs and likely other damages as well.

Q.    What profits did Hedgeye lose solely as a result of the conduct of Nadine Terman --

MR. WALLERSTEIN:  Objection, calls for --

Q.    -- as opposed to any other defendant in the action?

MR. WALLERSTEIN:  Objection, calls for expert testimony.  It's premature.

A.    We're going to be outlining in an expert report that will be provided at a later point in time.

Q.    Can you give a qualitative description of the profits that Hedgeye claims it has lost solely as a result of Nadine Terman, as in not a quantitative analysis?

A.    We lost customers.  Customers

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 130

ATTORNEYS' EYES ONLY - M. BLUM

canceled, including Solstein itself, so that would be one qualitative measure.

Q.   Isn't it a fact that Solstein did not cancel?

A.   No.

Q.   Isn't it a fact that they were terminated --

A.   No.

Q.   -- by Hedgeye?  That's not a fact?

A.   No.

Q.   Other than Solstein Capital, what is the factual basis for your contention that Hedgeye customers canceled solely as a result of conduct by Nadine Terman?

A.   Ms. Terman and Solstein induced Mr. Dale to start a competing business that she is in some way a part of, and by doing so induced customers of ours to leave us and join that new business.

Q.   Does Hedgeye contend that customers left Hedgeye for any reason other than the fact that Mr. Dale left the firm allegedly induced by Ms. Terman?

MR. WALLERSTEIN:  Objection, vague,

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 131

ATTORNEYS' EYES ONLY - M. BLUM

ambiguous.

A.   Can you repeat that question, please.

Q.   Yes.  Let me ask it a different way. Is there any conduct by Ms. Terman other than her alleged inducement of Mr. Dale to leave Hedgeye's employment that resulted in Hedgeye losing customers?

A.   I don't know.

Q.   Are you aware of any such damages?

A.   Yes.

Q.   What would those be?

A.   She previously had also poached an employee of ours by the name of Ben Ryan.

Q.   When did that happen?

A.   Maybe around 2018.

Q.   And what was Hedgeye's response when that occurred?

A.   Hedgeye's response at the time was that given that Ms. Terman was -- and Solstein was a very good client, that we accepted that.

Q.   So you didn't, for example, write her a letter expressing your displeasure at her hiring Mr. Ryan?

A.   I don't know.

CONFIDENTIAL -  ATTORNEYS' EYES ONLY

Page 132

ATTORNEYS' EYES ONLY - M. BLUM

Q.   Is it fair to say that you deem that whatever harm you suffered as a result of the loss of Mr. Ryan was not significant enough to justify jeopardizing the client relationship you had with Ms. Terman at the time?

A.   I don't know.

Q.   In this case are you claiming that you have suffered damages as a result of Mr. Ryan leaving the employ of Hedgeye?

A.   I don't know.

Q.   Okay.  Other than those two incidents, Mr. Ryan and the alleged inducement of Mr. Dale, are there any damages that Hedgeye is claiming they suffered as a result of solely the conduct of Ms. Terman?

MR. WALLERSTEIN:  Objection, incomprehensible.

A.   I don't know.

Q.   Did you find my question incomprehensible?

A.   I answered I don't know, so --

Q.   Well --

A.   -- I understood some of it.  I understood some of it, not so much, so.