IUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEDGEYE RISK MANAGEMENT, LLC<br><br>    Plaintiff,<br><br>    v.<br><br>DARIUS DALE, et al.,<br>       Defendants. | No. 21-CV-3687 (ALC) (RWL) |

**MOTION OF SOLSTEIN CAPITAL LLC TO PRECLUDE PLAINTIFF FROM
OFFERING IMPROPER DAMAGES EVIDENCE AT TRIAL**

**PRESS KORAL LLP**
641 Lexington Avenue, 13th Floor
New York, NY 10022
Telephone: (212) 520-8270
Facsimile: (347) 342-3882
jkoral@presskoral.com

**TABLE OF CONTENTS**

**Page:**

I.    Introduction ................................................................................................................1

II.   Summary of Relevant Facts .......................................................................................2

III.  Argument ...................................................................................................................4

     A.    The Britven Report Is Not Applicable to the Services Agreement Breach Claim...5

     B.    Defendants Have No Viable Damages Theory Admissible At Trial on the Services Agreement Breach Claim .........................................................................5

     C.    Defendants Should Be Precluded From Offering an Alternative Basis for Damages ...........................................................................................................7

Conclusion ..........................................................................................................................8

i

## TABLE OF AUTHORITIES

**Cases**

*Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) ............................................................ 8

*Webster Ins., Inc. v. Levine*, 2009 WL 5698072 (Conn. Super. Ct. Apr. 29, 2009) ....................... 5

*Whitney v. J.M. Scott Assocs., Inc.*, 137 A.3d 866 (Conn. App. Ct. 2016).................................... 5

## I.    INTRODUCTION

As against Defendant Solstein Capital, LLC ("Solstein"), Plaintiff Hedgeye Risk Management, LLC ("Hedgeye") will be limited at trial to pursuing its claim for breach of its services agreement (the "Services Agreement"). That claim is based on allegations that Solstein's principal, Nadine Terman, sent Darius Dale a Hedgeye Microsoft Excel file and that she attempted to solicit him to join a venture she was involved in, Longbow Trade Signals LLC ("Longbow"). On summary judgment, the Court, while permitting this claim to proceed to trial, noted both that the sole basis for Hedgeye's alleged damages was the expert report of Thonmas Britven (the "Britven Report") and that the Britven Report appeared to be "limited" and lacked evidence of actual damages.

The Britven Report is not admissible against Solstein (or any other party) to prove damages for breach for contract. As explained in the motion to preclude filed by Defendants Darius Dale (the "Dale Motion"), the Britven Report only contains calculations of unjust enrichment damages ("avoided costs") that cannot be used to prove contract damages under applicable law. Moreover, the Britven report only calculates costs purportedly avoided by Dale, not Solstein. In fact, the Britven Report contains no opinions or calculations whatsoever pertaining to Solstein.

Because the Britven Report cannot be used to establish damages against Solstein, Hedgeye's contract claim against Solstein cannot succeed at trial and it would waste the jury's time for it to be presented. In deposition testimony, Hedgeye's corporate witness refused to provide any factual details on damages, instead representing that the company would rely on its expert (Britven) to prove damages. Indeed, the only theory of damages Hedgeye has offered against Solstein is that Terman supposedly "assisted" Dale in founding a competing business (Defendant 42 Macro LLC) and that the subsequent competition from Dale harmed Hedgeye. But these "assistance" allegations relate to Hedgeye's dismissed claim against Nadine Terman for tortious interference with Dale's employment contract, not its unrelated claims against Solstein for breach

1

of the Services Agreement. In any event, Hedgeye still could not prove its case because the only calculation of damages resulting from Dale's competition is the inadmissible avoided costs calculations in the Britven Report.

## II.    SUMMARY OF RELEVANT FACTS

The operative complaint in this action asserts that Solstein breached the Services Agreement. It alleges that as "a direct and proximate cause" of the supposed breach, "Hedgeye was damaged and harmed by the loss of customers and profit, goodwill, competitive advantage, and business opportunities." Fifth Amended Complaint ("FAC") (ECF 652) at ¶ 301. It also asserts that "Defendants" [sic] were "unjustly enriched." *Id*. at ¶ 302. At no point in this litigation, despite pointed inquiries by counsel for Solstein, did Hedgeye ever articulate any factual basis for claims of "loss of customers and profit, goodwill, competitive advantage, and business opportunities," or any other harm, except to direct Defendants to the Britven Report.

Hedgeye designated Michael Blum as its corporate witness on the topic of Hedgeye's claims for damages in the action. Ex. 1 (Hedgeye 30(b)(6) Dep. Tr.) at 7:8-11. During the deposition, Mr. Blum, as Hedgeye's representative, was asked direct questions concerning the factual basis of the damages claims against Solstein. In response, Mr. Blum refused to identify facts underlying Hedgeye's claims of "loss of customers and profit, goodwill, competitive advantage, and business opportunities," other than to state that "*[w]e're going to be outlining in an expert report* that will be provided at a later point in time." Ex. 1 at 129:10-20 (emphasis added).

When asked to identify any specific examples of losses, Blum could not name any relating to the breach of contract claim against Solstein. Instead, he generally indicated, in a fashion that repeated the boilerplate language of the complaint, that Hedgeye had been harmed due to actions entirely unrelated to the breach claims that remain to be tried in this case.

2

*First*, he stated that "Ms. Terman and Solstein induced Mr. Dale to start a competing business that she is in some way a part of, and by doing so induced customers of ours to leave us and join that new business." Ex. 1 at 130:12-24. He stated that Terman "[a]ssisted, aided, abetted, contributed to" various wrongs allegedly committed by Dale and Steven Lamar, concerning Dale's alleged breach of his employment contract and his formation of the 42 Macro business. Id. at 135:6-136:20. However, these allegations of inducement pertain to Hedgeye's claims that Solstein and Terman tortiously interfered with Dale's employment contract with Hedgeye. Those claims were dismissed on summary judgment. *See* SJ Op. at 95.

**Second**, Blum, as Hedgeye's representative, contended that Terman "had also poached an employee of ours named Ben Ryan. Ex. 1 at. 131:1-132:19. That claim was also dismissed on summary judgment. SJ Op. at 95-96.

Finally, Blum was asked to give corporate testimony on the specific claim that Solstein breached the Services Agreement. He was unable to identify any lost customers other than Solstein itself. Ex. 1, 138:11-18. Although he asserted that the breach caused "reputational damage and loss of goodwill," the only identified factual basis for those losses was "by inducing Mr. Dale to leave and start a competing business," referring to the interference claim that was dismissed. *Id*. at 138:18-139:6. Blum was unable to identify any specific losses or damages specifically resulting from Solstein's alleged breach of the Services Agreement. *Id*. at 139:11-13.

Hedgeye produced no documents, gave no deposition testimony, provided no declaration, and disclosed no evidence of any kind concerning lost profits, customers, or goodwill, or any other harm allegedly resulting from Solstein's breach of the Services Agreement. Indeed, as detailed in the Dale Motion, Hedgeye evaded every single request and demand to specify damages against ***any party*** during the fact discovery stage, instead electing to rely entirely on its

3

expert report.

Indeed, consistent with Blum's corporate testimony, Hedgeye presented its damages case solely through the Britven Report. As described in the Dale Motion, the Britven Report provides opinions as to two categories of alleged damages. The first was the net profits of Defendant 42 Macro, which Hedgeye sought to recover as unjust enrichment damages. That opinion was excluded by the Court, which also dismissed all claims against 42 Macro. SJ Op. at 47-49.

Britven's second opinion was that Dale's alleged misappropriation of Hedgeye information allowed him to save on the cost of developing his own platform. To that end, Britven provided a calculation of Dale's alleged "avoided development costs." Britven Report, ECF 829-1. The Britven Report, however, has nothing of substance to say about Solstein or Terman. The report identifies Solstein and Terman as parties to the case and repeats their name in the case caption. It contains one paragraph providing basic background information about Solstein and Terman, taken essentially verbatim from the complaint and Terman's LinkedIn page. Britven Report at ⁋ 25. Other than those two references, the Britven Report is entirely silent about Solstein and Terman. It does not identify any loss or damages of any kind caused by or attributable to either Solstein or Terman. Nor does it identify any alleged "enrichment" by them or calculate a single penny of "development costs" that they "avoided."

On summary judgment, the Court noted that the Britven Report was the basis for alleging damages against Solstein on the claim for breach of the Services Agreement. However, the Court also noted "the limited nature of Britven's testimony and his failure to provide an analysis of actual damages." SJ Op. at 98 n.19

## III.    ARGUMENT

The Services Agreement specifies the application of Connecticut law. The relevant

4

principles of Connecticut contract law are set forth in the Dale Motion. In summary, the plaintiff in a contract action can only recover damages based on actual loss. *Whitney v. J.M. Scott Assocs., Inc.*, 137 A.3d 866, 872 (Conn. App. Ct. 2016).   Unjust enrichment damages and "avoided development costs" are not recoverable. *Webster Ins., Inc. v. Levine*, 2009 WL 5698072, at \*2 (Conn. Super. Ct. Apr. 29, 2009).

A.      **The Britven Report Is Not Applicable to the Services Agreement Breach Claim**

As discussed in the Dale Motion, the Britven Report is not admissible to prove damages on any contract claim in this case, because Connecticut law bars recovery of "avoided development costs" as damages in a contract action. However, even if Connecticut law permitted such damages, the Britven Report would still not be admissible as against Solstein. The Britven Report calculates only costs allegedly avoided by Dale in forming 42 Macro. It does not opine that Solstein benefitted from any "avoided costs," nor does the Report calculate any form of damages as against Solstein.

B.      **Defendants Have No Viable Damages Theory Admissible At Trial on the Services Agreement Breach Claim**

At no point in this litigation did Hedgeye advance any theory of damages arising from the Services Agreement breach claim other than referring to their expert reports. Hedgeye never identified any loss it has suffered as a result of Solstein's alleged conduct in breach of the Services Agreement. Rather, Hedgeye asserted that it had suffered damages as the result of Dale's operation of the 42 Macro business, which it contends that Terman "induced." However, this "inducement" theory relates to Hedgeye's dismissed claim that Terman (not Solstein) intentionally interfered with Dale's employment contract, which alleged that Terman "induced Dale to breach" various provisions of that agreement. FAC ⁋⁋ 286-293. Moreover, even if Hedgeye could somehow connect its Solstein breach claims to the 42 Macro business, it still cannot identify any resulting

5

damages other than the avoided costs put forward in the Britven Report, which are not available in a contract action.

The contract claims against Solstein have no connection to Dale's operation of 42 Macro, the sole factual basis for harm Hedgeye has identified in this case. Hedgeye's first breach claim against Solstein contends that Terman solicited Dale to join Longbow, a venture in which Solstein holds an interest. However, Dale did not join Longbow and Hedgeye has never identified any evidence or basis for damages resulting from this alleged solicitation. The Britven Report also contains no calculation of damages resulting from the alleged solicitation. The second claim contends that Terman sent a Hedgeye Excel spreadsheet file to Dale. Hedgeye has never identified any theory of damages relating to this transmission, nor has it identified any factual basis for any resulting loss. Again, the Britven Report contains no damages calculation relating to the transmission.

In his Rule 30(b)(6) deposition, Blum identified the "poaching" of Ben Ryan as a possible basis for damages. However, the alleged solicitation of Ryan was a separate breach claim that this Court dismissed on summary judgment. SJ Opp. at 96-97.

Finally, Blum also pointed to Hedgeye's "loss" of Solstein itself as a client. But Hedgeye does not contend that loss had anything to do with its two remaining claims for breach of the Services Agreement. Solstein did not cease to be a Hedgeye client because Terman discussed Longbow with Dale or because she sent him an Excel file. Rather, it is undisputed that "Hedgeye declined to renew the [Solstein] subscription on any terms because Keith McCullough made the decision to fire Solstein and Terman and not provide them any further opportunity to remain subscribers." Hedgeye's Response to Solstein's Statement of Undisputed Facts (ECF 851), at 3-65.

6

C.    **Defendants Should Be Precluded From Offering an Alternative Basis for Damages**

Recognizing that it has never identified any viable basis for damages on the Solstein breach claims, Hedgeye in its most recent letter opposing leave to bring this motion eschews the Britven Report. Instead, it explains that it "will demonstrate that it suffered damages as a direct result of the Terman Defendants' breaches," by presenting "evidence [that] will include financial records and analyses, as well as testimony and documentary evidence showing that the Terman Defendants terminated their relationship with Hedgeye to solicit Dale and fund, establish, and launch 42 Macro as a competing business." ECF 1086 at 3.

Hedgeye's new musings about potential damages are entirely unviable for multiple reasons. *First*, they are based on the false premise that "the Terman Defendants terminated" the Services Agreement. In fact, on summary judgment, it conceded that it was "undisputed" that Hedgeye – not Terman or Solstein – terminated the agreement. ECF 851 at 3-65.

*Second*, the two remaining contract claims against Solstein – solicitation of Dale for Longbow and transmitting the Excel file to Dale – have nothing to do with either the termination of the Services Agreement or the launch of 42 Macro by Dale.   These are limited and specific contract claims, distinct from Hedgeye's other claims, including its tort claims, which have all now been dismissed.  Hedgeye has never identified damages specific to these contract claims and cannot shoehorn inapplicable tort damages into contract claims in which they have no place. Hedgeye is confusing its contract claims against Solstein with its tortious interference claim against Terman (which have been dismissed).

*Third*, under Hedgeye's proposal, its damages would consist solely of alleged harm caused as the result of the launch of "42 Macro as a competing business." But as detailed in the Dale

Motion, Hedgeye has never identified or delineated any actual loss resulting from 42 Macro's competition other than Britven's inadmissible avoided cost calculation.

*Fourth*, as set forth in Dale's brief, Hedgeye cannot rely on unspecified financial records, analyses, testimony and documentary evidence, after failing to have identified any such materials as bases for its claimed damages in response to myriad targeted discovery requests. It appears, as the Dale Motion suggests, that Hedgeye intends to offer previously undisclosed documents or witnesses. Because Hedgeye still has not indicated what (if any) new evidence it intends to offer against Solstein, it cannot yet be determined whether such evidence would be subject to exclusion. *See, e.g., Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (setting forth factors to consider in determining whether late disclosed evidence should be excluded from trial). But given that Hedgeye deliberately made the tactical choice to rely entirely on Britven's expert opinion to establish damages, specifically to avoid factual inquiries into the basis for its damages claims, it seems unlikely that it could seek to offer new evidence now under the *Patterson* factors. It should not be allowed to shift gears at this late stage.[1]

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court preclude Hedgeye from offering evidence of damages in connection with its contract claims against Solstein and dismisses those claims for lack of damages.

---

[1] Should Hedgeye seek to re-open discovery for the purpose of offering additional evidence, the Court can address that motion and its implications at the time it is made.

8

Dated:  New York, New York
       July 10, 2026

                   Respectfully submitted,

                   **PRESS KORAL LLP**

By:   /s/ Jason Koral
          Jason M. Koral

641 Lexington Avenue, 13th Floor
New York, NY 10022
tel: 917-881-1347
fax: (347) 342-3882

*Attorneys for Defendants Terman and Solstein*

9