UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEDGEYE RISK MANAGEMENT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DARIUS DALE, et al.,<br><br>Defendants. | No. 21-cv-3687 (ALC) (RWL) |

**DEFENDANT DARIUS DALE'S REPLY IN SUPPORT OF HIS MOTION TO PRECLUDE HEDGEYE FROM SEEKING "AVOIDED DEVELOPMENT COSTS" AND PREVIOUSLY UNSPECIFIED DAMAGES**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

I. Hedgeye Cannot Avoid This Issue By Claiming The Court Already Ruled .......... 1

II. Hedgeye's Only Disclosed Damages, "Avoided Development Costs," Are Not Recoverable As A Matter Of Law .......... 2

III. Any Other Damages Claims Are Barred By Rule 37 .......... 3

A. Hedgeye's Identification Of Boilerplate Categories Does Not Suffice .......... 5

B. Hedgeye's Failure To Elucidate The Bases Or Computation Of Any Contract Damages Is Neither Substantially Justified, Nor Harmless .......... 7

IV. Hedgeye's Belated Claim For Nominal Damages Cannot Proceed To Trial .......... 8

V. Punitive Damages Are Not Available For Stand-Alone Contract Claims .......... 9

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Anthem, Inc. v. Express Scripts, Inc.*,
2022 WL 1558879 (S.D.N.Y. Mar. 31, 2022) ........ 6, 8

*Assure Glob., LLC v. Anderson*,
763 F. Supp. 3d 476 (S.D.N.Y. 2025) ........ 5

*Aurora Loan Servs., LLC v. Hirsch*,
154 A.3d 1009 (Conn. App. 2017) ........ 5

*Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.*,
2007 WL 1988150 (S.D.N.Y. July 10, 2007) ........ 8

*Design Strategy, Inc. v. Davis*,
469 F.3d 284 (2d Cir. 2006) ........ 6, 7

*Fezollari v. Jauzovic*,
335 A.3d 861 (Conn. App. Ct. 2025) ........ 3

*Gym Door Repairs, Inc. v. Young Equipment Sales Inc.*,
331 F. Supp. 3d 221 (S.D.N.Y. 2018) ........ 6, 8

*Hammond v. The Bank of New York Mellon Corp.*,
2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........ 8

*Hees v. Burke Const., Inc.*,
961 A.2d 373 (Conn. 2009) ........ 2

*Larsen Chelsey Realty Co. v. Larsen*,
232 Conn. 480 (1995) ........ 9

*Lydall, Inc. v. Ruschmeyer*,
282 Conn. 209 (2007) ........ 9

*McCarter & English, LLP v. Jarrow Formulas, Inc.*,
351 Conn. 186 (2025) ........ 9, 10

*News America Marketing In-Store, Inc. v. Marquis*,
862 A.2d 837 (Conn. App. 2004) ........ 9

*Pinda Tech. Co. v. Greenwich Metals, Inc.*,
2026 WL 658351 (D. Conn. Mar. 9, 2026) ........ 3

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
280 F.R.D. 147 (S.D.N.Y. 2012) ........ 4, 5

*Spotnana, Inc. v. Am. Talent Agency, Inc.*,
2010 WL 3341837 (S.D.N.Y. Aug. 17, 2010) .......... 6, 8

*Wells Fargo Bank, N.A. v. Konover Dev. Corp.*,
630 F. App'x 46 (2d Cir. 2015) .......... 10

*Whitney v. J.M. Scott Assocs., Inc.*,
137 A.3d 866 (Conn. App. Ct. 2016) .......... 3

*Winakor v. Savalle*,
234 A.3d 1122 (Conn. App. 2020) .......... 5

**Other Authorities**

24 Williston on Contracts §64:1 (4th ed. May 2026 Update) .......... 3

**Rules**

Fed. R. Civ. P. 26 .......... passim

Fed R. Civ. P. 37 .......... passim

## INTRODUCTION

Hedgeye's opposition fails to address fundamental issues that defeat any claim for contract damages it may wish to make at this time: An award of unjust enrichment damages for a breach of contract claim, in the form of "avoided development costs" as articulated by Hedgeye's expert, would be entirely unprecedented, contrary to established doctrine, and grounds for reversible error. Beyond that, Hedgeye has never spelled out the basis for or quantified any other form of damages, despite myriad requests, court orders, and Hedgeye's own promise to provide appropriate disclosures in its expert reports. Punitive damages are not available for breach of contract claims. Nominal damages are not grounds for a trial. Indeed, Hedgeye fails to identify a single issue that could properly proceed.

The Federal Rules require disclosure of damages, including "a computation of each category of damages," so defending parties have fair notice and can develop their litigation or settlement positions accordingly. Fed. R. Civ. P. 26(a)(1)(A)(iii). Had such disclosure been provided, Dale could have responded by taking targeted discovery, developing expert testimony, and challenging any claimed quantifications as not reasonably certain. He was deprived of that opportunity. Even now, after full briefing of the issue, the contours of any damages Hedgeye may claim remain a mystery—except for "avoided development costs," which are not recoverable. As Hedgeye concedes in its brief, Dale can only "speculat[e] about what Hedgeye *might* do at trial." (Opp'n at 1). That is not how civil contract litigation is supposed to work. Rule 37 prohibits it. Hedgeye should be precluded from seeking any damages at this stage.

### I. Hedgeye Cannot Avoid This Issue By Claiming The Court Already Ruled

Hedgeye begins by claiming the Court has already dealt with this issue and given Hedgeye permission to seek "avoided development costs" based on the anticipated testimony of its expert Thomas Britven. (Opp'n at 10-12). This argument ignores the plain text of the

summary judgment opinion, in which the Court, far from blessing Hedgeye's approach, raised serious questions. In particular, the Court noted that Hedgeye's expert opines only about unjust enrichment damages, not compensatory damages, even though "the law of contract damages limits the injured party to damages based on his actual loss caused by the breach." (SJ Op. at 92 (quoting *Hees v. Burke Const., Inc.*, 961 A.2d 373, 378 (Conn. 2009)). Presumably, the Court will not allow Hedgeye to pursue a measure of damages inapplicable to its remaining claims. Hedgeye cannot simply dodge the issue.

Hedgeye's suggestion that Dale waived the issue by not moving for reconsideration is similarly unavailing. (Opp'n at 13). The Court's summary judgment opinion acknowledged the issue and expressly deferred ruling until a later stage. (SJ Op. at 92 n.14). There was nothing to reconsider at the time. Indeed, the Court appears to have already rejected Hedgeye's waiver argument by permitting the current briefing to proceed. (*See* Dkts. 1085, 1088). While Hedgeye portrays Dale as seeking a second "bite at the apple" (Opp'n at 12), it fails to see that Rule 37 motions are commonly filed at this stage—*after* summary judgment and *before* any trial—to weed out previously unspecified damages claims. *See infra* at 8; Dale Br. at 10-14 (discussing Rule 37 cases).

## II. Hedgeye's Only Disclosed Damages, "Avoided Development Costs," Are Not Recoverable As A Matter Of Law

As this Court previously observed, Hedgeye's damages expert limited his opinion to unjust enrichment damages—that is, he attempted to calculate profits made or money saved by Dale's company 42 Macro, but did not attempt to identify or calculate any loss incurred by Hedgeye itself. (SJ Op. at 45, 92, 94-95). This is presumably because Hedgeye suffered no loss or diminution in revenues following Dale's departure, but instead experienced increases in both revenue and subscribers. (Dkt. 846: Hedgeye Response to Dale 56.1 Stmt. ¶¶ 2-361 – 2-368).

Hedgeye's attempt to recover unjust enrichment damages was keyed to its then-existing tort claims. It has never been applicable to its contract claims. Hedgeye's opposition thus fails to identify even a single authority that permits recovery of unjust enrichment damages, let alone "avoided development costs" as a species of such damages, for a breach of contract claim. That is because the law of contract has long recognized only compensatory damages based on a plaintiff's actual loss. *See, e.g.*, *Whitney v. J.M. Scott Assocs., Inc.*, 137 A.3d 866, 872-73 (Conn. App. Ct. 2016); *Fezollari v. Jauzovic*, 335 A.3d 861, 874-75 (Conn. App. Ct. 2025); 24 Williston on Contracts §64:1 (4th ed. May 2026 Update). Hedgeye's suggestion that this Court should go out on a limb and apply a measure of tort damages in a contract case (Opp'n at 19-21) would lead this matter into unprecedented territory and risk reversible error. A plaintiff should be able to point to some legal authority for the damages it seeks. Yet *Pinda Tech. Co. v. Greenwich Metals, Inc.*, 2026 WL 658351 (D. Conn. Mar. 9, 2026), the sole authority Hedgeye cites (at 20), does not recognize unjust enrichment damages for breach of contract claims. It is a traditional commercial contract case and, as such, recognizes standard compensatory damages such as "financial losses" and other harms allegedly incurred by the plaintiff as a result of the breach. *Id.* at *2, *5.

## III. Any Other Damages Claims Are Barred By Rule 37

Hedgeye appears to misunderstand Dale's invocation of Rule 37. Dale is not contending that Hedgeye failed to disclose its theories of unjust enrichment damages. Such theories fail as a matter of law for the reasons discussed above. Dale's invocation of Rule 37 is meant to apply to any other theory of damages Hedgeye may now seek to rely upon instead. Neither a computation, nor a delineation of the bases or method for calculating any alternative measure of damages, has ever been disclosed, thereby preventing Dale from taking targeted discovery, developing counter expert testimony, or challenging the reasonable certainty of any such

damages. Even now, Hedgeye does not provide details or quantifications. It is impossible to discern with any specificity what damages Hedgeye may actually claim.

Hedgeye's opposition alludes to "financial losses, lost customers, and other economic harm." (Opp'n at 21). Such categorical references are inherently vague. Despite myriad discovery requests, Hedgeye has never elucidated how it might go about determining such losses, what the amount might be, or who the supposed lost customers are. Hedgeye now points to no more than a single customer, claiming the loss of its contract with Solstein. (Opp'n at 6). But, as set forth more fully in Solstein's reply brief, Hedgeye is bound by its admissions in prior filings that (1) Solstein explored modification of its Hedgeye contract independently of and before any relevant dealings with Dale, and then (2) Hedgeye decided on its own initiative to cancel the contract, thereby eliminating the possibility of any damages proximately caused by Dale. Moreover, contrary to Rule 26, Hedgeye has never specified how it may seek to calculate damages based on this at-will contract, which Solstein had no obligation to renew. (*See* Dkt. 785-1 at 11-12). Nor does McCullough's shoot-from-the-hip reference in his deposition testimony to "hundreds of thousands" in losses (Opp'n at 6) count as the type of clarification or computation required by Rule 26. Hedgeye has never provided any support for his assertion, nor explained how he arrived at that vague and unspecified total, nor followed up in any meaningful way.

Similarly, Hedgeye suggests vaguely and in passing that it may be entitled to compensatory damages in the form of attorneys' fees. (Opp'n at 19). Yet it plainly failed to satisfy Rule 26 by not elucidating or quantifying any such damages during fact or expert discovery. *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012) (plaintiffs violated Rule 26 by failing to offer "reasonable

'computation'" of attorney's fees sought prior to the close of fact discovery). In any event, "absent a contractual provision stating otherwise, it is well-established that a party cannot recover attorney's fees from a contract-breaching opponent, even where the breach makes litigation eminently foreseeable." *Assure Glob., LLC v. Anderson*, 763 F. Supp. 3d 476, 490 (S.D.N.Y. 2025); *accord, e.g.*, *Winakor v. Savalle*, 234 A.3d 1122, 1134 (Conn. App. 2020) ("[T]he plaintiff ordinarily cannot recover attorney's fees for breach of contract in the absence of an express provision allowing recovery...."), *aff'd*, 343 Conn. 773 (2022); *Aurora Loan Servs., LLC v. Hirsch*, 154 A.3d 1009, 1017-18 (Conn. App. 2017) (rejecting plaintiff's argument that attorneys' fees were losses "incurred because of the breach," since that "position analytically would support the award of attorney's fees in any action for breach of contract").

Thus, even after reading Hedgeye's brief, one comes away empty-handed, not knowing the contours of any actual losses that might be claimed. Rule 37 is designed precisely to prevent a party from attempting to slip in new and previously undeveloped theories of damages. Hedgeye's arguments to the contrary fail.

**A. Hedgeye's Identification Of Boilerplate Categories Does Not Suffice**

Hedgeye claims Rule 37 does not apply because it identified broad generic categories of damages—such as "lost profits"—in its initial Rule 26 disclosure and in response to subsequent discovery requests. (Opp'n at 5-6, 16-18). Courts consistently reject such vague, boilerplate disclosures as inadequate, especially where, as here, the opposing party repeatedly pressed for further specificity and computation. In *Hayden v. IBM*, Judge Briccetti denounced a plaintiff's mere identification of "categories of damages" as "hollow disclosure[s]." He held they "in no way satisfied" the more stringent demands of Rule 26 and thus warranted application of Rule 37. 2026 WL 1266014, at *5 (S.D.N.Y. May 8, 2026) (quoting *Ritchie Risk-Linked Strategies Trading*, 280 F.R.D. at 159); *accord Anthem, Inc. v. Express Scripts, Inc.*, 2022 WL 1558879, at

*12 (S.D.N.Y. Mar. 31, 2022), *aff'd*, 2024 WL 4635233 (2d Cir. Oct. 31, 2024) ("at the summary judgment stage, listing 'categories' of damages is not enough; evidence of the *amount* of such damages (or at least a fair estimation of same) is necessary"). In *Gym Door Repairs*, Judge Koeltl similarly emphasized the need for elucidation and specification, and applied Rule 37 when the party seeking damages had not been forthcoming. He held that a party must disclose the "background or methodology of how [it] came up with" the estimated damages. 331 F. Supp. 3d 221, 237-38 (S.D.N.Y. 2018). Here, apart from its expert disclosure concerning unjust enrichment damages, Hedgeye has not provided any estimates, let alone any detailed information or methodology.

Courts have also rejected the notion that document production can satisfy the disclosure obligations of Rules 26 and 37. In *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006), the Second Circuit upheld application of Rule 37 in a case involving, as here, the alleged breach of an employment contract. It held that merely producing documents, "without any explanation," fails to satisfy Rule 26, which, the Court emphasized, requires further elucidation and a "computation" of damages. *Id.* at 295. Judge Preska reached the same conclusion in *Spotnana, Inc. v. Am. Talent Agency, Inc.*, holding that a document production fell short of providing the required information and computation. 2010 WL 3341837, at *1 (S.D.N.Y. Aug. 17, 2010). Dale discusses additional case law in his opening brief (at 12-13).

Here, Hedgeye has not come close to complying with its obligation to provide an appropriate delineation or computation of any claimed contract damages. Throughout fact discovery, Dale repeatedly requested information about the bases and computation of each broad category of damages Hedgeye was claiming, and Hedgeye repeatedly responded by saying it

would provide appropriate disclosure through its experts.[1] (Dale Br. at 2-5). In doing so, Hedgeye acknowledged the need for additional disclosure. Yet, when expert disclosures were made, Hedgeye did not include any elaboration or computation of damages befitting a breach of contract claim, nor any elaboration or computation of any compensatory damages at all. Hedgeye cannot now backtrack and say there was never any need for further disclosure.

### B. Hedgeye's Failure To Elucidate The Bases Or Computation Of Any Contract Damages Is Neither Substantially Justified, Nor Harmless

Finally, Hedgeye insists that its persistent failure to elucidate and quantify any claimed contract damages should be forgiven. (Opp'n at 18). But the Second Circuit has emphasized that "[a] district court has wide discretion to impose sanctions" under Rule 37. *Design Strategy*, 469 F.3d at 294. Such sanctions do not turn on a finding of "bad faith," but merely on a party's non-compliance with Rule 26 and related discovery obligations when such non-compliance cannot be substantially justified and prejudices an opposing party. *Id.* at 296.

There is no satisfactory explanation for Hedgeye's non-compliance, and Hedgeye has offered none. Dale repeatedly requested elaboration and computation of any claimed damages, and Hedgeye repeatedly declined, ultimately eschewing any articulation of contract damages in favor of an expert report that focused solely on tort damages. Hedgeye does not seriously contend otherwise. Its brief devotes no more than a few sentences to the topic of substantial justification. Those sentences primarily discuss "avoided development costs"—a form of tort

---

[1] The documents attached to Hedgeye's counsel's Declaration (Dkt. 1100) reflect Hedgeye's many promises to provide additional disclosure through its experts. *See* Andavolu Decl. Ex. 5 at 10 ("it is premature" to respond to a request for numerical damages calculations); Ex. 6 at 10-11 (request for the factual and legal basis for damages is "premature to the extent it requires expert opinions and expert reports have not yet been completed"); Ex. 7 at 9 ("[Hedgeye] intends to offer further information [concerning damages] by way of an expert report"); Ex. 8 at 6 (objecting to request for damages calculations "on the ground that it seeks discovery of Hedgeye's expert testimony prior to the time for disclosure"); Ex. 10 (Rule 30(b)(6) witness Blum and Hedgeye's counsel both assert damages will be "outlin[ed] in an expert report").

damages. (Opp'n at 18). Dale's Rule 37 argument, on the other hand, is based on the lack of disclosure of contract damages.

Courts have also consistently recognized the inherent prejudice caused by a party's repeated failure to specify its damages. *See, e.g.*, *Gym Door Repairs, Inc.*, 331 F. Supp. 3d at 238 ("defendants would plainly be prejudiced"); *Hayden*, 2026 WL 1266014, at *10; *Spotnana, Inc.*, 2010 WL 3341837, at *2 (same). This case has passed all the way through the summary judgment stage without affording Dale adequate notice of Hedgeye's claimed damages or the opportunity to respond. Hedgeye should be held to Rule 37 accordingly.

## IV. Hedgeye's Belated Claim For Nominal Damages Cannot Proceed To Trial

Hedgeye failed to plead or put Dale on notice of any claim for nominal damages at any prior stage in these proceedings.[2] It is thus barred from seeking such damages now. *See Anthem, Inc.*, 2022 WL 1558879, at *12 (dismissing contract claim where party "has not proffered any evidence to support its [compensatory damages claim]" and did not plead nominal damages prior to summary judgment briefing); *Hammond v. The Bank of New York Mellon Corp.*, 2010 WL 2643307, at *11 (S.D.N.Y. June 25, 2010) (same, where plaintiffs' complaint "d[id] not include a plea for nominal damages"); *Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.*, 2007 WL 1988150, at *21 (S.D.N.Y. July 10, 2007) (same).

Even if Hedgeye had preserved a nominal damages claim, it could not proceed to trial to seek such a *de minimis* remedy. This is clear from the very authorities Hedgeye cites in its brief (at 23). In *Lydall, Inc. v. Ruschmeyer*, the Connecticut Supreme Court, after determining that plaintiff was entitled to nominal damages, simply awarded $1.00 without requiring any adjudication before a finder of fact. 282 Conn. 209, 254 (2007). Similarly, in *News America*

[2] *See, e.g.*, Dkt. 1: Hedgeye's First Complaint at ¶113; Dkt. 627: Hedgeye's Fifth Amended Complaint at ¶281; Bach Decl. Exs. 1-5 (Hedgeye's interrogatory responses).

*Marketing In-Store, Inc. v. Marquis*, an appellate court held that a plaintiff seeking only nominal damages "would not be entitled to a new trial." 862 A.2d 837, 850-51 (Conn. App. 2004), *aff'd*, 276 Conn. 310 (2005); *accord Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 504 (1995) (dismissing appeal where new trial would only yield nominal damages). This makes sense as a matter of judicial economy, especially where, as here, the Court has already granted summary judgment on all other elements of Hedgeye's breach of contract claims. If the Court were to determine, notwithstanding Dale's arguments to the contrary, that Hedgeye is entitled to nominal damages, it should simply enter judgment in the amount of $1.00 and terminate all further proceedings on Hedgeye's contract claims against Dale.

## V. Punitive Damages Are Not Available For Stand-Alone Contract Claims

Hedgeye relies on *McCarter & English, LLP v. Jarrow Formulas, Inc.*, to support a claim for "punitive damages." (Opp'n at 24). *McCarter*, rather than broadly authorizing punitive damages, restates "the general rule…that punitive damages are not ordinarily recoverable for a breach of contract claim." 351 Conn. 186, 200 (2025).

*McCarter*'s limited exception to that rule does not apply here: It permits a contract-claimant who also "pleads and *proves* the existence of an independent tort for which punitive damages are recoverable" to seek punitive damages. *Id.* at 211 (emphasis added). Hedgeye cannot satisfy that requirement. None of its tort claims survived.

Hedgeye tries to evade this conclusion. It cherry-picks language from all over the *McCarter* opinion to suggest that any allegation of malicious or wanton conduct might serve as a basis for punitive damages. (Opp'n at 24 (citing *McCarter*, 351 Conn. at 190-96, 206-10)). But the *McCarter* court was clear: It expressly refused to "adopt a rule broadly permitting the recovery of common-law punitive damages when the conduct causing the breach of contract is willful, malicious, or reckless, regardless of whether the conduct constitutes an independent

tort." 351 Conn. at 211-12. It held that allowing punitive damages for contract claims absent a proven tort would eviscerate any "manageable and meaningful standard" and subvert "clear guidance as to the circumstances in which punitive damages may be recovered."[3] *Id.*

## CONCLUSION

For the foregoing reasons, Dale respectfully requests that the Court enter an order (1) precluding Hedgeye from seeking "avoided development costs" or any other form of damages, and (2) dismissing Hedgeye's remaining breach of contract claims against Dale for lack of damages.

Dated: September 18, 2026

Respectfully submitted,

/s/ Jonathan P. Bach
Jonathan P. Bach
Fabien M. Thayamballi
Alice Buttrick
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Floor
New York, NY 10036
Tel: (212) 257-4897
Fax: (212) 202-6417
jbach@shapiroarato.com
fthayamballi@shapiroarato.com
abuttrick@shapiroarato.com

*Attorneys for Darius Dale*

[3] *Wells Fargo Bank, N.A. v. Konover Dev. Corp.*, 630 F. App'x 46 (2d Cir. 2015), which Hedgeye also cites, is inapposite. (Opp'n at 24). It does not address contract claims. Even if it did, *McCarter* would supersede the rule it describes.