**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **HEDGEYE RISK MANAGEMENT, LLC,**<br>**Plaintiff,**<br>**-against-**<br>**DARIUS DALE, et al.,**<br>**Defendants.** | **1:21-cv-3687 (ALC) (RWL)**<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

In an Opinion and Order issued on September 30, 2025, this Court ruled on the parties' motions for summary judgment, their motions *in limine*, and their motions to strike. *See* ECF No. 998 ("Opinion & Order"). Plaintiff Hedgeye Risk Management ("Hedgeye") now moves for limited reconsideration of that decision. For the reasons set forth below, Hedgeye's motion is **GRANTED in part and DENIED in part.**

## BACKGROUND

The Court has previously detailed the factual history of this case. *See* Opinion and Order. The Court assumes the parties' familiarity with the facts and procedural history of the case and will only outline the background as relevant to the Court's analysis herein. In its Fifth Amended Complaint, Hedgeye alleged that while employed at Hedgeye, Defendant Darius Dale ("Dale") stole Hedgeye's proprietary models and customer lists, and together with Defendants Stephen Lamar ("Lamar"), 42 Macro, LLC ("42 Macro" and together with Dale and Lamar, the "Dale Defendants") and Nadine Terman ("Terman"), took steps to misappropriate Hedgeye's trade secrets and confidential information. On April 26, 2024, Terman and Solstein Capital, LLC

("Solstein" and together with Terman, the "Terman Defendants") filed their Second Amended Counterclaims, alleging four counterclaims against Hedgeye, including one for defamation. *See* ECF No. 681.

On October 25, 2024, Hedgeye moved for summary judgment dismissing the Counterclaims. ECF No. 814. On September 30, 2025, this Court entered its Opinion and Order ruling on the parties' motions for summary judgement, their motions *in limine*, and their motions to strike. *See* Opinion and Order. As relevant here, the Opinion and Order addressed Hedgeye's motion for summary judgment dismissing the defamation counterclaim. This Court ruled that "Hedgeye's summary judgment motion on the Terman Defendants' defamation counterclaim is granted as to the statements in paragraph 148, bullet points one through five of paragraph 153, and bullet point two of paragraph 154 in the counterclaims, and otherwise denied." *Id*. at 123. Also relevant here, the Court ruled on Hedgeye's motion to strike a reply declaration submitted by the Dale Defendants' counsel, Fabien Thayamballi, (the "Thayamballi Reply Declaration") that accompanied the Dale Defendants' reply papers on their summary judgment motions. *Id*. at 66-70. The Court ruled that "the Thayamballi Declaration did impermissibly characterize the record and make factual assertions on several occasions. Rather than striking the document, the Court will disregard these portions and 'draw its own conclusions based on th[e] evidence, not based upon an attorney's characterizations of it.'" *Id*. at 70. (quoting *New York v. Solvent Chem. Co.*, 225 F. Supp. 2d 270, 331 (W.D.N.Y. 2002)).

On October 14, 2025, Hedgeye filed a motion for limited reconsideration of this Court's Opinion and Order. *See* ECF No. 1013, 1014. That same day, Hedgeye filed a letter motion to seal their memorandum of law in support of their motion for limited reconsideration. *See* ECF No. 1012. On October 27, 2025, the Dale Defendants filed a response in opposition to Hedgeye's

motion for limited reconsideration. *See* ECF No. 1020. That same day, the Dale Defendants filed a letter motion to seal their opposition. *See* ECF No. 1019. That same day, the Terman Defendants filed their response in opposition to Hedgeye's motion for limited reconsideration. *See* ECF No. 1022. On November 4, 2025 Hedgeye filed its reply memorandum of law in support of its motion for reconsideration. *See* ECF No. 1035. The Court considers the issue fully briefed.

## STANDARD OF REVIEW

### I. Motion for Reconsideration

Local Rule 6.3 provides the standard for a motion for reconsideration. This District has repeatedly stated that "[a] motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Group, Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). "The standard for granting a motion for reconsideration is strict." *RCC Ventures, LLC v. Brandtone Holdings Ltd.*, 322 F.R.D. 442, 445 (S.D.N.Y. 2017). "A motion for reconsideration should be granted only when [the movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)) (internal quotation marks omitted).

"[A] motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). "Parties should not regard such a motion as an opportunity to take a second bite at the apple." *Pascazi v.*

*Rivera*, No. 13 Civ. 9029 (NSR), 2015 WL 5783944, at *1 (S.D.N.Y. Oct. 1, 2015) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and alteration marks omitted).

## II. Motion for Clarification

"No Federal Rule of Civil Procedure specifically governs motions for clarification." *Honeybee Robotics LLC v. Ensign-Bickford Aerospace & Def. Co.*, No. 24-CV-2426 (JPO), 2026 WL 82452, at *2 (S.D.N.Y. Jan. 12, 2026) (citation omitted). Different from a motion for reconsideration, "a motion for clarification is not intended to alter to change a court's order, but merely to resolve alleged ambiguities in the order." *Id*. (internal quotations and citation omitted). "Clarification is not warranted unless a decision is unclear or ambiguous." *Id*. (citation omitted). "A clarification motion asks the Court: 'What did you mean to say?' A reconsideration motion says to the Court: 'We know what you said. It is wrong. Change it.'" *Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC*, No. 12-CV-1699, 2015 WL 11237310, at *6 (D. Conn. July 6, 2015).

## DISCUSSION

Although Hedgeye moves for limited reconsideration of the Court's Opinion and Order pursuant to Local Civil Rule 6.3, Hedgeye specifically requests clarification on multiple parts of the Court's Opinion and Order. First, Hedgeye "seeks confirmation that certain statements referring to Hedgeye's allegations and the Court's prior rulings in this Action are protected by New York Civil Rights Law § 74, and therefore dismissed." *See* ECF No. 1013 at 2. Second, "Hedgeye is requesting clarification on whether the Court disregarded paragraph 13 of the Thayamballi Reply Declaration, or in fact considered it." *See id*. The Court addresses each in turn.

## I. Clarification of the Court's Ruling on the Application of the Section 74 Privilege to Certain Allegedly Defamatory Statements

The Terman Defendants alleged in their Counterclaims that multiple statements were defamatory which the Court ultimately ruled on in its Opinion and Order. Specifically, the Court ruled that "Hedgeye's summary judgment motion on the Terman Defendants' defamation counterclaim is granted as to the statements in paragraph 148, bullet points one through five of paragraph 153, and bullet point two of paragraph 154 in the counterclaims, and otherwise denied." Opinion and Order at 123. Hedgeye now moves for clarification regarding the Court's ruling regarding the statements in paragraph 153, bullet points 4, 5, and 6.

For context, the three statements are reproduced in full as follows:

> **Bullet Point 4:** On February 25, 2022, Blum tweeted the false claim that "Terman and Solstein thereby themselves directly acquired Hedgeye's confidential information and trade secrets." But Blum knew that Terman and Solstein never saw, much less "acquired" the source files that Hedgeye claims to be its trade secrets, and that the only Hedgeye files they ever saw were the ones Hedgeye itself sent them as subscribers."
>
> **Bullet Point 5:** On March 1, 2022, Blum retweeted a tweet from "CaffeineAddict Java/Joe," stating that "When a judge takes your request for a gag order & tells you to pound sand that's a pretty good indication you're full of shit Nefarious & @NadineTerman. He's telling everyone should know you conspired to hijack @KetihMcCullough model." Blum retweeted the statement without further

clarification, even though he knew Terman had made no request for a gag order and that this Court had made no finding of conspiracy or wrongdoing by Terman.

**Bullet Point 6:** On March 1, Blum tweeted two links to its press releases and then wrote: "I've posted a lot of the verbatim rulings & complaints w/ evidence. The most important: i) Judge Carter already ruled @Hedgeye is likely to prevail on the merits & ii) Dale repeatedly lied and had to be cautioned by the court." The tweet was followed by a pictorial link to the press release. Blum knew when he made this statement that Judge Carter had not made any ruling concerning Terman and Solstein.

First, Hedgeye requests clarification as the Court's ruling on bullet point 4 of paragraph 153, arguing there was potential conflict in the Court's holding. *See* ECF No. 1013 at 3. In its Opinion and Order, the Court found that the statements contained in "bullet points one through four of paragraph 153 . . . are essentially verbatim copies of allegations in Hedgeye's original complaint against the Terman Defendants." Opinion and Order at 120. As such, the Court found "they are subject to Section 75's protections." *See id*. The Court agrees with Hedgeye that there is confusion in the Court's holding given the Court's subsequent sentence that "[t]he retweeted statement alleged in the fourth bullet point of paragraph 153 is not a fair and accurate description of this litigation." *See id.*; *see also* ECF No. 1013 at 3. For clarification, the Court did not intend to refer to bullet point 4 when holding the retweeted statement was not a fair and accurate description of this litigation. Indeed, bullet point four of paragraph 153 does not include a retweeted statement. Rather, the Court's finding that "[t]he retweeted statement . . . . is not a fair and accurate description of this litigation" was meant to apply to bullet point five of paragraph 153.

This brings the Court to Hedgeye's next request for clarification regarding bullet points 5 and 6 of paragraph 153. In its Opinion and order, the Court found "that Blum's tweet stating "Judge Carter already ruled @Hedgeye is likely to prevail on the merits'—alleged in the fifth bullet point of paragraph 153—is both clearly related to this litigation and a fair and true depiction of the preliminary injunction entered in Hedgeye's favor." Opinion and Order at 120. As Hedgeye provides, this quoted language is from bullet point six of paragraph 153, not bullet point five. This was an error on the Court's part. The finding should state as alleged in the *sixth* bullet point of paragraph 153.

Similarly, the preceding paragraph in the Court's Opinion and Order confuses bullet points four, five, and six. The Court wrote, "[o]f the remaining statements, other [than] those in bullet points four and five of paragraph 153 and that in paragraph 161 of the counterclaims, there is no indication that they related to this litigation in anyway." This sentence should instead refer to bullet point five and six of paragraph 153. To this point, the Court already found bullet point four of paragraph 153 to be subject to Section 74's protections—hence the reference to the "remaining statements." As stated earlier, the next sentence in the Court's opinion should read that "[t]he retweeted statement alleged in the *fifth* bullet point of paragraph 153 is not a fair and accurate description of this litigation." This leaves what the Court should have referenced as the sixth bullet point of 153 which, as stated above, the Court quoted and found "is both clearly related to this litigation and a fair and true depiction of the preliminary injunction entered in Hedgeye's favor." *See* Opinion and Order at 120.

The Court rejects Hedgeye's argument that the Terman Defendants improperly seek substantive reconsideration of Court's ruling on bullet point five of paragraph 153. *See* ECF No. 1035 at 2. Hedgeye opened this door by requesting the Court clarify its ruling as to this

statement. *See* ECF No. 1013 at 4 ("Hedgeye respectfully seeks confirmation that the statements alleged in bullet point five *and* bullet point six of paragraph 153 were dismissed as privileged under Section 74." (emphasis in original)). In any event, Hedgeye's request for clarification on bullet point six requires clarification on bullet point five as well.

In sum, Hedgeye's request for clarification is **GRANTED.** The statements in paragraph 153, bullet points five and six, were found to be subject to Section 74 privilege and thereby dismissed. The statement in bullet point five of paragraph 153 was found not to be a fair and accurate depiction of this litigation. Thus, the statement in bullet point five is not subject to Section 74 privilege and was not dismissed. As such, the Court's conclusion should have read as follows: Hedgeye's summary judgment motion on the Terman Defendants' defamation counterclaim is granted as to the statements in paragraph 148, bullet points *one through four and six* of paragraph 153, and bullet point two of paragraph 154 in the counterclaims, and otherwise denied (emphasis on changed language).

## II. Clarification Regarding the Court's Treatment of Paragraph 13 of the Thayamballi Reply Declaration

Regarding the Thayamballi Reply Declaration as a whole, this Court previously held in its Opinion and Order the following: "While the Court agrees that the document exceeds what is admissible within an attorney declaration at several points, the Court finds many statements are merely descriptive of documentary evidence and that these statements are responsive to Hedgeye's opposition. In light of this, the Court denies the motion to strike but will disregard any inadmissible portions of the declaration in deciding the motions for summary judgment." Opinion and Order at 66. Hedgeye argues the Opinion and Order "contains statements that

appear internally inconsistent regarding the treatment of paragraph 13 of the Thayamballi Reply Declaration." *See* ECF No. 1013 at 5. The Court's opinion speaks for itself.

Specifically regarding paragraph 13, the Court found that the contents of paragraph 13 "do more than describe documents in evidence and present the Court with characterizations beyond the scope of Thayamballi's personal knowledge. Accordingly, the Court will disregard these portions." Opinion and Order at 69. The Court then reasoned that following that portion of the declaration, "Thayamballi provides the court with documents in the record to compare which variables or data points Hedgeye has disclosed." *See id*. Thus, that portion is "merely descriptive and do[es] not require the Court to disregard [its] content." *See id*. Hedgeye argues "[t]hese findings appear to reach opposite conclusions as to whether paragraph 13 is among the portions of the Thayamballi Declaration to be disregarded." *See* ECF No. 1013 at 6. This is not so. As the Dale Defendants provide in their opposition, "[t]he court made clear . . . that, apart from any language or 'characterizations' used by Mr. Thayamballi, it could consider the content of documents references in his Declaration." As the Court held, the contents of paragraph 13 were disregarded to the extent Thayamballi characterized the documents in evidence but the Court did consider the underlying documents referenced in paragraph 13. "Clarification is not warranted unless a decision is unclear or ambiguous." *Honeybee Robotics LLC v. Ensign-Bickford Aerospace & Def. Co.*, 2026 WL 82452, at *2 (citation omitted). Accordingly, Hedgeye's request is **DENIED**.

## III. Motions to Seal

In connection with Hedgeye's motion for limited reconsideration, Hedgeye requests that such motion "be filed unredacted under seal, and redacted on the public docket as it contains content that is designated by Hedgeye as Attorneys' Eyes Only." The specific portion of the

document that Hedgeye requests remain redacted is certain portions of paragraph 13 of the Thayamballi Reply Declaration. The proposed redaction was previously granted by Judge Lehrburger in a series of sealing orders issued. As such, Hedgeye's request is **GRANTED**. In connection with the Dale Defendants' opposition to Hedgeye's motion for limited reconsideration, they requested leave to file their response under seal. *See* ECF No. 1019. However, Defendants state they "do not believe that their response contains any material that merits sealing" but do so "in the event that Hedgeye contends otherwise." The Dale Defendants' brief opposition does not reveal any specific information warranting sealing. Any references to the redacted information in Hedgeye's motion for limited reconsideration are vague and high-level and do not reveal any proprietary information. Accordingly, the Dale Defendants' request is **DENIED.**

## CONCLUSION

For the reasons stated above, Hedgeye's motion for limited reconsideration is **GRANTED in part and DENIED in part**. Hedgeye's motion to seal is **GRANTED.** The Dale Defendants' motion to seal is **DENIED**. The Clerk of Court is respectfully directed to terminate the pending motions at ECF Nos. 1012, 1013, 1014, and 1019.

**SO ORDERED.**

**Dated**: **September 29, 2026**
**New York, New York**



**ANDREW L. CARTER, JR.**
**United States District Judge**